UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHY RADTKE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 06-2031 (JMF) |
| | ) |
| MARIA CASCHETTA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER ON MOTIONS IN LIMINE**

Pending before the Court are two motions in limine: Plaintiffs' Motion in Limine to Exclude Evidence and Argument Offered to Support a Claim that Ms. Cunningham Committed Perjury [#105] and Plaintiffs' Motion in Limine to Exclude Evidence and Argument Offered to Support a Claim that Defendants' Time Records Are Inaccurate [#106]. Following a hearing on these motions as part of the pretrial conference, the Court issues the following ruling.

**A. Prior Descriptions by Plaintiff Cunningham of Her Duties While Employed by the Defendants**

In this Fair Labor Standards Act ("FLSA") case, the briefing of the motions for summary judgment and the argument before me establish that a central issue dividing the parties is whether plaintiffs are exempted from that Act because of the nature of the duties they performed. During the course of discovery, plaintiff Cunningham was confronted with resumes she used after leaving defendants' employ and the description in them of the nature of her duties while employed by the defendants. Plaintiffs challenge the authenticity of the resumes and their relevance.

As to the authenticity of the resumes, defense counsel explained that they were given to him in response to a subpoena by the companies to which plaintiff Cunningham had made applications for employment. As explained at the hearing, under Rule 104 of the Federal Rules of Evidence, the Court must resolve the preliminary question of admissibility. Under Rule 901(a), to satisfy the requirement of authenticating an item of evidence, the proponent of the evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it to be." Fed. R. Evid. 901(a). That the documents were produced by the potential employers in response to a subpoena surely provides sufficient evidence to permit this Court to conclude that the documents are what they purport to be—the resumes or other documents that plaintiff Cunningham used when she sought employment from the potential employers. Plaintiff Cunningham remains free to argue that she did not prepare them or assert any other reason that should cause the jury to disregard them. Her arguments, however, go to weight and credibility, not to authenticity.

It would be hard to imagine better evidence of plaintiff Cunningham's view of the nature of her job than her own description of it in the resumes. Yet plaintiffs insist that the documents in which plaintiff Cunningham described the nature of her responsibilities and duties are irrelevant. Plaintiffs' theory is that in the documents that plaintiff Cunningham used the words "supervise" (or a variation of it ("supervisory")), and she asserts that "[s]upervisory responsibility is not a factor in determining the Professional or Administrative exemptions under the FLSA or related state laws." [#105] at 3.

First, that broad statement—whether an employee supervised others is irrelevant to the application of the FLSA exemptions—is incorrect as it relates to the administrative exemption and is not supported by the cases cited. None of the cases cited by plaintiffs support the

proposition that an employee's supervising others is irrelevant to the availability of the administrative exemption.  To the contrary, in each of them, the courts emphasized that the applicability of the administrative exemption was a nuanced judgment that had to be based on all the elements and responsibilities of an employee's position and that an employee's exercised supervisory authority over others was one such factor.

In Granditis v. United States, 66 Fed. Cl. 519, 540 (2005), the government, as defendant, invoked the administrative exemption to the statute requiring the payment of overtime to federal employees. The court nevertheless concluded that the employee's status as "Team Leader" did not meet the requirements for the administrative exemption when the parties stipulated, *inter alia*, that the employee, for example, lacked the authority to discipline employees, to re-allocate work in response to workload, or issue performance appraisals. Thus, status as a "Team Leader" did not in itself invoke the pertinent administrative exemption. Id. The court relied on Ale v. Tennessee Valley Auth., 269 F.3d 680, 692 (6th Cir. 2001), in which the court concluded that the administrative exemption did not apply when the employees at issue, called shift supervisors, did not set or adjust the hours of work, determine which employees manned which posts, or train employees. The court contrasted this case with its earlier decision in Jones v. ENSR Corp., 117 F.3d 1420 (6th Cir. 1997), where it had concluded that the employee's calling himself the "guy in charge"  did not in itself indicate that his primary duty was management. Instead, the court was obliged to look at his actual duties and found that he performed many managerial duties, such as interviewing, training, handling client relations, setting workers' hours, delegating their tasks, and "making sure that the job was done within budget and on time." Id. at *4. The court concluded: "It followed therefore that he was a bona fide executive." Id.

Finally, in Donovan v. United Video, Inc., 725 F.2d 577, 582 n.5 (10th Cir. 1984), the issue presented was whether the lower court erred in treating systems managers and microwave engineers as one group for exemption purposes. In reaching that conclusion, the court examined the duties and responsibilities that the employees had exercised, including some supervisory duties, which, however, were not "substantial enough to warrant different treatment for exemption purposes." Id. Again, the court examined all aspects of the employees' duties, including the actual nature of the supervision they may have exercised.

As these cases make clear, there is nothing talismanic about the word "supervise." Instead, exercising supervision over others and the nature of the supervisions are pertinent factors among others in interpreting the exemptions. Since that is so indubitably true, it has to follow that plaintiff Cunningham's own description of her responsibilities is unquestionably relevant. To deprive defendants of the right to inquire how she did describe them merely because she used the words "supervise" or "supervisory" would be to deny the defendants a fair trial.

Finally, plaintiff Cunningham would go even further and preclude the defendants from charging that plaintiff Cunningham perjured herself. Plaintiff Cunningham cites no authority for this remarkable assertion except her fear that, unless defendants are stopped from so arguing "the trial [will] revolve[] around which person is more truthful rather than the issues that are actually in dispute in the litigation." [#105] at 6.

That statement is remarkable. It is always perfectly legitimate in any trial for a party to argue that other party is not being truthful and to therefore argue that there is no support for the factual contentions the other party is asserting. That is why the jury is empanelled to ascertain who is telling the truth. To deprive a party of the right to argue that the other party is lying and perjuring herself is to deprive that party of an ancient and fundamental right.

With that said, however, I am concerned that the use of the word "perjury" might create confusion because it charges, after all, a crime that would have be proved beyond a reasonable doubt if prosecuted by the government. I see no advantage to be gained to defendants to have me charge the elements of the crime of perjury in a civil case. Instead, defendants remain free—without using that word—to argue that plaintiff Cunningham is not telling the truth for any reasons that are supported by the evidence, including, of course, prior statements that contradict her testimony. Additionally, I will give the traditional "falsus in unus" instruction. That will suffice and defendants will avoid using the word "perjury."

### B. The Accuracy of Plaintiff Cunningham's Time Records

Plaintiffs' final demand is that defendants be precluded from cross examining plaintiff Cunningham about the accuracy of the time sheets she kept. <u>Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion in Limine to Exclude Evidence and Argument Offered to Support a Claim that Defendants' Time Records are Inaccurate</u> [#115] at 1-2.[1] As indicated at the pre-trial hearing, plaintiffs are concerned that if defendants are permitted to challenge entries made by plaintiffs, then defendants will argue that all of the time records it maintained are not reliable because the plaintiffs kept their own hours and provided these records to defendants for purposes of payroll. This supposedly violates the principle that the employer must maintain accurate records of its employees' working hours. But that argument is *non sequitur*. That defendants were required to keep accurate hours hardly means that it is improper to impeach

---

[1] Plaintiffs argue: "[our] motion was not aimed at a claim that one or two time sheets had inaccuracies, but instead at a broader rejection by the employer regarding the time sheets as proof of time worked. . . . The Defendants apparently concede that point; they appear not to intend to argue that the time sheets are not a fair reflection of the time spent by the Plaintiffs working. Instead, though, they wish to show two of Ms. Cunningham's time sheets which, they contend, contain errors, and from that evidence they wish to argue generally that Ms. Cunningham's time sheets are generally unreliable. That argument should not be permitted." [#115] at 1-2. Thus, although plaintiffs' motion was originally directed at preventing defendants from contesting the accuracy of defendants' own time records, the motion was reformulated—in response to defendants' opposition briefing—to instead prevent defendants from contesting the accuracy of time records that plaintiff Cunningham herself maintained.

5

entries in those records, created by plaintiffs, which are going to serve as the premises of plaintiffs' claims for damages. Defendants must be free to challenge that portion of the records that plaintiffs prepared. That this will somehow lead defendants to challenge all the time records is, as the Court noted at the pre-trial, a paraded horrible.

### C. Conclusion and Order

For the reasons stated above, it is hereby **ORDERED** that plaintiffs' motions in limine are **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE