UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHY RADTKE, ET AL,            :
                                :
            Plaintiffs,         :        Docket No. CA 06-2031
                                :
      vs.                       :        Washington, D.C.
                                :        Friday, January 17, 2014
MARIA CASHETTA, ET AL           :           9:30 a.m
                                :
            Defendants.         :
--------------------------x

(A.M. SESSION)
TRANSCRIPT OF JURY DELIBERATION ON DAMAGES
BEFORE THE HONORABLE JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:      S. MICAH SALB, Esquire
                         MARY E. KUNTZ, PhD, Esquire
                         Lippman, Semsker & Salb, LLC
                         7979 Old Georgetown Road
                         Suite 1100
                         Bethesda, MD 20814

For the Defendants:      ALAN LESCHT, Esquire
                         SUSAN KRUGER, Esquire
                         Alan Lescht & Associates
                         1050 17th Street, NW
                         Suite 400
                         Washington, DC  20036

Court Reporter:          CRYSTAL M. PILGRIM, RPR
                         Official Court Reporter
                         United States District Court
                         District of Columbia
                         333 Constitution Avenue, NW
                         Washington, DC  20001

Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE COURT:  Final question, where do we stand on

3  damages?

4          MR. LESCHT:  I provided the damage calculation that

5  we had agreed on.

6          THE COURT:  All right.

7          MR. LESCHT:  I'd ask that they be, I'd ask that they

8  be included in the verdict sheet.  They were not, I note my

9  objection to their omission.

10          THE COURT:  The one aspect of this we have to bear in

11  mind is that if the jury answers question Number 4, that there

12  was not a bona fide dispute, Maryland law permits the jury to

13  multiply the damages by a factor up to three.  So they'd have

14  to know that.  So they won't questionably know that when they

15  reach that issue.

16      You see what I'm saying?

17          MR. LESCHT:  Well, when are they going to be told

18  about if --

19          THE COURT:  Only if they resolve question Number 4

20  against you.  If they resolve question Number 4 in your favor,

21  it's academic.

22          MR. LESCHT:  Right.

23          THE COURT:  So if they resolve Number 4 in your

24  favor, and against you, I will submit to the jury the amount

25  and instruct them that they are to determine what factor there

1   is.

2       As a matter of fact, I think we already have an

3   instruction on that basis which we can look at.  So that's the

4   way we can proceed, all right.

5       Now, your, so I understand and for the record, where did

6   you want the amount to be specified in the verdict form we

7   presently have?

8       MR. LESCHT:  Well, I can tell you what we had done

9   yesterday with these amounts.  I think we're in agreement.

10      According to Mr. Salb that if Ms. Radtke is awarded the

11  ten minutes of travel time from Twinbrook to Kaiser, the amount

12  would be $721.73.

13      If Ms. Radtke is awarded an hour for traveling on her

14  claim, the amount is $3,245.

15      For Ms. Cunningham, if she's, if Lifecare is determined

16  not to be responsible for the work that she did over at Kaiser,

17  the amount is $2,583.18.  And if Lifecare is determined to be a

18  joint employer of Ms. Cunningham for the work she did at Kaiser

19  then the amount of $3,597.77.

20      And what I had proposed, I guess to your law clerk when

21  we discussed this yesterday is that the questions be posed and

22  included just like that.

23      THE COURT:  All right.  Well, as I said, the only

24  point where I think the amount is relevant is if, it depends on

25  the answer to question Number 4.  So the application --

1          MR. LESCHT:  Your Honor --

2          MR. SALB:  I'm sorry.  I just wanted to say we don't

3  actually object to the position that defendants are taking.

4          THE COURT:  Well then, tell me what you want me to

5  say to the jury.  Do you simply want me to say, ladies and

6  gentlemen, in these cases what we want you to know is that the

7  parties have agreed as follows and read that.

8          Is that what you want?

9          MR. LESCHT:  I just want to be clear.  By stipulating

10  to these amounts, we do not agree that --

11          THE COURT:  Of course, of course.

12          MR. LESCHT:  -- that our clients owe anything.

13          THE COURT:  Question Number 1.

14          Question Number 2 is what do the two of you want me to

15  do in communicating that information to this jury?  We can be

16  silent.  Unless there is an answer to question Number 4 that is

17  against the defendants, then they will be told that so they can

18  determine whether to factor or if you wish, since Mr., since

19  Plaintiffs have to show their damages, I can read that

20  stipulation to the jury right now.

21          MR. LESCHT:  I would just ask that it not be

22  stipulated.

23          THE COURT:  I will not say it's stipulated.  I will

24  say ladies and gentlemen, the parties in the interest of saving

25  time have come to an agreement in reference to damages.  I must

1  caution you about two things.  One, that the defendant by

2  engaging in the stipulation does not in any way think that this

3  is in fact due.

4       Second of all, I'm going to also instruct you that

5  merely because we have indicated that there are damages doesn't

6  mean that you should have no fact -- should have no impact on

7  how you resolve the questions before you.

8       Is that fair?

9       MR. LESCHT:  I would ask that you simply state that

10 the plaintiff's damages sought in this case are the following

11 amounts because I don't want to be any --

12      THE COURT:  I understand that.  That's perfectly

13 acceptable.

14      Thank you, sir.

15      MR. LESCHT:  The second thing I just want to raise

16 with you something that I e-mailed last night.

17      THE COURT:  I saw that, you are correct.  The breach

18 of contract claim is dismissed.  If I did not do that in my

19 pretrial order, I should have.

20      MR. LESCHT:  So are you going to issue a separate

21 order?

22      THE COURT:  Yes, I will.

23      MR. LESCHT:  Okay, thank you.

24      THE COURT:  May I bring in the jury?

25      MR. SALB:  Yeah, but Your Honor, I was unaware that

1   this Court had --

2           THE COURT:  Yes.  You explained to me in your

3   argument that you took the position that in every employment,

4   in every employment situation there is an implicit contract, I

5   rejected that.

6       If I did not make it clear that I was rejecting it, I'll

7   make it clear now.

8           MR. SALB:  Thank you, Judge.

9           THE COURT:  You're preserved for appeal, okay.

10          THE DEPUTY CLERK:  Let me check because one was

11  missing this morning.

12          (Pause at 9:40 a.m.)

13          (Proceedings resumed at 9:41 a.m.)

14          THE COURT:  One question you did not address what

15  about the Statute of Limitations difference if there's a

16  finding of willfulness?  You haven't given me those things.

17          MR. LESCHT:  I think for Radtke --

18          THE COURT:  I'm sorry?

19          MR. LESCHT:  I think for Radtke it didn't make a

20  difference in the numbers from what Ms. Kruger is telling me.

21  She had been working on the numbers.

22          THE COURT:  It doesn't make any difference for

23  Cunningham.

24          MR. SALB:  Willfulness is under the FLSA.

25          THE COURT:  Yes.  So Radtke is entitled therefore to

1 liquidated damages, right, if I find, is entitled to liquidated

2 damages; isn't that right?

3         MR. SALB:  Yes.

4         THE COURT:  So don't we have to know what the number

5 would be both with and without the Statute of Limitations?

6 With the Statute of Limitations of two years, and the Statute

7 of Limitations to three years?

8         MR. SALB:  Well, I actually don't know that any of

9 these -- I'm not convinced that we have to know what these

10 numbers are at any point in time for the jury to make its

11 determinations.

12         THE COURT:  Sobeit.

13         MR. LESCHT:  Judge, looking at the records with

14 Ms. Kruger it seems for Ms. Cunningham there would be one year

15 or less of damages and I guess --

16         THE COURT:  Here, take a look at this.

17         Law Clerk Andrew:  I'll give them their copies,

18 Judge.

19         THE COURT:  Take a look at this, please.

20         In my view these are the calculations we have to do.

21 Now I can charge the jury with the numbers that, not charge

22 them about them, just as you have now agreed read them this

23 statement about the damages to be awarded, and then make the

24 more precise calculations here with your consent.  And then

25 we'll know exactly what we're doing in terms of entering a

1    judgment.

2          Is that acceptable?

3            MR. SALB:  Can you repeat yourself, Your Honor?

4            THE COURT:  I will read the jury the following:  If

5    you find that Plaintiff Radtke should not be imbursed for the

6    full travel time from the Pentagon to Kaiser Permanente she

7    will be owed a total of $721.73.

8          If you find that Plaintiff Radtke should be imbursed for

9    a full travel time from the Pentagon to Kaiser Permanente, she

10   will be owed a total of $2,245.60.

11         If you find that Plaintiff Cunningham should be paid

12   overtime for time spent at Kaiser Permanente, she will be owed

13   2,583.18.

14         If you find that Plaintiff Cunningham should be paid

15   overtime for time spent at Kaiser Permanente, she would be owed

16   $2,597.77.

17         I give you this information with the clear understanding

18   that one, the defendant does not concede her entitlement to

19   these damages and that by telling you this information, I do

20   not mean to influence in any way your resolution of the

21   remaining issues in this trial.

22         Is that acceptable to both sides?

23            MR. SALB:  Yes, Judge.

24            MR. LESCHT:  The only thing I would add, the second

25   to last thing you read about Cunningham working at Kaiser

1  because in order for them to find that Cunningham is entitled

2  to the full amount working at Kaiser they would have to find

3  Lifecare was her employer.

4      So you can add that if you find that Lifecare was a

5  joint employer of Cunningham, then she --

6      THE COURT:  That's currently in the verdict form she

7  has.  This is just to tell them, it doesn't tell them who is

8  responsible, just the amount.  I think we're okay.

9      All right, time for your closing arguments.  We'll work

10  on these calculations.

11      MR. LESCHT:  Just to be clear, Judge, because I had

12  gotten an e-mail last night of filing of new instructions.  I

13  just wanted for the record to be clear that my, that my

14  position on there is stated so that there are no mistakes

15  going forward.  I saw the filing when I left the office that

16  these instructions were redone, right.

17      Okay, so I just want to be clear that, that we object,

18  that defendants object to the first instruction on independent

19  contractor.  We, believe there are other factors that should

20  have been included here.

21      We object to the instruction regarding the travel time.

22  It doesn't say anything about the lunch hour that she testified

23  to.  It doesn't reflect the facts in this case.

24      THE COURT:  Okay.

25      MR. LESCHT:  We object to the instruction on the

1  Maryland triple damages issue because it's just a snippet of

2  the law and doesn't explain or identify the burden of proof.

3  It doesn't explain what it means to be, what it means for the

4  fact that there was no dispute and I think it's confusing to

5  the jury and probably will result in another finding against

6  the defendants.

7       Whether defendants acted willfully I think too is not

8  clear enough under the law.  The liability of defendant

9  Cashetta.  Again, it doesn't, this instruction is unclear and

10 does not reflect the facts and the testimony in the case.

11      I think someone reading this will just simply find that

12 anyone who is called a supervisor is liable which I think is

13 contrary to the law.

14      We object to the joint employer instruction as well in

15 regards to the number of factors that should also be included

16 in here.

17      My objections to the verdict sheet were already stated.

18      Thank you.

19      THE COURT:  Thank you, counsel.  Objections are

20 overruled.

21      Please bring in the jury.

22      MR. SALB:  Your Honor, I --

23      (Jury present.)

24      THE DEPUTY CLERK:  All of the jurors are present,

25 Your Honor.

1        THE COURT:  Good morning, ladies and gentlemen.

2        You will now hear closing arguments by counsel as to the

3   issues that remain.  I will then issue my instructions to you,

4   then you will get the case.

5        Counsel, please.

6                 CLOSING ARGUMENT BY MR. SALB

7        MR. SALB:  I'm sure, ladies and gentlemen, that you

8   will be deeply disappointed that I don't have anything on the

9   screens for you, you're stuck with just my voice.

10       I want to thank you again for your attention.  Beg your

11  pardon for just a moment here.

12       I'm sure that it felt like a bait and switch in the

13  middle of the week when you left, made your verdict by the end

14  of the day, you were sure you were going to go home and get

15  back to your lives and then you have to come back.  I'm sorry

16  about that.

17       You'll make a few more decisions, maybe one or more

18  rounds today, but the reason for this is I think the Judge's

19  prudence led us to this realization that one decision leads to

20  another and it's just impossible to try to make all at once.

21  But there's just a few issues for you to grapple with at this

22  point.

23       The first of those issues deals with this question of

24  travel time.  You've heard testimony about Mrs. Ferrara, she

25  had to travel from one work assignment at the Pentagon to the

1    other place of work Kaiser Permanente.   That travel of course

2    is separate from going from home to work, from work to home.

3    There's nothing complicated about those facts.

4          The law that's related to this is also not complicated.

5    The law says that employees are entitled to be paid for all

6    time worked and this is very important.   Time spent traveling

7    from one job site to another job site during the workday must

8    be counted as hours worked.   I repeat that because that's the

9    standard that you'll have to apply.   Time spent traveling from

10   one job site to another job site during the workday must be

11   counted as hours worked.

12         So one of the questions you'll have to answer this

13   morning is whether the time that Mrs. Ferrara spent traveling

14   from Pentagon to Kaiser was time spent as part of her what we

15   call principal activity of her workday.   This is not a

16   challenging question because the law answers the question for

17   you.   But here's the thing.

18         Defendants have pointed out, the defendants aren't here,

19   the defendants previously have pointed out that counting --

20         MR. LESCHT:   Objection.

21         THE COURT:   I'm sorry.   Objection is to the fact that

22   duly noted they're not here.

23         Ladies and gentlemen, there is no significance to the

24   defendants being here or not being here.   They can come or not

25   come as they see fit.   It has nothing to do with this case.

1        Please go on.

2          MR. SALB:   Thank you.

3        Right, so we all agree actually that the time you spend

4   going to work and going from work to home is not compensable

5   and we have never asked for you to award that time to our

6   clients, Mrs. Ferrara in particular.  But here's the thing.

7        The defendants think that it's unfair that because by

8   traveling from the Pentagon to Kaiser Permanente, it shortened

9   Mrs. Ferrara's trip home.  In fact, it shortened it

10  considerably.  Sometimes your boss says you have to work close

11  to home and sometimes your boss says you have to work far from

12  home.  Doesn't change the law.  I'm sorry they think it's

13  unfair, but the law is pretty clear here.  The defendants

14  essentially want you to ignore the law and the facts.  And

15  conclude that it didn't take so much time for Mrs. Ferrara to

16  travel from one spot to the other.

17       Now remember the testimony that you heard regarding her

18  workday and regarding how much time it took for that trip.

19  Even after taking consideration of the time she would spend for

20  lunch, well over an hour, we're only asking for an hour but

21  well over an hour.

22       Now the next issue is maybe slightly less simple but

23  it's no less clear in terms of the outcome.  You have to decide

24  who their employers are.  Now some of this is pretty easy.

25  Everybody agrees that Advanta was Mrs. Ferrara's employer and

1   everybody agrees that Lifecare was Ms. Cunningham's employer.

2   But the Fair Labor Standards Act is written with the idea that

3   more than one company or person can be an employer of a person.

4   Okay.

5          Now I get that that is sort of counter intuitive.  We

6   all have a boss.  We all have an employer and that's in

7   ordinary language how we think about it, but that's not the

8   approach of the laws that we're looking at.

9          So try to set that counter intuitiveness, if that's a

10  word, aside and think instead about, about the fact that there

11  are multiple employers possible in a case like this one.

12         So the question for you is was Advanta an employer of

13  Ms. Cunningham.  We agree that Lifecare was, was Advanta also

14  an employer.  Okay.  To answer that you have to think about how

15  much control Advanta had over Ms. Cunningham at work.  And

16  you'll see in the instructions that the Judge will give you

17  that it will lay out a few factors.

18         Did Advanta have the power to hire and fire?  The

19  testimony is pretty clear that that was in fact Advanta's job.

20  That was part of their, remember Advanta and Lifecare were a

21  team, that's what Ms. Cashetta told you, they were a team and

22  her job, Advanta's job, was recruitment.

23         Number two, was Ms. Cunningham supervised by Advanta

24  employees?  Well, you heard about Ms. Cashetta's role in

25  recruiting, about Warren Kwan's role in recruiting, Warren Kwan

1  of course being an Advanta employee.  You heard about Warren

2  Kwan's role supervising.  You heard about the fact that all of

3  the employees regardless of which company they formally work

4  for would contact Warren Kwan with questions and concerns.

5       You heard about Advanta reviewing Ms. Cunningham's time

6  sheets.  Another person reviewing the time sheets, Ms. Cashetta

7  reviewing the time sheets.

8       Remember the job offer letter that Ms. Cunningham got,

9  who was it from?  Ms. Cashetta.  What letterhead was it on?

10  Advanta.

11       You heard the testimony about the non-compete agreement

12  that the defendants required Ms. Cunningham to agree to.  Who

13  did it protect?  Lifecare and no surprise Advanta.

14       Number 3, did the defendant control the conditions of

15  employment.

16       Number 4, did Advanta maintain employment records for

17  Ms. Cunningham.

18       Now of course, you don't have to answer in the

19  affirmative for all four of these factors to find that Advanta

20  was Ms. Cunningham's employer.  The purpose of these four

21  questions is to help you to understand how you should be

22  thinking about control when you think about who an employer is.

23  Respectfully, I would suggest that given the facts in this case

24  there's no question but that Advanta controlled

25  Ms. Cunningham's employment far more than would ever be

1   required under this law for Advanta to be considered one of her

2   employers.

3        Now you'll have to make this same determination as to

4   whether Ms. Cashetta -- remember Ms. Cashetta who was the owner

5   of Advanta -- whether Ms. Cashetta was the employer of both of

6   the plaintiffs.  Okay.  So was Advanta the employer of

7   Ms. Cunningham, was Ms. Cashetta the employer of Ms. Cunningham

8   and was Ms. Cashetta the employer of Ms. Ferrara, okay.

9        The third issue relates to Ms. Cunningham again.  So

10  there's a period of time where Ms. Cunningham was working for

11  Lifecare.  Whatever, eight hours a day, you know, regular

12  workday.  Then in the late afternoon she would go to Kaiser

13  Permanente to do some work for Advanta.  Now she did that work

14  and she was paid.  She got one paycheck from Lifecare and she

15  got another paycheck from Advanta.

16       The question is should you classify, should you classify

17  Ms. Cunningham as an employee or an independent contractor?

18  Independent contractors they get paid on a flat rate, period,

19  end of story.  Employees are entitled to time and a half not

20  just, you know, straight time, okay.

21       So if you're an independent contractor, I don't know if

22  any of you are, but if you're an independent contractor you

23  know people who do this, they may work 60 hours, 80 hours a

24  week.  They may bill their client those 80 hours, then the

25  client will pay 80 times, you know, a million dollars an hour,

1  whatever they get to charge, right.  But that's not the way it

2  works with an employee.

3       Now the defendant will remind you I'm pretty sure that

4  there was a contract and that Ms. Cunningham signed this

5  contract and that therefore, she was ipso facto an independent

6  contractor.

7       Now it's important to remember that the law does not

8  permit anyone to contract away their rights under these labor

9  laws that we're talking about.  All right.  You can't agree, I

10  can't say remember Sherry who I talked about, I can't say

11  Sherry, I'm going to pay you an extra dollar an hour in

12  exchange for your agreement never to charge any overtime.  I

13  can't give her a good deal, I can't give her a bad deal.  I

14  can't say if you want to keep working here you will voluntarily

15  agree to waive your right to overtime.  Okay.  So the contract

16  doesn't matter.

17       What you need to think about is the economic reality of

18  the situation.

19       I'll tell you some factors to think about.  Of course,

20  they'll be reflected also in the Judge's instructions.  Think

21  about how much control the employer has over the worker, all

22  right.  So when Ms. Cunningham would go and do her medical

23  records coding, she did straight coding over there, when she

24  did her medical records coding over there was she controlled by

25  her employer or was she deciding whether to do it or not do it,

1    whether to go or not go, et cetera, et cetera.

2        Think about whether this is an arrangement that gives

3    the worker the opportunity for profit or loss.  One of the

4    great joys of working for yourself is that if you want to work

5    your touche off, you have a better chance of making more money.

6    Not necessarily on a straight hourly basis, you might be able

7    to build something real to make profit.  Not hourly wages but

8    profit.

9        So the question then is was Ms. Cunningham building a

10   business.  Did she have the opportunity to profit or was she

11   going, putting in her time and getting paid her paycheck.

12       Think about the degree of skill and independent

13   initiative required to perform the work.  And I'm going to lay

14   out the other two factors and talk about them together.

15       The skill and independent initiative.  The permanence

16   or duration of the working relationship and I think one thing

17   that is particularly important is the extent to which the work

18   is an integral part of the employer's business, okay.

19       So if, if you have a company and your company makes

20   widgets and once a year you have to do a federal tax return.

21   You're not in the business of doing tax returns, you've got

22   some people who can record when a check arrives, put in a

23   ledger and when a check is written to pay the vendor you put in

24   the ledger, but paying the taxes is not part of the business.

25       You may well hire an independent contractor to do that

1  for you.  Was medical records coding the business of her

2  employer?  Well, of course it was.  That's precisely what they

3  did.  They provided people who did medical records coding.  It

4  was integral to their business.

5      I think that these factors make it quite clear that

6  Ms. Cunningham was an employee when she was working at Kaiser

7  Permanente for Advanta, just like Ms. Ferrara was an employee

8  when she was working at Kaiser Permanente for a day.

9      Okay.  Finally, the most complicated issue for you to

10  address this morning, the last issue that you have to address

11  is whether the defendant's failure to pay overtime wages was

12  the result of a bona fide dispute and tied to that is the

13  closely related question of whether the defendants acted

14  willfully.

15      Now the reason that this is the most complicated for you

16  to answer is that we're asking you to form judgments about the

17  defendant's conduct, what they did, what they were thinking and

18  we're doing it without particularly good guidance from our

19  Judge.  Now I'm not blaming our Judge.

20      The fault, if there's fault anywhere, is with the law.

21  Because the law doesn't give us a simple definition.  It would

22  be great if the law said well, if you count to five, it's a

23  nickel and if you count to ten it's a dime.  Right, there's no

24  simple rule.  There isn't even a situation like when I was

25  talking about whether Ms. Cunningham was an employee or a

1   contractor where I can lay out those crisp factors.

2        Here's what the law does tell us so you're not

3   completely rutter-less here, right, you've got some things to

4   think about.  You need to think about what the defendants

5   believed about their own actions and then evaluate their

6   reasons for so believing.  You have to think about their good

7   faith.

8        Did they really and truly have reasonable grounds for

9   believing that their failure to pay overtime wages was not a

10  violation of the Fair Labors Standard Act?  Did they act with a

11  conscious lack of concern for the consequences?  Here's some

12  relevant facts.

13       Lifecare consistently failed to ensure that it was in

14  fact complying with relevant wage an hour laws sole

15  responsibility for doing that, for making sure that Lifecare

16  and Advanta were complying with the laws left in Mr. Molina's

17  hands.

18       He talked to you about his Bachelors Degree and Law

19  Degree and his Masters in law from Harvard Law School.  He

20  talked to you about his experience, his lengthy experience as a

21  Government contractor.  He is clearly a sophisticated

22  businessman.  He knew that when there were complicated

23  questions what do you do?  Call a lawyer.

24       I mean, we don't always have the answers but we do know

25  how to find the answers.  It's our job.  It was not by the way

1  Mr. Molina's job, he was running a business or a series of

2  businesses.

3        Now, at the beginning of this trial you may recall the

4  testimony that showed that Mr. Molina did not know,

5  particularly at the time he was making these decisions, what

6  the definition of the administrative exemption was or what the

7  professional exemption was.  Remember when I talked to him

8  about what he told us during his deposition.  Take a look at

9  your notes.  I think you still have them, I hope you still have

10 them.

11       He did not research the matter, he did not seek guidance

12 from state or federal officials.  He did not consult with a

13 lawyer.  He simply assumed that his position was correct.  I

14 thought it was pretty interesting that his testimony about what

15 he did to figure out if his position was correct was much more

16 diligent the second time he testified.

17       And then in his solicitation for the work from the

18 Federal Government he informed them that our clients would be

19 exempt.  Ladies and gentlemen, please be advised they are

20 exempt.

21       Remember before when I told you about how brilliant and

22 handsome I am and, you know, because I say it, it makes it

23 true, right?  Right?  No, apparently not.  Yeah, sadly it

24 doesn't work that day.  Sadly I can't just pronounce it to be

25 the truth, and have that be reality.

1          That is exactly what Mr. Molina did.  They made a

2     proposal.  The last page of the proposal had a piece of paper

3     dealing with some waiver of the Service Contract Act that they

4     believe relates to this overtime requirement.  Remember?  And

5     then the next exhibit in the book had the contract that came as

6     a result of that proposal.  The contract did not have that

7     piece of paper.

8          So okay, so they say okay, we're going to make this

9     proposal.  We're going to add this sheet of paper and give it

10    to the Government and when the Government gives it back, guess

11    what, that piece of paper is not there.

12         Okay, we'll try again Mr. Molina says.  I'll just hand

13    write it in.  I'll hand write we request an exemption.

14         The Government signs the contract and Mr. Molina tells

15    us that the version of the contract which the Government signed

16    had that handwriting on it.

17         They didn't bring any witnesses in to tell you that

18    other than Mr. Molina, of course.  They don't have any

19    documents, any paper.  They have no proof whatsoever that the

20    Government was agreeing to that requested exemption.  So they

21    made their first effort by adding that piece of paper at the

22    end of their proposal.  They made their second effort by

23    writing down we request an exemption, a waiver rather.  They

24    have no evidence to support the existence of that waiver.

25         Now if you ask me Mr. Molina was just too clever.

1    Mr. Molina was not in good faith trying to determine whether

2    these guys really and truly were entitled to be treated as

3    exempt.  I guess they wouldn't really be entitled.  I guess it

4    would be whether the defendants were entitled to treat them as

5    exempt.  Paying overtime is expensive.  You'll hear it's not

6    actually that expensive.  We are not arguing over enormous sums

7    of money but it was sums of money that they didn't want to pay.

8    They got to keep it.  They're the owners of the company.

9         So did Mr. Molina, a sophisticated businessman, really

10   believe that he had investigated the applicability of the

11   exemption?  Did he really truly believe that he had gained

12   agreement from the Government despite nothing contractually

13   doing so?

14        In fact, what he wrote he initialed.  It was not also

15   initialed by the Government.  We've all done some, almost all

16   of us have done something, something where we've bought a car

17   or something, then maybe you modify the typed contract and then

18   each person initials on the margins.  Mr. Molina initialed, the

19   Government did not and what Mr. Molina wrote was we request a

20   waiver.  It doesn't, it's not even written as if it's

21   contractual.  The parties agree that the employers are, the

22   contractors will get a waiver.

23        And the waiver deals with people who are playing with

24   technical equipment.  It isn't even related to this question.

25   So you have to decide whether the defendants were acting in

1   good faith by failing to pay the small sum of overtime which

2   they earned.

3        And that's it, those are your jobs for this mornings

4   deliberation.

5        Thank you.

6        THE COURT:  Thank you, counsel.

7                CLOSING ARGUMENT BY MR. LESCHT

8        MR. LESCHT:  All right, so now we are hearing for the

9   first time that Mr. Molina was a small business person who

10  provided the plaintiffs with employment for a couple of years,

11  put food on their table, gave their salary.

12       Now we're hearing that he engaged in some scam on the

13  Federal Government where he lied to the Federal Government

14  about the type of work and the type of people he was going to

15  submit.

16       You know, I mean, we respect your decision on the

17  exemptions, reasonable people can disagree.  The fact is this

18  case went to trial because the Judge in the case couldn't

19  decide it one way or the other.

20       MR. SALB:  Objection, Your Honor.

21       THE COURT:  Pretrial proceedings are not important to

22  your deliberations.

23       Go ahead, counsel, please.

24       MR. LESCHT:  It's not an easy decision on the

25  exemptions, but the fact is in regards to the testimony we've

1  heard in this case there's only one person's credibility that

2  we have called into question.  It's not my client.  It's

3  Ms. Cunningham.  Whether you agreed with the presentation that

4  I made regarding how she testified differently under oath in

5  her deposition than she did here, and she wrote down different

6  things on her resume than she testified to in a deposition and

7  that she wrote down different things on her resumes and job

8  application than she testified to here, it is your call.

9        But there's been no impeachment of my client's

10  credibility.  None at all.  The fact is he's operating a small

11  business that provides employment to people.  It's not an easy

12  thing and you need to make judgments and decisions.  And here

13  you have the benefit of deciding this exemption issue of having

14  three days of testimony, two lawyers presenting you with every

15  piece of evidence that there is, and it took you a couple of

16  hours to make a decision.

17        Mr. Molina we are talking about something that occurred

18  back in, what is it like eleven years ago, eight to eleven

19  years ago.  The wage and hour laws have become much more, you

20  know, popular at least part of what people bring about, hear

21  about, back then they weren't.  It's hard, they are hard

22  decisions and business people need to make judgments.

23        But in terms of your decision making I will tell you

24  that what Mr. Salb just said was the hardest decision, you

25  know, is actually the easiest.  And he said it's the hardest

1   decision for you because he's trying to make it sound like it's

2   really difficult under the law.

3       Just because you found that there were exemptions

4   doesn't mean that you need to find in favor of the plaintiffs

5   on any of these claims.  All right.

6       Now if you read along with me -- is this on?

7           THE COURT:  They're looking.

8           THE JURY:  No, we can't see it.

9           THE COURT:  Thank you.

10          MR. LESCHT:  So this is the instruction you are going

11  to see on this very issue.  You see up here where it says this

12  here.  Whether there was a bona fide dispute.

13      So what I, my handwriting you're not going to see my

14  handwriting.  I just underlined the quote.  This comes straight

15  from the law.  In fact, it's a very easy understood law.

16      What it says is "that when an employer doesn't pay a

17  claimed wage that that employer is actually acting in good

18  faith unless there's a dispute."

19      Now in this case neither of the plaintiffs ever

20  submitted a request -- well, let's put it this way.  Ms. Radtke

21  never included the time that she was commuting from the

22  Pentagon to Kaiser in about the 13 months she did on her time

23  sheets.  Ms. Radtke never submitted a request to be reimbursed

24  for anything.

25      So when she left the employment of Advanta, Advanta had

1   no way of knowing that she disputed the way she was paid until

2   they get notice of this lawsuit.

3        And just the fact of being sued does not create a

4   dispute.  What this is talking about is at the time that the

5   company is employing these people shortly thereafter.  That's

6   what this is talking about.

7        And in the case of Ms. Cunningham she, her claim has to

8   do with when she did the work at Kaiser and did the work at

9   Walter Reed.  It's about 13, about 16 months she did that work.

10       Now during that time the only time that my client has

11  contended that she was an independent contractor is when she

12  did the work at Kaiser in Hyattsville.  My clients have never

13  contended that she was an independent contractor of Walter

14  Reed.  That's what was argued by Mr. Salb.  That was never our

15  contention.

16       Her claim for overtime is that when she was working at

17  Walter Reed and then I'll just call it moonlighting, you know,

18  over at Kaiser in Hyattsville, that those hours should be

19  combined, and if you add those hours up she contends that they

20  exceed 40 and that she should be paid for the overtime.

21       Now again, in terms of the statute she never submitted a

22  request for overtime pay.  Remember that each of the plaintiffs

23  were, worked a hundred percent of every time sheet they

24  submitted.  So for Mr. Salb to suggest that my clients acted in

25  bad faith or they are these mean people or scheming people,

1   scheming Government it's just outrageous, it's just not true.

2       Look at how each of these clients were treated in their

3   employment.  There's no claim here that they were underpaid on

4   anything that they had.  There's no claim here for unpaid

5   benefits.  There's no claim here for like back pay that their

6   time sheets had ten hours and they only got paid six hours.

7   This never happened.  In fact, you know, in fact, look at the

8   resignation letters and the e-mails that they gave.

9       Mrs. Ferrara wrote that Maria has always been fair to

10  me, those were her words, it's in the exhibit.

11      Ms. Ferrara wrote that it's been a wonderful experience

12  to work for you and she meant Advanta.

13      Ms. Cunningham sent a resignation letter in saying that

14  it's been great, I'm quitting but please consider me for any

15  future work that you may need; i.e. like this moonlighting

16  work, contractor work I think she referred to it.

17      That's how they left.  They didn't leave in some kind of

18  health storm where I'm running out of here because you're not

19  paying me overtime.  The fact is that neither of my clients

20  ever knew that there was a claim for overtime until they got

21  notice of this lawsuit.

22      And this law is intended to protect employers who make

23  decisions and I never told that those decisions were wrong.

24  That's what this law is intended to do.  This law is intended

25  to punish people who are told by their employers during the

1  time that they're working there, or right when they get their

2  last paycheck that hey, you owe me money.  You owe me money

3  that you haven't paid me and then when the company doesn't pay

4  it, and it's found against them, then they get hit with this

5  punishment because this is a penalty.

6      It's not intended for people like Mr. Molina or like

7  John Advanta.  It would be turning this law on its head.

8  Absolutely turning the law on its head.  And somehow if you

9  rule that this does not apply, you would be frankly just

10  ignoring the evidence in the record.  All right.

11      You are going to be given a verdict form by the Judge to

12  fill out.  I'm going to go through it with you.

13      First question is with respect to Ms. Radtke.  What the

14  judge has done he's broken these verdict forms one for each

15  Plaintiff.  You can find for one Plaintiff, against one

16  Plaintiff, against both, it's up to you.  I'm just going to go

17  through these questions.

18      The first question is whether the plaintiffs established

19  that the time traveling between the Pentagon and Kaiser was

20  part of the principal activity and Mr. Salb has talked about

21  that.  All right.

22      So here's how my client saw it.  For the period of time

23  that Ms. Ferrara was working at the Pentagon and coming home to

24  her house in Rockville she never, she commuted.  Everyone

25  commutes.  All right.  She never submitted any requests for

1  payment for that time and apparently she's not in this lawsuit

2  either as we understand from the damage calculations.

3      Now whether you believe that Ms. Ferrara started working

4  at Kaiser because she wanted to, it's five minutes from her

5  house or because my client told her to, it doesn't, doesn't

6  remove the fact that she's working in the afternoon at a place

7  that's two minutes from her house.

8      If she had stayed at the Pentagon she would have

9  continued to commute back and forth from the Pentagon back to

10  Rockville.  So working over at Kaiser on Executive Boulevard

11  does not change the fact that she had to commute home from the

12  Pentagon.  It just doesn't.

13      And the fact is that she testified, you know, that she

14  would come back, get her car, get lunch, maybe go to Whole

15  Foods or some dry cleaner I think she said.  Sometimes she said

16  she would take a sandwich to the office.  According to my

17  client she told her that she would go home.

18      According to those e-mails that she sent in her own

19  words she said this should work out great for me because I can

20  go home.  If she went home, had lunch, then went to work

21  afterwards, that's just straight commuting.  You can't charge

22  someone overtime from going to the work place, home, then from

23  the home to another work place.  It's her decision.

24      And the numbers just so that you're clear about this,

25  this grand scheme that Mr. Salb says that Mr. Molina embarked

1 upon to deprive his client of overtime, if you award her, if

2 you find that Mrs. Ferrara should be reimbursed for time that

3 she traveled from the Twinbrook Metro Station to Kaiser, you

4 know, coming back from the Pentagon, if you agree that she had

5 to commute back and forth anyway and that was her commute and

6 she shouldn't be reimbursed for that -- but that she should be

7 reimbursed from the Metro to Kaiser it comes out to $712 over

8 the span of 13 months.  Okay.

9        If you believe that she should have been reimbursed for

10 the commute from the Pentagon back to Twinbrook, it comes out

11 to --

12          THE COURT:  $3,314.

13          MR. LESCHT:  Yeah, $3,000.  This is a span of 13

14 months.  That is the entire claim that's been made against my

15 client.

16        Now you heard Mr. Molina talk about this yesterday.  I'm

17 not minimizing or diminishing the fact that someone is entitled

18 to money or should have been paid or not been paid.  But that

19 is what you're talking about here and the fact is that when you

20 think about it, my client, my client never knew that she wanted

21 to be reimbursed for this money.  Never.  She never brought it

22 up.  You know, she never brought it up.

23        She says she did, but look at all of those e-mails, you

24 see how many pages of paper that they submitted.  I can't even

25 tell you how many file cabinets we have of these e-mails.

1  There's not a single one.  These are people that liked to send

2  e-mails.  There's not one.

3      Hey Warren, how come I'm not being paid for the travel

4  time.  Not one.  We are talking about approximately $712 if you

5  reimburse her for the travel from Twinbrook to Kaiser and a

6  couple of thousand dollars if you reimburse her and this is

7  over the span of 13 months from Pentagon to Kaiser.

8      We say the answer should be no.

9      Second question is did the plaintiffs establish by a

10 preponderance of the evidence -- are you able to see?  Yeah.

11     That Mrs. Cashetta was an employer of Mrs. Ferrara

12 Radtke.  And again, this is overkill.  I mean, Mrs. Ferrara

13 worked for Advanta.  There's no question about that.  She got

14 paid by Advanta.  Mrs. Cashetta was the President of Advanta.

15 She testified that she employed at that time some 25 or 30

16 people.

17     Her chain command that it was a loose chain of command,

18 it was a small business.  Small businesses are not run like the

19 military with a colonel.  Small businesses people wear many

20 hats.  They are just trying to get the business off the ground

21 and keep it moving.  But to hold Mrs. Cashetta personally

22 liable for this $712 or $2500 in overtime is just ridiculous.

23 She was not her personal employer.

24     I mean, what did she do?  She apparently met her at or

25 about the time she got hired and if any serious issues were

1 raised she would decide them.  But you heard, you even heard

2 Ms. Ferrara say and you remember back a couple of days, I asked

3 her okay, so let's talk about her job at Walter Reed -- excuse

4 me -- at the Pentagon.  She would go to the Pentagon and she

5 said that she was only employed for Advanta there.  That was

6 it.  She reported I think she said to a Major Franklin.

7       When she went to the Kaiser on Executive Boulevard she

8 reported to someone I think she named Ramon.  And it wasn't

9 anyone from Advanta.  How on earth are you going to say that

10 Mrs. Cashetta is her personal employer and that Mrs. Cashetta

11 and her personal business should be liable.

12       I submit to you if you make this finding you are just

13 turning the law on its head.

14       This is not to say that if you rule that Ms. Ferrara is

15 entitled to money to the seven hundred some odd dollars or the

16 couple of thousand dollars against Advanta, you don't need to

17 find all of a sudden that Mrs. Cashetta is personally liable

18 for the debts of her business.

19       Next question is going to be Number 3 here, did the

20 plaintiffs establish by a preponderance of the evidence that

21 Mrs. Cashetta and Advanta were joint employers.  The same kind

22 of question you'll see in these instructions about to be a

23 joint employer.  You know, but when you are talking about with

24 Ms. Cashetta with her what she did is not any different than

25 any other president of a business would do.  You run the

1  business, you make important decisions, you get involved in

2  lower level decisions when you need to.  Right.  You work 15

3  hours a day so it's inevitable that you are going to come

4  across things and the world of e-mails back then, you look at

5  these e-mails you get CCed by people.  A lot of these e-mails

6  if you go back to look you'll see if you go back and look at

7  these things from Ms. Cunningham or Ms. Ferrara you'll see that

8  she gets CCed.  And she gets CCed.  She's the type of person

9  that is working 18, 20 hours a day.  She's going to respond at

10 two o'clock in the morning or feel that she needs to respond.

11 She did nothing to warrant personal liability.

12        All right, Number 4 is the question that I first started

13 with.

14        Number five, did the plaintiffs establish oh, the

15 willfulness in not paying her overtime.  It's not quite the

16 same question with respect to the Maryland Wage Act.  There's

17 two laws that they have sued the defendants on.  One is the

18 Maryland law which I went through about the no bona fide and

19 this one has to do with the Fair Labor Standards Act.

20        It's against willfulness and willfulness suggests

21 intentional.  In other words, that you want to defraud

22 somebody.  Then you know you're doing it, it's wrong and you

23 are going to continue even though you know you're doing it

24 wrong.

25        So what do we have in the decision making here.  We have

1   Mr. Molina who testified that he learned about the opportunity

2   to do business at Walter Reed Army Medical Center.  His

3   employee prepared the proposal and the decision had to be made

4   whether or not that they would supply the type of medical

5   coders that were in the RFP which I think he said would be 11

6   or $13 an hour.

7       He decided that to fulfill the contract and to do the

8   job they couldn't do the job with those type of people.  They

9   needed to find more experienced people to do the job and the

10  more experienced people would have to be paid more money.

11      And then he looked into it and he decided that he would

12  need to let the Government know that because the Government RFP

13  says we want these types of people, 11 or $13 an hour, just

14  think about it.  If he had simply written yes and then supplied

15  those people for the contract, I'm talking about what the

16  Government wanted, they would get these bills and these time

17  sheets that called for people between 11 and $13 an hour and

18  say let's just give Mr. Molina some credit here and

19  Ms. Cashetta because they do employ a lot of people and they

20  are in this business.  They were not thrown off this contract

21  contrary to what you heard innuendo from Mr. Salb.  They

22  provided the services that were needed, right.

23      Say they gave the Government what the Government had put

24  in this RFP, right, we wouldn't be here.  It would have just

25  simply came at 11 or $13 an hour but according to them, they

1 probably would have been thrown off the contract because they

2 couldn't do that job.  So they decided they needed to hire

3 people, right, and let the Government know that he's going to

4 be paying more money.

5      So when the Government gets the invoices from them, the

6 Government think about it, if you are hiring somebody and you

7 say I want someone at $11 an hour, then you get an invoice from

8 them and all of a sudden somebody is making on an hourly basis

9 some 40 or $50 an hour you are going to say where does this

10 come from.  I'm not reimbursing you at this rate, right.

11      So he lets the Government know that he has to pay people

12 more money and when he submits the invoices it reflects the

13 higher rate.  It reflects the higher rate because he thinks

14 that he needs more experienced people.  And he writes, and he

15 has decided, you all disagree with him, but he decided back

16 then that he thought these people should be salaried and

17 reasonable people would disagree without one being considered

18 to be dishonest and fraudulent.

19      He decides that this is what he needs to do.  He says he

20 looked at some of these DOL letters.  He says he got these

21 interactive things and when you look at it, all it has really

22 is the same kind of instructions that you all started with the

23 description of administrative exemptions.  You try to see if

24 you think that you fit within one of these things.

25      He looked at it, he puts it down.  He submits it and

1   they do the Government contract and no one ever says that

2   anything was done wrong ever until this lawsuit.  So in terms

3   of trying to think are they deceiving or being, did they do

4   this in some sort of like effort to defraud the Government or

5   to defraud these people is just beyond the pale.  It just

6   didn't happen.

7         Mr. Molina did not make these decisions in order to

8   defraud Mrs. Ferrara and Mrs. Cunningham of the couple thousand

9   dollars.  Think about it.  He didn't know them back then.  And

10  remember, if there was such bad blood between these people, why

11  did Ms. Cunningham go and work with Kaiser and then when she

12  quit why did she ask for more work, to be considered for more

13  work.  She didn't feel like she was being defrauded.  The fact

14  is that Mr. Molina didn't defraud anybody.

15        He just made a decision and that decision was not to

16  willfully steal from people, it just wasn't, and it is not

17  reflected in this case.

18        So this is the verdict sheet for Carmen Cunningham.

19  Looks a little bit different.  Oh, I'm sorry.  First question

20  is whether the defendants, that would be my clients, prove that

21  she was an independent contractor when she worked for Advanta

22  over at Kaiser?

23        And on this like a lot of a few of these questions I

24  don't think that there's any evidence in the record to support

25  these claims.  The fact is that Ms. Cunningham testified that

1  when she was working at Kaiser she was working for Advanta

2  under that independent contractor agreement.  She testified she

3  wasn't working for Lifecare at that point in time.  Mr. Molina

4  didn't even know what she was doing for Advanta.  I call this

5  moonlighting, you call it whatever you want to do, but he

6  didn't even know that she was doing this.

7       So the question is what type of work was that?  Was it

8  as an employee or was it as an independent contractor?

9       Now my client testified that she asked to do this work

10  and she was happy to have her do the work and they used this

11  independent contractor agreement.  Now you look at that

12  agreement and Mrs. Cunningham signed the agreement and it

13  stated that she was going to do the work as an independent

14  contractor.

15       She made representations of warranties as an independent

16  contractor.  She asked that taxes not be withheld from her

17  checks.  Okay.  This is what she wanted.  You think that

18  Advanta cared if she was going to be paid by the hour as an

19  employee or paid by the hour as an independent contractor?  I

20  mean, it just makes no sense to think that this is some kind of

21  scheme.

22       But secondly, think about the work she did over at

23  Hyattsville at the Kaiser in Hyattsville.  She went when she

24  wanted to go, she set her own hours.  Put aside this testimony

25  you've heard about these things about what time they had to be

1    at Walter Reed or the Pentagon.  When she heard about the work

2    that Ms. Cunningham did over at Hyattsville Kaiser she went

3    after hours, she went before hours.  Apparently they gave her a

4    key so she could get in there and do her work.

5         She worked at the client site without any supervision at

6    all from anyone.  She said she sent her time sheets to Advanta

7    but of course, she had to send her time sheets to Advanta.

8    Look, independent contractors that's what they do.  They do

9    their job, they submit the bill to the client and they get

10   paid.  But the fact of submitting time sheets does not change

11   her from an independent contractor to an employee.  I mean,

12   lawyers submit bills with time sheets to clients.  Does that

13   make me an employee of theirs?  It just doesn't.

14        So for this period of time here when she was working

15   over in Hyattsville I mean, the record is, the record I'm

16   talking about, when I use the record I'm talking about the

17   testimony you have heard, shows that she was doing this on her

18   own, using the facilities of Kaiser.

19        She basically was being paid for what was inside of her

20   between her ears.  That's what contractors do, contractors do,

21   you are paid for your knowledge.  That's what she was doing.

22   She was showing up doing the work, getting paid.  That's the

23   essence of an independent contractor.

24        No one was standing over her from Advanta saying that

25   this is what you should do, this is not what you should do.

1  And I think they showed one invoice, not invoice, an e-mail

2  where someone that works for Mrs., for Advanta said I think it

3  was Erica Kleinbull said that Kaiser asked us to audit your

4  records because they said that there's a lot of mistakes.  That

5  doesn't change it from being an independent contractor to an

6  employee.

7       If you are an independent contractor you are paying

8  somebody to do a job and they tell you that this client says

9  this person is not doing the job that I'm paying you for, you

10  have got to look into it.  If you look at the e-mail it says

11  something like if you don't, if this continues we're going to

12  have to replace you with somebody else.  You go and hire and

13  fire someone it does not change an independent contractor to an

14  employee.  I mean, anyone can hire or fire anyone.

15       Okay, Number 2 similar to what I talked about before

16  regards to the issue of whether or not Ms. Cashetta should be

17  personally liable now to Mrs. Cunningham.  There's just no

18  reason to hold her personally liable.  There's really no

19  evidence to hold her personally liable.  If you are going to

20  hold anyone liable, you should hold the employer liable.

21       Here the next question this has to do with this notion

22  of joint employment.  You heard testimony and I'll just go over

23  this again.  I mean, and there's no dispute about this that

24  Lifecare was the general contractor, Advanta was the

25  subcontractor, they worked together.  Okay.  They worked

1   together on the contract.

2       Now a contractor relationship of a prime contractor and

3   subcontractor does not mean that they are one, okay.  Companies

4   work together all the time, particularly in this city you have

5   companies subcontracting out pieces of work on Government

6   contracts.  That's just the way it goes.  But it doesn't mean

7   that you're one in the same, okay.

8       What it means is that the prime contractor, in this case

9   Lifecare, decided that it needed some of another company that

10  had the expertise in medical coding and that's why they went

11  with Advanta.  Just because the two of them were contractors

12  together doesn't mean that they should be considered one in the

13  same.  Because remember, you know, companies, corporations, are

14  existing independent of one another.

15      In this case Advanta had its own office, it's own

16  employees, it's own staff, it's own ownership.  Lifecare had

17  it's own office, it's own staff, it's own employees, it's own

18  ownership.  They didn't, like the owners of Lifecare were not

19  owners of Advanta.  The owners of Advanta were not owners of

20  Lifecare.  The officers of Advanta were not officers of

21  Lifecare.  Officers of Lifecare were not officers of Advanta.

22      Advanta performed the services of recruiting these

23  employees and managing the medical coding services on the WRAMC

24  Project.  There's no reason that you should disregard the

25  corporate structures that are in place.  It's not going to

1   change anything like -- when I used the word about overkill,

2   this too is overkill.  If you find in favor of one of these

3   plaintiffs, this is just not going to impact anything.  This is

4   just an effort to muddy the waters.

5        Keep in mind plaintiffs are asking you to find that

6   Lifecare is responsible for the work that Mrs. Cunningham did

7   when she was working at Kaiser in Hyattsville for Advanta.

8   Think about that, how ridiculous is that.  How ridiculous is it

9   to think that Lifecare, the work she was doing in Kaiser in

10  Hyattsville was for Advanta.  The, whatever proceeds came out

11  of that was for Advanta.

12       Mr. Molina testified that he had no idea about what she

13  was doing over there.  So why would you hold his company

14  responsible?  I mean, I don't even understand why they are

15  trying to do this in this lawsuit.  There's nothing in the

16  record.  This is a burden of proof that they have.  They have

17  got to prove to you that there's a reason that Lifecare should

18  be held liable for the work that Mrs. Cunningham was doing over

19  at Hyattsville.  They presented nothing.  Nothing.

20       The next question is question 4 is identical to the one

21  I showed you before.  This is the Maryland Wage Act.  I'm just

22  going to put this up here again.  And again, there's just no

23  evidence that you have heard to support finding that either

24  Lifecare or any of the defendants here violated this Maryland

25  Wage Act.  And if you do so, you're going to do so without any,

1  anything in the record here because the evidence that we've

2  heard from the Plaintiff is to the contrary.

3      And question 5 for Ms. Cunningham is the same as I think

4  Question 5 for Mrs. Radtke.  This is this willfulness again.

5  As I said before, I'm not going to repeat myself.  There's

6  nothing in the evidence to show that, that they intended, that

7  they devised this, that the decision to pay a salary to

8  Mrs. Cunningham was intended to bribe her of about $3,500 over

9  the span of 16 months.  That's her claim.  So there's nothing

10 in the record to show that this is what they did.

11     The fact is that her claim for overtime is predicated on

12 you finding a joint employer.  I don't know if that makes any

13 sense to you, but Mrs. Cunningham's claim for overtime in large

14 part requires that you find that she worked as an employee of

15 Lifecare.  So think about this.  Mrs. Cunningham's time spent

16 over at Kaiser in Hyattsville, right, this was pursuant to this

17 side agreement to moonlight for Advanta.  Mr. Molina had no

18 idea about this, right.  He certainly had no idea about this at

19 the time that he was, you know, entering into, submitting the

20 bids for the contract at Walter Reed.

21     I mean, so he, to include him as being responsible for

22 the work that someone was doing is just, would just be

23 completely unfair.  Just because Mrs. Cunningham was working at

24 Walter Reed for Lifecare doesn't mean that Mr. Molina is

25 responsible for paying for her services when she decides to

1   moonlight at other places.  I mean again, it would turn

2   everything on its head.  It's not fair and it's just not

3   supported in, in the record here.

4        Mr. Molina at Lifecare did not hire Mrs. Cunningham to

5   go out to work at Kaiser, they didn't enter into that

6   agreement, signed, written or otherwise, had nothing to do with

7   it, had nothing at all to do with it.

8        I'll leave you with just the thought that your decision

9   here, having ruled that they were exempt, does not mean that

10  you need to accept everything that they're saying.  Now

11  particularly on these points and what I have gone through with

12  you is exactly what you are going to go through in the jury

13  room and look at these things and think about whether or not

14  the plaintiffs have established these facts.

15       Because whereas previously we had the burden of proof to

16  prove that there was an exception, they have the burden of

17  these things.  They have got to prove it's more likely than

18  not.  I have to prove the things I have just said, they have

19  not proven anything.  Forget about it being equal.  There's

20  nothing.  They've proven nothing.

21       And you should come back with a verdict on this part of

22  the case for us.  Because there's nothing in the record in the

23  testimony that you have heard to support any of the claims, any

24  of the issues that you are going to be deciding here.

25       The one issue that there's, I think that there's a

1  dispute and you will have to come to some sort of decision on

2  is this commuting time, you know, for Mrs. Ferrara for these 13

3  months.  Should she be reimbursed for coming home from the

4  Pentagon that she would have had to do anyway or should she be

5  reimbursed from the time in the Twinbrook Metro to Kaiser.  You

6  know, otherwise these other issues there's really nothing

7  there.

8       Thank you.

9          THE COURT:  Five minutes, Mr. Salb.

10      Mr. Salb, before you begin, I need a moment.  I'll be

11  right with you.

12      (Pause.)

13      Thank you.  I'm sorry, please proceed, counsel.

14          MR. LESCHT:  Objection, Your Honor.  I'm looking at

15  what he's writing here.  He submits this to the jury.

16          THE COURT:  The objection -- I thought --

17          MR. LESCHT:  He's actually showing it to the jury

18  now.

19          THE COURT:  Please take it down, please take it down

20  immediately.

21          MR. LESCHT:  I have a motion to make.

22          THE COURT:  All right, just a second.

23        Please take it down.

24          THE DEPUTY CLERK:  It's down, I turned it down.

25          THE COURT:  Come up.  I can see.

1          (Bench conference.)

2          MR. LESCHT:  Turning now to number of employees, some

3    kind of thousand dollar savings.  He's going to go around and

4    argue for the jury now all of a sudden with no evidence in the

5    record for any of this stuff.

6          This is absolutely outrageous and moreover, this is like

7    the third or fourth time I have had to come up here and draw

8    attention to inappropriate behavior by plaintiff's counsel.

9          It's time for the Court to issue a mistrial on this

10   issue and impanel a new jury.  This, the previous blurting out

11   of the answers and making me having to come up here and draw

12   attention to it was inappropriate and it infected the verdict

13   in the first place.  Here he is sitting writing this out for

14   the jury to see is absolutely outrageous.

15          THE COURT:  What were you doing?

16          MR. SALB:  Mr. Lescht --

17          THE COURT:  I asked you a question.  What were you

18   doing?

19          MR. SALB:  I'm explaining, Your Honor.

20          THE COURT:  What were you doing when you stood up

21   there and began writing on the board?

22          MR. SALB:  I'm trying to explain, Your Honor.

23          THE COURT:  Please do, sir.

24          MR. SALB:  Mr. Lescht told the jury that this was a

25   meaningless sum of money, that they didn't have any reason to

1  engage in this.

2      The fact is that when you look at this, these dollars

3  collectively, if they can find savings of this sort from all of

4  their employees, the amount of money will be real.

5      No, I'm not saying that there's evidence in the record

6  to support that.  This is argument.  And certainly when

7  opposing counsel has put in issues why the defendants would do

8  what they're doing, and when we see that the cumulative impact

9  of this savings and that savings dealing with these issues are

10 real money, there's nothing incorrect or improper about that.

11     THE COURT:  I disagree.  There was, I recall no

12 evidence that indicated with any kind of exactitude how many

13 people were or were not effected by this determination.  To

14 presume that all presumes a fact not in evidence.

15     The objection is sustained.  That argument is

16 inappropriate.

17     The motion for mistrial is denied.

18     Thank you.

19     (Open court.)

20     THE COURT:  Ladies and gentlemen, disregard what was

21 said.

22              REBUTTAL ARGUMENT BY MR. SALB

23     MR. SALB:  Ladies and gentlemen, Mr. Lescht asked you

24 why would he do this?  It's such a small amount of money.  I'm

25 sure you can figure the answer to that.

1        It almost doesn't matter.  If it's such a small amount

2   of money why are we arguing about it?  He says there was no

3   dispute.  There was no dispute when they worked there.  He is

4   ignoring the clear law that has applied not just in the last

5   eight or ten years, but for decades which is that it is the

6   employer's responsibility to make sure that wage and hour laws

7   are met.  It is the employer's responsibility to make sure that

8   an employee is paid for every hour that he or she works.

9        You cannot as a matter of law say we didn't know.  We

10  didn't know it was our responsibility.  We didn't know she was

11  working at the time.  We thought that she was magically

12  transporting from the Pentagon to Kaiser Permanente.  Come on.

13  It is their burden to pay their employees.  It is their burden

14  to make sure that they do the research to know the law, to talk

15  to a lawyer and they didn't do that.

16       Time and again Mr. Lescht tried to confuse the issues.

17  He's talking about corporate form.  Business law 101.  A

18  corporation sort of insulates so that if I create a home

19  improvement company and it's a corporation and I go into

20  somebody's house and instead of hammering a nail, I hammer the

21  window you can sue my company but you can't sue me.  This is

22  not something that happens to us because God has said it is so

23  or because it's in the Constitution of the United States.

24       It's because the state law says so and guess what, the

25  state law also says you don't pay attention to corporate form.

```
1    That is not the determining factor in deciding who is to be

2    held responsible.  Mr. Lescht talked to you for a very long

3    time about things that have nothing to do with the decision you

4    have to make.  You have to decide who is to be held

5    responsible, who had control.  And did they honestly and

6    diligently try to ensure that they were honestly and correctly

7    paying their employees.  That's your decision to make.

8         Thank you.

9         THE COURT:  Ladies and gentlemen, I broke rule number

10   one.  When I go to the bathroom everybody goes to the bathroom.

11   I have some instructions to read.  They're not very long, but

12   if you want a biological break, what do you want to do?

13        Anybody?

14        THE JURY:  Stay here.

15        THE DEPUTY CLERK:  Can I ask one question before you

16   start?  Ask you?

17        (Pause.)

18        THE COURT:  Counsel, that sentencing matter, I can

19   probably get to it by 11:30.  All right.  Is that acceptable to

20   you?  You are not available at 1:45?

21        THE DEPUTY CLERK:  Mr. Johnson isn't.

22        THE COURT:  Mr. Johnson, you are not available?

23        MR. JOHNSON:  I have a plea at two o'clock.

24        THE COURT:  All right, sit for a while.

25        Nice thing about being a Judge, you can tell --
```

1                     INSTRUCTIONS OF THE COURT

2          Ladies and gentlemen of the jury, I am going to give you

3   my instructions to the remaining issues of the case.  I want to

4   remind you the instructions I gave you previously of course

5   still pertains, so that's why I let you keep them.  So if you

6   have any questions about the issues I discussed in my earlier

7   instructions which is in the burden of proof or credibility,

8   any of those, please consult those instructions.

9          The only one I want to remind you of is again, as we

10  have said throughout the trial lawyers can be reasonably

11  expected in and during their closing arguments to you as in

12  their opening statements to make statements about their own

13  recollection of the evidence or to make statements of the law.

14         As to their recollections remember you and you alone are

15  the judges of the fact.  You have to trust your own

16  recollection.  As to the law I'm about to give you, you are

17  duty bound to apply it as I give it to you.

18         Thank you.

19         This is the jury instructions as to the remaining

20  issues.  Whether Plaintiff Cunningham was an independent

21  contractor, the defendants have the burden of proof on this

22  case.  For any period of time that the Plaintiff Cunningham was

23  an independent contractor, and not an employee of the

24  defendants, she is not entitled to overtime pay.

25         There is no single rule or test for determining whether

1   an individual is an independent contractor or an employee for

2   the purposes of the Fair Standard Labors Act, Fair Labor

3   Standards Act and it's the total activity or situation that

4   controls.  Rather than looking solely at the title of the

5   individual you must look at the economic reality of the

6   situation to determine whether she was an employee or an

7   independent contractor.

8          Factors to consider include the degree of control

9   exercised by the employer over the workers.  The worker's

10  opportunity for profit or loss and their investment in the

11  business.

12         Three, the degree of skill and independent initiative

13  required to perform the work.

14         Four, the performance or duration of the working

15  relationship.

16         And five, the extent to which the work is an integral

17  part of the employer's business.

18         After considering these factors and the overall economic

19  reality of the relationship between Plaintiff Cunningham and

20  the defendants for the period of time in which she was alleged

21  to be an independent contractor, you determine whether she was

22  an independent contractor.

23         Whether to discount Plaintiff Radtke's time traveling

24  from the Pentagon to Kaiser Permanente, the Plaintiff has the

25  burden of proof on this claim.  Time spent by an employee on

1  travel as part of her principal activity such as travel from

2  job site to job site during the workday must be counted as

3  hours worked.  You must therefore determine whether the time

4  spent by Plaintiff Radtke traveling from the Pentagon to Kaiser

5  Permanente was time spent as part of the principal activity of

6  a workday.

7        Note, however, that an employee who travels from home

8  before her regular workday and returns to her home at the end

9  of the workday is engaged in ordinary home to work travel which

10 is a normal incident of employment.  That is true whether she

11 works at a fixed location or at a different job site.  Normal

12 travel from home to work is not overtime.

13       Whether the defendants withheld plaintiff's overtime pay

14 not as a result of a bona fide dispute.  The plaintiffs have

15 the burden of proof on this claim.  You must determine whether

16 for the defendants who employed each Plaintiff and failed to

17 pay wages owed to that Plaintiff the failure to pay was not a

18 result of a bona fide dispute.  A finding of no bona fide

19 dispute is essential in a finding that the defendants acted in

20 bad faith.

21       Whether the defendants acting willfully.  The plaintiffs

22 have the burden of proof on this claim.  You must also

23 determine whether the defendants acted willfully in not paying

24 any overtime pay.  This is similar to but distinct from

25 whether there was bona fide dispute about whether overtime pay

1   was owed.

2        The defendants acted willfully if they know -- if they

3   knew or showed reckless disregard of the question of whether

4   their conduct was prohibited under the Fair Labor Standards

5   Act.

6        The defendants showed reckless disregard if they acted

7   or failed to act with a conscious lack of concern for the

8   consequences.  The plaintiffs must therefore establish by a

9   preponderance of the evidence that the defendants were not

10  merely negligent, but either knew of their obligations to pay

11  overtime or acted in reckless disregard of those obligations

12  and nevertheless did not pay plaintiffs the overtime due them

13  in order for you to find the defendants' behavior willful.

14       Liability of defendant Cashetta.  The plaintiffs have

15  the burden of proof on this claim.  A supervisor may under

16  certain circumstances be personally liable for the unpaid

17  overtime pay of an employee if that supervisor is an employer

18  under an economic realities test.

19       The ultimate question for you is what amount of control

20  the supervisor played in causing any under payment of overtime

21  wages to the employee.  No one factor is dispositive and these

22  factors are intended only to help you resolve the question of

23  whether the economic realities of the supervisor employer

24  relationship was such that defendant Cashetta was one of the

25  plaintiff's employers.

1      You must consider whether the defendant Cashetta one,

2  had the power to hire and fire the employees.

3      Two, supervised and control employee work schedules or

4  conditions of employment.

5      Three, determine the rate and method of payment.

6      And four, maintained employment records.

7      Joint employers.  The plaintiffs have the burden of

8  proof on this claim.  If two or more employers are joint

9  employers, then they are jointly responsible to ensure that the

10  worker's rights under the Fair Labor Standards Act are

11  protected including overtime pay and that they are jointly

12  liable for any damages that may result from a breach of these

13  rights.

14      Two or more employers may be joint employers if the

15  economic reality is that both employers have functional control

16  over the terms and conditions of the employee's work and

17  employment.

18      However, if the employees are completely disassociated

19  however -- excuse me -- however, if the employers are

20  completely disassociated with respect to the employment of that

21  particular employee, they are not considered joint employers.

22      Here if you have determined that defendant Cashetta was

23  an employer of one or both plaintiffs, then you must determine

24  whether defendants Cashetta, Lifecare and Advanta were joint

25  employers for each Plaintiff.

1        If you determine that the defendant Cashetta was not an

2   employer, you must determine whether defendants Lifecare and

3   Advanta were joint employers of each Plaintiff.

4        A joint employment relationship generally will be

5   considered to exist when the employee performs work which

6   simultaneously benefits two or more employers or works for two

7   or more employers at different times during the workweek.  It

8   also generally exists one, where there is an arrangement

9   between the employers to share the employee's services as for

10  example to interchange employees.

11       Two, whether one employer is acting directly or indirectly

12  in the interests of the other employer or employers in relation

13  to that employee.

14        Or three, where the employers are not completely

15  disassociated with respect to the employment of a particular

16  employee and may be deemed to share control of the employee

17  directly or indirectly by reason of the fact that one employer

18  controls, is controlled by or is under the common, is under

19  common control with the other employer.

20       There are additional factors to consider in determining

21  whether the economic reality is that the defendants were joint

22  employers for each Plaintiff.  No one factor is dispositive and

23  these factors are intended only to help resolve the question of

24  whether the economic realities of the employers means that they

25  were joint employers.

1    You must consider whether the defendants one, had the

2   power to hire and fire the employers.

3    Two, supervise and control of the employee work

4   schedules or conditions of employment.

5    And three, determine the rate and method of payment.

6    And four, maintain employment records.

7    That concludes my instructions.  However, the parties

8   have agreed that I may state the following to you with

9   reference to plaintiffs' claims.

10    If you find that Plaintiff Radtke should not be

11   reimbursed for her full travel time from the Pentagon to Kaiser

12   Permanente, she will be owed a total of $721.73.

13    If you find that Plaintiff Radtke should be reimbursed

14   for her full travel time from the Pentagon to Kaiser Permanente

15   she will be owed a total of $3,245.60.

16    If you find that Plaintiff Cunningham should not be paid

17   overtime for the time spent with Kaiser Permanente she will be

18   owed $2,582.18.

19    If you find that Plaintiff Cunningham should be paid

20   overtime for time spent at Kaiser Permanente she will be owed

21   $3,597.77.

22    By making that statement defendants do not one, admit in

23   any way that she is entitled to that money.

24    Or two, concede in any way that by giving, by letting

25   you have this information that it should have any impact on

1    your verdict.

2        I agree as to the latter.  You should determine your

3    answer to the questions we are giving you independently of your

4    consideration of the amounts I just read.

5        Ladies and gentlemen, you will continue as foreperson,

6    sir, and you may commence your deliberations.

7        You will of course be given verdict forms you already

8    saw them.

9        You will have your notes from the earlier session.

10       THE DEPUTY CLERK:  I have them.

11       THE COURT:  Lynn will give them to you.

12   I'm sorry, I have the verdict forms.

13   Thank you.

14   (Jury excused at 11:15 a.m.)

15       THE COURT:  Counsel, you are excused.  Please, I

16   would urge you to remain close by at least until the luncheon

17   recess.

18       Would you please look carefully at that sheet.

19       Counsel, we've given you a sheet.  Would you please

20   spend time answering your questions posed there which will help

21   me shape the judgment that I have to enter.  Without it I

22   can't.

23       MR. SALB:  I don't really -- you talking about this?

24       THE COURT:  Yes.  If you think about it for a minute

25   it would be the damages awarded on, as a function of the

1  willfulness, so that the willfulness is, would either be two or

2  three years, that's what that is all about.

3           MR. SALB:  Would --

4           THE COURT:  Sidney, are you going to be the Marshal?

5           THE DEPUTY CLERK:  No.  No, he's here for the

6  criminal matter.

7           THE COURT:  You are here for criminal?  But the CSO

8  is going to handle the jury.

9           THE DEPUTY CLERK:  Yes, he's the same one that you

10  swore yesterday.

11          (Recess pending verdict at 11:20 a.m.)

12          (Proceedings resumed at 11:40 a.m.)

13          THE COURT:  All right.  We have received the

14  following notes from the jury.  The first one is dated January

15  17th at 11:25 signed by the foreperson.  Reads as follows:

16          Judge Facciola, my interpretation for question Number 3

17  in the verdict form for Cunningham that we are not required to

18  check any of the three options.

19          Is that correct?

20          MR. SALB:  Can you reread it, please, Your Honor?

21          THE COURT:  Our interpretation for question Number 3

22  in the verdict form for Cunningham that we are not required to

23  check any of the three options; is that correct?

24          Verdict form Number 3 reads as follows.  That the

25  plaintiffs establish by a preponderance of the evidence that

1   two or more of the defendants were joint employers.  And they

2   are given the choices of Advanta, Maria or Lifecare.

3          We could modify that to say, ask them to check those

4   defendants who they believed were joint employers.

5          MR. SALB:  Your Honor, I think that the inclusion of

6   Lifecare is probably confusing the jury because Lifecare is

7   already an employer.

8          Perhaps the question might be better put did the

9   plaintiffs establish by a preponderance of the evidence that --

10  or strike that.

11         Which if any of the following did the plaintiffs

12  establish by a preponderance of the evidence was an employer.

13  Lifecare would not be on the list.  It would just be Advanta

14  and Maria.

15         The issue that the jury has to decide is whether Advanta

16  is an employer, whether Maria Cashetta is an employer, not

17  whether they are joint employers.  Joint employers is the legal

18  consequence of having more than one employer.

19         And I think that using the phrase joint employers

20  creates confusion and having Lifecare on the list creates

21  confusion because Lifecare is already liable.

22             THE COURT:  Mr. Lescht.

23             MR. LESCHT:  I disagree, and Mr. Salb would be right

24  if my judgment, my motion for judgment as a matter of law had

25  been granted.

1    Lifecare the only contention in this case at this point

2    for Ms. Cunningham for this joint employer is he's trying to

3    hold Lifecare responsible for this independent contractor work

4    which I had moved to dismiss and it wasn't granted.

5    I think that your question as you stated it should not

6    be modified because their question that the predicate as I read

7    their question is that can they answer no and if anything, you

8    should go back to them and say yeah, you don't need to check

9    any of the boxes, because the question was I think the

10   Plaintiff --

11   THE COURT:  So you suggest that the question should

12   say none of the above?

13   MR. LESCHT:  I think that's the predicate to the

14   question can we just say no.  You should write back to them

15   yes, you are correct, you don't have to check any of these

16   boxes.  Your answer can be no.

17   THE COURT:  Okay.  Let me read you the second one.

18   Question Number 4 on the Cunningham and Radtke forms.

19   This is at 11:30.  In your instructions you state a finding of

20   no bona fide dispute is essentially a finding that the

21   defendants acted in bad faith.  If this be so, would we check

22   yes or no?

23   The question to which they have directed my attention is

24   the question proposed to them is quote, did the plaintiffs

25   establish by a preponderance of the evidence that the dispute

1   between Plaintiff Radtke and any of the defendants about

2   whether she was owed overtime pay was not bona fide?

3        Yes, would indicate there was no bona fide dispute.  No

4   means there was a bona fide dispute.  Is that correct?

5        MR. LESCHT:  I'm just going to state for the record

6   that this question is coming in our opinion because the

7   instructions were erroneous and this interrogatory on the

8   verdict sheet is confusing.

9        As I stated before on my objections on the record.

10       THE COURT:  How would you phrase it?

11       MR. LESCHT:  Well, it sounds to me like they have no

12  idea what the instruction meant and they have no idea what the

13  question means.

14       I mean, the question really is did the plaintiffs

15  establish by a preponderance of the evidence that the

16  defendants violated the Maryland Wage Act and should be

17  punished with triple damages.

18       THE COURT:  Okay, so you don't --

19       MR. LESCHT:  I don't know how you fix what's been

20  written there.

21       THE COURT:  You are saying it can't be fixed?

22       MR. LESCHT:  It could have been fixed if Your Honor

23  had included in the jury instructions your discussion of the

24  Maryland Wage Act earlier yesterday.

25       THE COURT:  Okay.

1          MR. LESCHT:  Because I think you stated it very

2     clearly.

3          THE COURT:  Yes, Mr. Salb.

4          MR. SALB:  Your Honor, could you reread the note,

5     please, Your Honor?

6          THE COURT:  In your instructions you state a finding

7     of no bona fide dispute is essentially a finding that the

8     defendants acted in bad faith.  If this be so, can we check yes

9     or no?

10          MR. SALB:  So the answer to their question is you

11     would check yes.

12          THE COURT:  And that means there is no bona fide

13     dispute?

14          MR. SALB:  Yes, Judge.

15          THE COURT:  Thank you.  Let me consider these matters

16     and I'll be right back.

17          (Recess at 11:49 a.m.)

18                              -oOo-

19          (Proceedings resumed @ 12:27 p.m.)

20          (Jury present.)

21          THE COURT:  Please be seated.

22      Ladies and gentlemen, I have your notes with reference

23     to the first one.  Our interpretation for question 3 in the

24     verdict form for Cunningham is that we're not required to check

25     any of the three options, is that correct?

1    Ladies and gentlemen, I'm going to answer that question by

2    revising the verdict form for Cunningham in the hopes that it's

3    clearer.

4    Mr. Foreperson, destroy the other verdict form and use

5    only the one I'm sending in.

6    As you'll see the verdict form for Cunningham now has two

7    sides, bear that in mind.  There's a question 6.

8    With reference to your other question which is as follows:

9    In your instructions you state finding of no bona fide dispute

10   is essentially a finding that the defendants acting in bad

11   faith.  If this be so do we check yes or no?  To which I

12   respond as follows:  If you check yes to those questions, which

13   is now 4 as to Radtke and 5 as to Cunningham.  If you check

14   yes, you are finding that plaintiffs have established that

15   there was no bona fide dispute.  If you check no, you are

16   finding that plaintiffs have failed to establish that there was

17   no bona fide dispute.  Meaning that you have necessarily found

18   that there was a bona fide dispute.  I'm going to initial that

19   Mr. Foreperson and send that in to the jury room with a new

20   verdict form.  Thank you, please resume your deliberations.

21       They're going to get their lunch?

22        THE JUROR:  Yes.

23        (Jury excused @ 12:30 p.m.)

24        THE COURT:  Will they deliberate during lunch, so

25   counsel should stick by. Thank you.

1    (Recessed pending verdict at 12:30 p.m.)

2    (Luncheon recess at 12:30 p.m.)

3        -oOo-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    M-I-S-C-E-L-L-A-N-E-O-U-S

2                                                    Page

3     Closing Argument by Mr. Salb              11

4     Closing Argument by Mr. Lescht            24

5     Rebuttal Argument by Mr. Salb             47

6     Instructions of the Court                 50

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2          I certify that the foregoing is a true and correct

3     transcript, to the best of my ability, of the above pages, of

4     the stenographic notes provided to me by the United States

5     District Court, of the proceedings taken on the date and time

6     previously stated in the above matter.

7          I further certify that I am neither counsel for, related

8     to, nor employed by any of the parties to the action in which

9     this hearing was taken, and further that I am not financially

10    nor otherwise interested in the outcome of the action.

11

12

13    /s/Crystal M. Pilgrim, RPR               Date:   January 25, 2014

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$11 [1]   36/7
$13 [4]   35/6 35/13 35/17
 35/25
$2,245.60 [1]   8/10
$2,582.18 [1]   56/18
$2,583.18 [1]   3/17
$2,597.77 [1]   8/16
$2500 [1]   32/22
$3,000 [1]   31/13
$3,245 [1]   3/14
$3,245.60 [1]   56/15
$3,314 [1]   31/12
$3,500 [1]   43/8
$3,597.77 [2]   3/19 56/21
$50 [1]   36/9
$712 [3]   31/7 32/4 32/22
$721.73 [3]   3/12 8/7
 56/12

**-**

-------------------------
 1/7
-oOo [2]   62/18 64/3

**/**

/s/Crystal [1]   66/13

**0**

06-2031 [1]   1/4

**1**

101 [1]   48/17
1050 [1]   1/18
11 [5]   35/5 35/13 35/17
 35/25 65/3
1100 [1]   1/15
11:15 [1]   57/14
11:20 [1]   58/11
11:25 [1]   58/15
11:30 [2]   49/19 60/19
11:40 [1]   58/12
11:49 [1]   62/17
12:27 [1]   62/19
12:30 [3]   63/19 64/1 64/2
13 [6]   26/22 27/9 31/8
 31/13 32/7 45/2
15 [1]   34/2
16 [2]   27/9 43/9
17 [1]   1/5
17th [2]   1/18 58/15
18 [1]   34/9
1:45 [1]   49/20

**2**

2,583.18 [1]   8/13
20 [1]   34/9
20001 [1]   1/23
20036 [1]   1/19
2014 [2]   1/5 66/13
2031 [1]   1/4
20814 [1]   1/15
24 [1]   65/4
25 [2]   32/15 66/13

**3**

30 [1]   32/15
333 [1]   1/22

**4**

40 [2]   27/20 36/9

400 [1]   1/18
47 [1]   65/3

**5**

5

50 [1]   65/6

**6**

6

60 [1]   16/23

**7**

7

7979 [1]   1/14

**8**

8

80 [3]   16/23 16/24 16/25

**9**

9

9:30 [1]   1/6
9:40 [1]   6/12
9:41 [1]   6/13

**A**

a.m [8]   1/6 1/9 6/12 6/13
 57/14 58/11 58/12 62/17
ability [1]   66/3
able [2]   18/6 32/10
about [97]
above [3]   60/12 66/3 66/6
absolutely [3]   29/8 46/6
 46/14
academic [1]   2/21
accept [1]   44/10
acceptable [4]   5/13 8/2
 8/22 49/19
according [4]   3/10 30/16
 30/18 35/25
across [1]   34/4
act [15]   14/2 20/10 20/10
 22/3 34/16 34/19 42/21
 42/25 51/2 51/3 53/5 53/7
 54/10 61/16 61/24
acted [10]   10/7 19/13
 27/24 52/19 52/23 53/2
 53/6 53/11 60/21 62/8
acting [5]   23/25 26/17
 52/21 55/11 63/10
action [2]   66/8 66/10
actions [1]   20/5
activity [5]   12/15 29/20
 51/3 52/1 52/5
actually [7]   4/3 7/8 13/3
 23/6 25/25 26/17 45/17
add [4]   8/24 9/4 22/9
 27/19
adding [1]   22/21
additional [1]   55/20
address [3]   6/14 19/10
 19/10
administrative [2]   21/6
 36/23
admit [1]   56/22
Advanta [57]   13/25 14/12
 14/13 14/15 14/18 14/20
 14/23 15/1 15/5 15/10
 15/13 15/16 15/19 15/24
 16/1 16/5 16/6 16/13
 16/15 19/7 20/16 26/25
 26/25 28/12 29/7 32/13
 32/14 32/14 33/5 33/9
 33/16 33/21 37/21 38/1
 38/4 38/18 39/6 39/7
 39/24 40/2 40/24 41/11
 41/15 41/19 41/19 41/20

41/21 41/22 42/7 42/10
 42/19 43/17 54/24 55/3
 59/2 59/13 59/15
Advanta's [2]   14/19 14/22
advised [1]   21/19
affirmative [1]   15/19
after [3]   13/19 39/3
 51/18
afternoon [2]   16/12 30/6
afterwards [1]   30/21
again [13]   10/9 11/10
 16/9 22/12 27/21 32/12
 40/23 42/22 42/22 43/4
 44/1 48/16 50/9
against [10]   2/20 2/24
 4/17 10/5 29/4 29/15
 29/16 31/14 33/16 34/20
ago [2]   25/18 25/19
agree [9]   4/10 13/3 14/13
 15/12 17/9 17/15 23/21
 31/4 57/2
agreed [5]   2/5 4/7 7/22
 25/3 56/8
agreeing [1]   22/20
agreement [11]   3/9 4/25
 15/11 17/12 23/12 38/2
 38/11 38/12 38/12 43/17
 44/6
agrees [2]   13/25 14/1
ahead [1]   24/23
aided [1]   1/25
AL [2]   1/3 1/6
ALAN [2]   1/16 1/17
all [41]   2/6 3/4 3/23 5/4
 9/9 10/24 11/20 12/5 13/3
 14/6 14/6 15/2 15/19 17/9
 17/21 23/15 23/15 24/8
 25/10 26/5 29/10 29/21
 29/25 31/23 33/17 34/12
 36/8 36/15 36/21 36/22
 39/6 41/4 44/7 45/22 46/4
 47/3 47/14 49/19 49/24
 58/2 58/13
alleged [1]   51/20
almost [2]   23/15 48/1
alone [1]   50/14
along [1]   26/6
already [5]   3/2 10/17
 57/7 59/7 59/21
also [9]   5/4 10/15 12/4
 14/13 17/20 23/14 48/25
 52/22 55/8
always [2]   20/24 28/9
am [4]   21/22 50/2 66/7
 66/9
amount [13]   2/24 3/6 3/11
 3/14 3/17 3/19 3/24 9/2
 9/8 47/4 47/24 48/1 53/19
amounts [4]   3/9 4/10 5/11
 57/4
another [9]   10/5 11/20
 12/7 12/10 15/6 16/15
 30/23 41/9 41/14
answer [13]   3/25 4/16
 12/12 14/14 15/18 19/16
 32/8 47/25 57/3 60/7
 60/16 62/10 63/1
answering [1]   57/20
answers [5]   2/11 12/16
 20/24 20/25 46/11
any [44]   5/2 5/11 6/22

**A**  Case 1:06-cv-02031-JMF

any... [41]  7/8 7/10 8/20 16/22 17/12 22/17 22/18 22/19 26/5 28/14 29/25 32/25 33/24 33/25 37/24 39/5 42/24 42/25 43/12 44/23 44/23 46/5 46/25 47/12 50/6 50/8 50/22 52/24 53/20 54/12 56/23 56/24 56/25 58/18 58/23 59/11 60/9 60/15 61/1 62/25 66/8
anybody [2]  37/14 49/13
anyone [7]  10/12 17/8 33/9 39/6 40/14 40/14 40/20
anything [11]  4/12 9/22 11/8 26/24 28/4 37/2 42/1 42/3 43/1 44/19 60/7
anyway [2]  31/5 45/4
anywhere [1]  19/20
apparently [4]  21/23 30/1 32/24 39/3
appeal [1]  6/9
APPEARANCES [1]  1/12
applicability [1]  23/10
application [2]  3/25 25/8
applied [1]  48/4
apply [3]  12/9 29/9 50/17
approach [1]  14/8
approximately [1]  32/4
are [86]
aren't [1]  12/18
argue [1]  46/4
argued [1]  27/14
arguing [2]  23/6 48/2
argument [9]  6/3 11/6 24/7 47/6 47/15 47/22 65/3 65/4 65/5
arguments [3]  9/9 11/2 50/11
Army [1]  35/2
around [1]  46/3
arrangement [2]  18/2 55/8
arrives [1]  18/22
as [55]  3/2 3/23 4/7 7/22 10/14 11/2 12/8 12/11 12/14 12/25 16/3 16/17 20/20 22/5 23/2 23/4 23/20 30/2 38/8 38/8 38/13 38/15 38/18 38/19 43/3 43/5 43/14 43/21 48/9 50/9 50/11 50/14 50/16 50/17 50/19 52/1 52/1 52/2 52/5 52/14 55/9 57/2 57/5 57/25 58/15 58/24 59/24 60/5 60/6 61/9 63/6 63/8 63/12 63/13 63/13
aside [2]  14/10 38/24
ask [9]  2/7 2/7 4/21 5/9 22/25 37/12 49/15 49/16 59/3
asked [7]  13/5 33/2 38/9 38/16 40/3 46/17 47/23
asking [3]  13/20 19/16 42/5
aspect [1]  2/10
assignment [1]  11/25
Associates [1]  1/17

**B**

assumed [1]  21/13
attention [5]  11/10 46/8 46/12 48/25 60/23
audit [1]  40/3
available [2]  49/20 49/22
Avenue [1]  1/22
award [2]  13/5 31/1
awarded [4]  3/10 3/13 7/23 57/25
away [1]  17/8

Bachelors [1]  20/18
back [2]  11/15 11/15 22/10 25/18 25/21 28/5 30/9 30/9 30/14 31/4 31/5 31/10 33/2 34/4 34/6 34/6 36/15 37/9 44/21 60/8 60/14 62/16
bad [7]  17/13 27/25 37/10 52/20 60/21 62/8 63/10
bait [1]  11/12
basically [1]  39/19
basis [3]  3/3 18/6 36/8
bathroom [2]  49/10 49/10
be [116]
bear [2]  2/10 63/7
because [39]  5/5 5/11 6/10 9/1 9/11 10/1 12/8 12/16 13/7 19/21 21/22 24/18 26/1 26/3 28/18 29/5 30/4 30/5 30/19 35/12 35/19 36/1 36/13 40/4 41/11 41/13 43/1 43/23 44/15 44/22 48/22 48/23 48/24 59/6 59/21 60/6 60/9 61/6 62/1
become [1]  25/19
been [14]  6/21 9/20 25/9 28/9 28/11 28/14 31/9 31/14 31/18 31/18 36/1 59/25 61/19 61/22
before [11]  1/10 5/7 21/21 39/3 40/15 42/21 43/5 45/10 49/15 52/8 61/9
Beg [1]  11/10
began [1]  46/21
begin [1]  45/10
beginning [1]  21/3
behavior [2]  46/8 53/13
being [13]  12/24 12/24 15/1 27/3 32/3 36/17 37/3 37/13 39/19 40/5 43/21 44/19 49/25
believe [6]  9/19 22/4 23/10 23/11 30/3 31/9
believed [2]  20/5 59/4
believing [2]  20/6 20/9
Bench [1]  46/1
benefit [1]  25/13
benefits [2]  28/5 55/6
best [1]  66/3
Bethesda [1]  1/15
better [2]  18/5 59/8
between [7]  29/19 35/17 37/10 39/20 51/19 55/9 61/1
beyond [1]  37/5
bids [1]  43/20
bill [2]  16/24 39/9

**C**

bills [2]  35/16 39/12
biological [1]  49/12
bit [1]  37/19
blaming [1]  19/19
blood [1]  37/10
blurting [1]  46/10
board [1]  46/21
bona [18]  2/12 19/12 26/12 34/18 52/14 52/18 52/18 52/25 60/20 61/2 61/3 61/4 62/7 62/12 63/9 63/15 63/17 63/18
book [1]  22/5
boss [5]  13/10 13/11 14/6 29/16 54/15 54/23
both [6]  7/5 8/22 16/5
bought [1]  23/16
Boulevard [2]  30/10 33/7
bound [1]  50/17
boxes [2]  60/9 60/16
breach [2]  5/17 54/12
break [1]  49/12
bribe [1]  43/8
brilliant [1]  21/21
bring [4]  5/24 10/21 22/17 25/20
broke [1]  49/9
broken [1]  29/14
brought [2]  31/21 31/22
build [1]  18/7
building [1]  18/9
burden [13]  10/2 42/16 44/15 44/16 48/13 48/13 50/7 50/21 51/25 52/15 52/22 53/15 54/7
business [21]  18/10 18/18 18/21 18/24 19/1 19/4 21/1 24/9 25/11 25/22 32/18 32/20 33/11 33/18 33/25 34/1 35/2 35/20 48/17 51/11 51/17
businesses [3]  21/2 32/18 32/19
businessman [2]  20/22 23/9

CA [1]  1/4
cabinets [1]  31/25
calculation [1]  2/4
calculations [4]  7/20 7/24 9/10 30/2
call [6]  12/15 20/23 25/8 27/17 38/4 38/5
called [3]  10/12 25/2 35/17
came [3]  22/5 35/25 42/10
can [30]  3/3 3/4 3/8 4/15 4/17 4/19 7/21 8/3 9/4 12/24 14/3 18/22 20/1 24/17 29/15 30/19 40/14 45/25 47/3 47/25 48/21 49/15 49/18 49/25 50/10 58/20 60/7 60/14 60/16 62/8
can't [13]  17/9 17/10 17/10 17/13 17/13 17/14 21/24 26/8 30/21 31/24 48/21 57/22 61/21
cannot [1]  48/9
car [2]  23/16 30/14

cared [1]   38/18
carefully [1]   57/18
Carmen [1]   37/18
case [19]   5/10 9/23 10/10
 11/4 12/25 14/11 15/23
 24/18 24/18 25/1 26/19
 27/7 37/17 41/8 41/15
 44/22 50/3 50/22 60/1
cases [1]   4/6
CASHETTA [27]   1/6 10/9
 14/21 15/6 15/9 16/4 16/4
 16/5 16/7 16/8 32/11
 32/14 32/21 33/10 33/10
 33/17 33/21 33/24 35/19
 40/16 53/14 53/24 54/1
 54/22 54/24 55/1 59/16
Cashetta's [1]   14/24
causing [1]   53/20
caution [1]   5/1
CCed [3]   34/5 34/8 34/8
Center [1]   35/2
certain [1]   53/16
certainly [2]   43/18 47/6
CERTIFICATE [1]   66/1
certify [2]   66/2 66/7
cetera [2]   18/1 18/1
chain [2]   32/17 32/17
challenging [1]   12/16
chance [1]   18/5
change [6]   13/12 30/11
 39/10 40/5 40/13 42/1
charge [5]   7/21 7/21 17/1
 17/12 30/21
check [16]   6/10 18/22
 18/23 58/18 58/23 59/3
 60/8 60/15 60/21 62/8
 62/11 62/24 63/11 63/12
 63/13 63/15
checks [1]   38/17
choices [1]   59/2
circumstances [1]   53/16
city [1]   41/4
claim [17]   3/14 5/18 27/7
 27/16 28/3 28/4 28/5
 28/20 31/14 43/9 43/11
 43/13 51/25 52/15 52/22
 53/15 54/8
claimed [1]   26/17
claims [4]   26/5 37/25
 44/23 56/9
classify [2]   16/16 16/16
cleaner [1]   30/15
clear [14]   4/9 6/6 6/7
 8/17 9/11 9/13 9/17 10/8
 13/13 13/23 14/19 19/5
 30/24 48/4
clearer [1]   63/3
clearly [2]   20/21 62/2
clerk [1]   3/20
clever [1]   22/25
client [15]   16/24 16/25
 25/2 27/10 29/22 30/5
 30/17 31/1 31/15 31/20
 31/20 38/9 39/5 39/9 40/8
client's [1]   25/9
clients [9]   4/12 13/6
 21/18 27/12 27/24 28/2
 28/19 37/20 39/12
close [2]   13/10 57/16

closely [1]   19/13
crossing [1]   55/9
24/7 50/11 65/3 65/4
coders [1]   35/5
coding [7]   17/23 17/23
 17/24 19/1 19/3 41/10
 41/23
collectively [1]   47/3
colonel [1]   32/19
COLUMBIA [2]   1/1 1/22
combined [1]   27/19
come [14]   4/25 11/15
 12/24 12/25 30/14 32/3
 34/3 36/10 44/21 45/1
 45/25 46/7 46/11 48/12
comes [3]   26/14 31/7
 31/10
coming [4]   29/23 31/4
 45/3 61/6
command [2]   32/17 32/17
commence [1]   57/6
common [2]   55/18 55/19
communicating [1]   4/15
commute [5]   30/9 30/11
 31/5 31/5 31/10
commuted [1]   29/24
commutes [1]   29/25
commuting [3]   26/21 30/21
 45/2
companies [3]   41/3 41/5
 41/13
company [11]   14/3 15/3
 18/19 18/19 23/8 27/5
 29/3 41/9 42/13 48/19
 48/21
compensable [1]   13/4
compete [1]   15/11
completely [5]   20/3 43/23
 54/18 54/20 55/14
complicated [5]   12/3 12/4
 19/9 19/15 20/22
complying [2]   20/14 20/16
computer [1]   1/25
computer-aided [1]   1/25
concede [2]   8/18 56/24
concern [2]   20/11 53/7
concerns [1]   15/4
conclude [1]   13/15
concludes [1]   56/7
conditions [4]   15/14 54/4
 54/16 56/4
conduct [2]   19/17 53/4
conference [1]   46/1
confuse [1]   48/16
confusing [3]   10/4 59/6
 61/8
confusion [2]   59/20 59/21
conscious [2]   20/11 53/7
consent [1]   7/24
consequence [1]   59/18
consequences [2]   20/11
 53/8
consider [6]   28/14 51/8
 54/1 55/20 56/1 62/15
considerably [1]   13/10
consideration [2]   13/19
 57/4
considered [6]   16/1 36/17
 37/12 41/12 54/21 55/5
considering [1]   51/18
consistently [1]   20/13

constitution [2]   1/22
 48/23
consult [2]   21/12 50/8
contact [1]   15/4
contended [2]   27/11 27/13
contends [1]   27/19
contention [2]   27/15 60/1
continue [2]   34/23 57/5
continued [1]   30/9
continues [1]   40/11
contract [19]   5/18 6/4
 17/4 17/5 17/8 17/15 22/3
 22/5 22/6 22/14 22/15
 23/17 35/7 35/15 35/20
 36/1 37/1 41/1 43/20
contractor [34]   9/19
 16/17 16/21 16/22 17/6
 18/25 20/1 20/21 27/11
 27/13 28/16 37/21 38/2
 38/8 38/11 38/14 38/16
 38/19 39/11 39/23 40/5
 40/7 40/13 40/24 41/2
 41/2 41/8 50/21 50/23
 51/1 51/7 51/21 51/22
 60/3
contractors [6]   16/18
 23/22 39/8 39/20 39/20
 41/11
contracts [1]   41/6
contractual [1]   23/21
contractually [1]   23/12
contrary [3]   10/13 35/21
 43/2
control [12]   14/15 15/14
 15/22 17/21 49/5 51/8
 53/19 54/3 54/15 55/16
 55/16 56/3
controlled [3]   15/24
 17/24 55/18
controls [2]   51/4 55/18
convinced [1]   7/9
copies [1]   7/17
corporate [3]   41/25 48/17
 48/25
corporation [2]   48/18
 48/19
corporations [1]   41/13
correct [9]   5/17 21/13
 21/15 58/19 58/23 60/15
 61/4 62/25 66/2
correctly [1]   49/6
could [4]   39/4 59/3 61/22
 62/4
couldn't [3]   24/18 35/8
 36/2
counsel [13]   10/19 11/2
 11/5 24/6 24/23 45/13
 46/4 47/7 49/18 57/15
 57/19 63/25 66/7
count [2]   19/22 19/23
counted [3]   12/8 12/11
 52/2
counter [2]   14/5 14/9
counting [1]   12/19
couple [6]   24/10 25/15
 32/6 33/2 33/16 37/8
course [11]   4/11 4/11
 12/1 15/1 15/18 17/19
 19/2 22/18 39/7 50/4 57/7
court [10]   1/1 1/20 1/21
 1/21 6/1 46/9 47/19 50/1

**C**

court... [2]   65/6 66/5
create [2]   27/3 48/18
creates [2]   59/20 59/20
credibility [3]   25/1
  25/10 50/7
credit [1]   35/18
criminal [2]   58/6 58/7
crisp [1]   20/1
CRYSTAL [2]   1/20 66/13
CSO [1]   58/7
cumulative [1]   47/8
Cunningham [55]   3/15 3/18
  6/23 7/14 8/11 8/14 8/25
  9/1 9/5 14/13 14/15 14/23
  15/8 15/12 15/17 16/7
  16/7 16/9 16/10 16/17
  17/4 17/22 18/9 19/6
  19/25 25/3 27/7 28/13
  34/7 37/8 37/11 37/18
  37/25 38/12 39/2 40/17
  42/6 42/18 43/3 43/8
  43/23 44/4 50/20 50/22
  51/19 56/16 56/19 58/17
  58/22 60/2 60/18 62/24
  63/2 63/6 63/13
Cunningham's [6]   14/1
  15/5 15/20 15/25 43/13
  43/15
currently [1]   9/6

**D**

D.C [1]   1/5
damage [2]   2/4 30/2
damages [16]   1/9 2/3 2/13
  4/19 4/25 5/5 5/10 7/1
  7/2 7/15 7/23 8/19 10/1
  54/12 57/25 61/17
date [2]   66/5 66/13
dated [1]   58/14
day [6]   11/14 16/11 19/8
  21/24 34/3 34/9
days [2]   25/14 33/2
DC [2]   1/19 1/23
deal [2]   17/13 17/13
dealing [2]   22/3 47/9
deals [2]   11/23 23/23
debts [1]   33/18
decades [1]   48/5
deceiving [1]   37/3
decide [6]   13/23 23/25
  24/19 33/1 49/4 59/15
decided [6]   35/7 35/11
  36/2 36/15 36/15 41/9
decides [2]   36/19 43/25
deciding [4]   17/25 25/13
  44/24 49/1
decision [17]   11/19 24/16
  24/24 25/16 25/23 25/24
  26/1 30/23 34/25 35/3
  37/15 37/15 43/7 44/8
  45/1 49/3 49/7
decisions [9]   11/17 21/5
  25/12 25/22 28/23 28/23
  34/1 34/2 37/7
deemed [1]   55/16
deeply [1]   11/8
defendant [10]   5/1 8/18
  10/8 15/14 17/3 53/14
  53/24 54/1 54/22 55/1

defendant is [2]   19/11
  19/11
defendants [45]   1/7 1/16
  4/3 4/17 9/18 10/6 10/7
  12/18 12/18 12/19 12/24
  13/7 13/13 15/12 19/13
  20/4 23/4 23/25 34/17
  37/20 42/24 47/7 50/21
  50/24 51/20 52/13 52/16
  52/19 52/21 52/23 53/2
  53/6 53/9 54/24 55/2
  55/21 56/1 56/22 59/1
  59/4 60/21 61/1 61/16
  62/8 63/10
defendants' [1]   53/13
definition [2]   19/21 21/6
defraud [5]   34/21 37/4
  37/5 37/8 37/14
defrauded [1]   37/13
degree [5]   18/12 20/18
  20/19 51/8 51/12
deliberate [1]   63/24
deliberation [2]   1/9 24/4
deliberations [3]   24/22
  57/6 63/20
denied [1]   47/17
depends [1]   3/24
deposition [3]   21/8 25/5
  25/6
deprive [1]   31/1
description [1]   36/23
despite [1]   23/12
destroy [1]   63/4
determination [2]   16/3
  47/13
determinations [1]   7/11
determine [14]   2/25 4/18
  23/1 51/6 51/21 52/3
  52/15 52/23 54/5 54/23
  55/1 55/2 56/5 57/2
determined [3]   3/15 3/17
  54/22
determining [3]   49/1
  50/25 55/20
devised [1]   43/7
did [57]   3/5 3/16 3/18
  5/18 6/6 6/14 14/18 15/13
  15/14 15/16 16/13 17/23
  17/24 18/10 19/3 19/3
  19/17 20/8 20/10 21/4
  21/11 21/11 21/12 21/15
  22/1 22/6 23/9 23/11
  23/19 25/5 26/22 27/8
  27/8 27/9 27/12 31/23
  32/9 32/24 33/19 33/24
  34/11 34/14 37/3 37/7
  37/11 37/12 38/22 39/2
  42/6 43/10 44/4 49/5
  53/12 59/8 59/11 60/24
  61/14
didn't [18]   6/19 13/15
  22/17 23/7 28/17 37/6
  37/9 37/13 37/14 38/4
  38/6 41/18 44/5 46/25
  48/9 48/10 48/10 48/15
difference [3]   6/15 6/20
  6/22
different [6]   25/5 25/7
  33/24 37/19 52/11 55/7
differently [1]   25/4
difficult [1]   26/2

diligent [1]   21/16
diligently [1]   49/6
dime [1]   19/23
diminishing [1]   31/17
directed [1]   60/23
directly [2]   55/11 55/17
disagree [5]   24/17 36/15
  36/17 47/11 59/23
disappointed [1]   11/8
disassociated [3]   54/18
  54/20 55/15
discount [1]   51/23
discussed [2]   3/21 50/6
discussion [1]   61/23
dishonest [1]   36/18
dismiss [1]   60/4
dismissed [1]   5/18
dispositive [2]   53/21
  55/22
dispute [24]   2/12 10/4
  19/12 26/12 26/18 27/4
  40/23 45/1 48/3 48/3
  52/14 52/18 52/19 52/25
  60/20 60/25 61/3 61/4
  62/7 62/13 63/9 63/15
  63/17 63/18
disputed [1]   27/1
disregard [5]   41/24 47/20
  53/3 53/6 53/11
distinct [1]   52/24
DISTRICT [5]   1/1 1/1 1/21
  1/22 66/5
do [63]   2/2 4/5 4/10 4/14
  4/15 5/18 7/20 8/19 12/25
  16/13 16/23 17/22 17/25
  17/25 18/20 18/25 20/23
  20/23 20/24 27/8 28/24
  32/24 33/25 34/19 34/25
  35/2 35/7 35/8 35/9 35/19
  36/2 36/19 37/1 37/3 38/5
  38/9 38/10 38/13 39/4
  39/8 39/8 39/20 39/20
  39/25 39/25 40/8 40/21
  42/15 42/25 42/25 44/6
  44/7 45/4 46/23 47/7
  47/24 48/14 48/15 49/3
  49/12 49/12 56/22 63/11
Docket [1]   1/4
documents [1]   22/19
does [14]   5/2 8/18 10/10
  17/7 20/2 27/3 29/9 30/11
  36/9 39/10 39/12 40/13
  41/3 44/9
doesn't [25]   5/5 6/22 9/7
  9/22 9/23 10/2 10/3 10/9
  13/12 17/16 19/21 21/24
  23/20 26/4 26/16 29/3
  30/5 30/5 30/12 39/13
  40/5 41/6 41/12 43/24
  48/1
doing [21]   7/25 18/21
  19/18 20/15 23/13 34/22
  34/23 38/4 38/6 39/17
  39/21 39/22 40/9 42/9
  42/13 42/18 43/22 46/15
  46/18 46/20 47/8
DOL [1]   36/20
dollar [2]   17/11 46/3
dollars [6]   16/25 32/6
  33/15 33/16 37/9 47/2
don't [20]   4/2 5/11 7/4

**D** Case 1:06-cv-02031-JMF

don't... [17]   7/8 11/8
 15/18 16/21 20/24 22/18
 33/16 37/24 40/11 42/14
 43/12 48/25 57/23 60/8
 60/15 61/18 61/19
done [5]   3/8 23/15 23/16
 29/14 37/2
down [9]   22/23 25/5 25/7
 36/25 45/19 45/19 45/23
 45/24 45/24
draw [2]   46/7 46/11
dry [1]   30/15
due [2]   5/3 53/12
duly [1]   12/22
duration [2]   18/16 51/14
during [9]   12/7 12/10
 21/8 27/10 28/25 50/11
 52/2 55/7 63/24
duty [1]   50/17

**E**

e-mail [3]   9/12 40/1
 40/10
e-mailed [1]   5/16
e-mails [8]   28/8 30/18
 31/23 31/25 32/2 34/4
 34/5 34/5
each [8]   23/18 27/22 28/2
 29/14 52/16 54/25 55/3
 55/22
earlier [3]   50/6 57/9
 61/24
earned [1]   24/2
ears [1]   39/20
earth [1]   33/9
easiest [1]   25/25
easy [4]   13/24 24/24
 25/11 26/15
economic [8]   17/17 51/5
 51/18 53/18 53/23 54/15
 55/21 55/24
effected [1]   47/13
effort [4]   22/21 22/22
 37/4 42/4
eight [3]   16/11 25/18
 48/5
either [4]   30/2 42/23
 53/10 58/1
eleven [2]   25/18 25/18
else [1]   40/12
embarked [1]   30/25
employ [1]   35/19
employed [4]   32/15 33/5
 52/16 66/8
employee [29]   15/1 16/17
 17/2 19/6 19/7 19/25 35/3
 38/8 38/19 39/11 39/13
 40/6 40/14 43/14 48/8
 50/23 51/1 51/6 51/25
 52/7 53/17 53/21 54/3
 54/21 55/5 55/13 55/16
 55/16 56/3
employee's [2]   54/16 55/9
employees [14]   12/5 14/24
 15/3 16/19 41/16 41/17
 41/23 46/2 47/4 48/13
 49/7 54/2 54/18 55/10
employer [42]   3/18 9/3
 9/5 10/14 13/25 14/1 14/3

14/6 14/12 14/14 15/20
 15/21 16/3 16/6 16/7 16/8
 17/21 17/25 19/2 26/16
 26/17 32/11 32/23 33/10
 33/23 40/20 43/12 51/9
 53/17 53/23 54/23 55/2
 55/11 55/12 55/17 55/19
 59/7 59/12 59/16 59/16
 59/18 60/2
employer's [4]   18/18 48/6
 48/7 51/17
employers [32]   13/24
 14/11 16/2 23/21 28/22
 28/25 33/21 53/25 54/7
 54/8 54/9 54/14 54/14
 54/15 54/19 54/21 54/25
 55/3 55/6 55/7 55/9 55/12
 55/14 55/22 55/24 55/25
 56/2 59/1 59/4 59/17
 59/17 59/19
employing [1]   27/5
employment [19]   6/3 6/4
 15/15 15/16 15/25 24/10
 25/11 26/25 28/3 40/22
 52/10 54/4 54/6 54/17
 54/20 55/4 55/15 56/4
 56/6
end [4]   11/13 16/19 22/22
 52/8
engage [1]   47/1
engaged [2]   24/12 52/9
engaging [1]   5/2
enormous [1]   23/6
enough [1]   10/8
ensure [3]   20/13 49/6
 54/9
enter [2]   44/5 57/21
entering [2]   7/25 43/19
entire [1]   31/14
entitled [12]   6/25 7/1
 9/1 12/5 16/19 23/2 23/3
 23/4 31/17 33/15 50/24
 56/23
entitlement [1]   8/18
equal [1]   44/19
equipment [1]   23/24
Erica [1]   40/3
erroneous [1]   61/7
Esquire [4]   1/13 1/13
 1/16 1/17
essence [1]   39/23
essential [1]   52/19
essentially [4]   13/14
 60/20 62/7 63/10
establish [10]   32/9 33/20
 34/14 53/8 58/25 59/9
 59/12 60/25 61/15 63/16
established [3]   29/18
 44/14 63/14
et [4]   1/3 1/6 18/1 18/1
evaluate [1]   20/5
even [5]   13/19 19/24
 23/20 23/24 31/24 33/1
 34/23 38/4 38/6 42/14
ever [5]   15/25 26/19
 28/20 37/1 37/2
every [5]   6/3 6/4 25/14
 27/23 48/8
everybody [3]   13/25 14/1
 49/10
Everyone [1]   29/24

everything [2]   44/2 44/10
evidence [21]   22/24 25/15
 29/10 32/10 33/20 37/24
 40/19 42/23 43/1 43/6
 46/4 47/5 47/12 47/14
 50/13 53/9 58/25 59/9
 59/12 60/25 61/15
exactitude [1]   47/12
exactly [3]   7/25 22/1
 44/12
example [1]   55/10
exceed [1]   27/20
exception [1]   44/16
exchange [1]   17/12
excuse [2]   33/3 54/19
excused [3]   57/14 57/15
 63/23
Executive [2]   30/10 33/7
exempt [5]   21/19 21/20
 23/3 23/5 44/9
exemption [7]   21/6 21/7
 22/13 22/20 22/23 23/11
 25/13
exemptions [4]   24/17
 24/25 26/3 36/23
exercised [1]   51/9
exhibit [2]   22/5 28/10
exist [1]   55/5
existence [1]   22/24
existing [1]   41/14
exists [1]   55/8
expected [1]   50/11
expensive [2]   23/5 23/6
experience [3]   20/20
 20/20 28/11
experienced [3]   35/9
 35/10 36/14
expertise [1]   41/10
explain [3]   10/2 10/3
 46/22
explained [1]   6/2
explaining [1]   46/19
extent [2]   18/17 51/16
extra [1]   17/11

**F**

FACCIOLA [2]   1/10 58/16
facilities [1]   39/18
fact [32]   3/2 5/3 5/6
 10/4 12/21 13/9 14/10
 14/19 15/2 20/14 23/14
 24/17 24/25 25/10 26/15
 27/3 28/7 28/7 28/19 30/6
 30/11 30/13 31/17 31/19
 37/13 37/25 39/10 43/11
 47/2 47/14 50/15 55/17
facto [1]   17/5
factor [6]   2/13 2/25 4/18
 49/1 53/21 55/22
factors [13]   9/19 10/15
 14/17 15/19 17/19 18/14
 19/5 20/1 51/8 51/18
 53/22 55/20 55/23
facts [7]   9/23 10/10 12/3
 13/14 15/23 20/12 44/14
failed [4]   20/13 52/16
 53/7 63/16
failing [1]   24/1
failure [3]   19/11 20/9
 52/17
fair [10]   5/8 14/2 20/10

**F**

fair... [7]   28/9 34/19
 44/2 51/2 51/2 53/4 54/10
faith [9]   20/7 23/1 24/1
 26/18 27/25 52/20 60/21
 62/8 63/11
far [2]   13/11 15/25
fault [2]   19/20 19/20
favor [4]   2/20 2/24 26/4
 42/2
federal [5]   18/20 21/12
 21/18 24/13 24/13
feel [2]   34/10 37/13
felt [1]   11/12
Ferrara [18]   11/24 12/13
 13/6 13/15 16/8 19/7 28/9
 28/11 29/23 30/3 31/2
 32/11 32/12 33/2 33/14
 34/7 37/8 45/2
Ferrara's [2]   13/9 13/25
few [4]   11/17 11/21 14/17
 37/23
fide [18]   2/12 19/12
 26/12 34/18 52/14 52/18
 52/18 52/25 60/20 61/2
 61/3 61/4 62/7 62/12 63/9
 63/15 63/17 63/18
figure [2]   21/15 47/25
file [1]   31/25
filing [2]   9/12 9/15
fill [1]   29/12
Final [1]   2/2
Finally [1]   19/9
financially [1]   66/9
find [25]   7/1 8/5 8/8
 8/11 8/14 9/1 9/2 9/4
 10/11 15/19 20/25 26/4
 29/15 31/2 33/17 35/9
 42/2 42/5 43/14 47/3
 53/13 56/10 56/13 56/16
 56/19
finding [15]   6/16 10/5
 33/12 42/23 43/12 52/18
 52/19 60/19 60/20 62/6
 62/7 63/9 63/10 63/14
 63/16
fire [5]   14/18 40/13
 40/14 54/2 56/2
first [11]   9/18 11/23
 22/21 24/9 29/13 29/18
 34/12 37/19 46/13 58/14
 62/23
fit [2]   12/25 36/24
five [5]   19/22 30/4 34/14
 45/9 51/16
fix [1]   61/19
fixed [3]   52/11 61/21
 61/22
flat [1]   16/18
FLSA [1]   6/24
following [5]   5/10 8/4
 56/8 58/14 59/11
follows [4]   4/7 58/15
 58/24 63/8 63/12
food [1]   24/11
Foods [1]   30/15
foregoing [1]   66/2
foreperson [4]   57/5 58/15
 63/4 63/19
Forget [1]   44/19

form [14]   3/6 9/6 19/16
 20/11 28/1 29/3 48/25 49/7/14
 29/11 48/17 48/24 58/17
 58/22 58/24 62/24 63/2
 63/4 63/6 63/20
formally [1]   15/3
forms [4]   29/14 57/7
 57/12 60/18
forth [2]   30/9 31/5
forward [1]   9/15
found [3]   26/3 29/4 63/17
four [5]   15/19 15/20
 51/14 54/6 56/6
fourth [1]   46/7
Franklin [1]   33/6
frankly [1]   29/9
fraudulent [1]   36/18
Friday [1]   1/5
fulfill [1]   35/7
full [5]   8/6 8/9 9/2
 56/11 56/14
function [1]   57/25
functional [1]   54/15
further [2]   66/7 66/9
future [1]   28/15

**G**

gained [1]   23/11
gave [5]   24/11 28/8 35/23
 39/3 50/4
general [1]   40/24
generally [2]   55/4 55/8
gentlemen [13]   4/6 4/24
 11/1 11/7 12/23 21/19
 47/20 47/23 49/9 50/2
 57/5 62/22 63/1
Georgetown [1]   1/14
get [20]   11/4 11/14 14/5
 16/18 17/1 23/22 27/2
 29/1 29/4 30/14 30/14
 32/20 34/1 34/5 35/16
 36/7 39/4 39/9 49/19
 63/21
gets [3]   34/8 34/8 36/5
getting [2]   18/11 39/22
give [12]   7/17 8/17 14/16
 17/13 17/13 19/21 22/9
 35/18 50/2 50/16 50/17
 57/11
given [6]   6/16 15/23
 29/11 57/7 57/19 59/2
gives [2]   18/2 22/10
giving [2]   56/24 57/3
go [25]   11/14 13/1 16/12
 17/22 18/1 18/1 24/23
 29/12 29/16 30/14 30/17
 30/20 33/4 34/6 34/6
 37/11 38/24 40/12 40/22
 44/5 44/12 46/3 48/19
 49/10 60/8
God [1]   48/22
goes [2]   41/6 49/10
going [46]   2/17 5/4 5/20
 9/15 11/14 12/2 13/4 13/4
 17/11 18/11 18/13 22/8
 22/9 24/14 26/10 26/13
 29/11 29/12 29/16 30/22
 33/9 33/19 34/3 34/9
 34/23 36/3 36/9 38/13
 38/18 40/11 40/19 41/25
 42/3 42/22 42/25 43/5
 44/12 44/24 46/3 50/2

58/4 58/8 61/5 63/1 63/18
 63/21
gone [1]   44/11
good [7]   11/1 17/13 19/18
 20/6 23/1 24/1 26/17
got [14]   15/8 16/14 16/15
 18/21 20/3 23/8 28/6
 28/20 32/13 32/25 36/20
 40/10 42/17 44/17
gotten [1]   9/12
Government [25]   20/21
 21/18 22/10 22/10 22/14
 22/15 22/20 23/12 23/15
 23/19 24/13 24/13 28/1
 35/12 35/12 35/16 35/23
 35/23 36/3 36/5 36/6
 36/11 37/1 37/4 41/5
grand [1]   30/25
granted [2]   59/25 60/4
grapple [1]   11/21
great [4]   18/4 19/22
 28/14 30/19
ground [1]   32/20
grounds [1]   20/8
guess [6]   3/20 7/15 22/10
 23/3 23/3 48/24
guidance [2]   19/18 21/11
guys [1]   23/2

**H**

had [42]   2/5 3/8 3/20 6/1
 6/21 9/11 11/25 14/15
 22/2 22/5 22/16 23/10
 23/11 26/25 28/4 28/6
 30/8 30/11 30/20 31/4
 35/3 35/14 35/23 38/25
 39/7 41/10 41/15 41/16
 42/12 43/17 43/18 44/6
 44/7 44/15 45/4 46/7 49/5
 54/2 56/1 59/24 60/4
 61/23
half [1]   16/19
hammer [1]   48/20
hammering [1]   48/20
hand [2]   22/12 22/13
handle [1]   58/8
hands [1]   20/17
handsome [1]   21/22
handwriting [3]   22/16
 26/13 26/14
happen [1]   37/6
happened [1]   28/7
happens [1]   48/22
happy [1]   38/10
hard [2]   25/21 25/21
hardest [2]   25/24 25/25
Harvard [1]   20/19
has [19]   9/7 12/25 17/21
 27/7 27/10 28/9 29/14
 29/20 34/19 36/11 36/15
 36/21 40/21 47/7 48/4
 48/22 51/24 59/15 63/6
hats [1]   32/20
have [117]
haven't [2]   6/16 29/3
having [5]   25/13 44/9
 46/11 59/18 59/20
he [62]   20/18 20/19 20/21
 20/22 21/1 21/5 21/8
 21/11 21/11 21/12 21/13
 21/15 21/16 21/18 23/10

he... [47]   23/11 23/11
23/14 23/14 24/12 24/13
24/14 25/25 35/1 35/5
35/7 35/11 35/11 35/11
35/14 36/11 36/11 36/12
36/13 36/14 36/14 36/14
36/15 36/16 36/19 36/19
36/19 36/19 36/20 36/20
36/25 36/25 36/25 37/9
37/15 38/5 42/12 43/18
43/19 43/21 45/15 46/13
47/24 48/2 48/3 48/8
58/24
he's [11]   25/10 26/1
29/14 36/3 45/15 45/17
46/3 48/17 58/5 58/9 60/2
head [4]   29/7 29/8 33/13
44/2
health [1]   28/18
hear [3]   11/2 23/5 25/20
heard [19]   11/24 13/17
14/24 15/1 15/2 15/5
15/11 25/1 31/16 33/1
33/1 35/21 38/25 39/1
39/17 40/22 42/23 43/2
44/23
hearing [3]   24/8 24/12
66/9
held [3]   42/18 49/2 49/4
help [4]   15/21 53/22
55/23 57/20
her [68]
here [42]   7/16 7/24 9/20
10/16 11/11 12/18 12/22
12/24 12/24 13/13 17/14
20/3 25/5 25/8 25/12
26/11 26/12 28/3 28/4
28/5 28/18 31/19 33/19
34/25 35/18 35/24 39/14
40/21 42/22 42/24 43/1
44/3 44/9 44/24 45/15
46/7 46/11 46/13 49/14
54/22 58/5 58/7
here's [5]   12/17 13/6
20/2 20/11 29/22
hey [2]   29/2 32/3
higher [2]   36/13 36/13
him [3]   21/7 36/15 43/21
hire [8]   14/18 18/25 36/2
40/12 40/14 44/4 54/2
56/2
hired [1]   32/25
hiring [1]   36/6
his [12]   20/18 20/19
20/20 20/20 21/8 21/13
21/14 21/15 21/17 31/1
35/2 42/13
hit [1]   29/4
hold [7]   32/21 40/18
40/19 40/20 40/20 42/13
60/3
home [20]   11/14 12/2 12/2
13/4 13/9 13/11 13/12
29/23 30/11 30/17 30/20
30/20 30/22 30/23 45/3
48/18 52/7 52/8 52/9
52/12
honestly [2]   49/5 49/6
Honor [14]   4/1 5/25 8/3

10/22 10/25 24/20 45/14
46/19 46/22 58/20 59/5
61/22 62/4 62/5
HONORABLE [1]   1/10
hope [1]   21/9
hopes [1]   63/2
hour [19]   3/13 9/22 13/20
13/20 13/21 16/25 17/11
20/14 25/9 35/6 35/13
35/17 35/25 36/7 36/9
38/18 38/19 48/6 48/8
hourly [3]   18/6 18/7 36/8
hours [17]   12/8 12/11
16/11 16/23 16/23 16/24
25/16 27/18 27/19 28/6
28/6 34/3 34/9 38/24 39/3
39/3 52/3
house [4]   29/24 30/5 30/7
48/20
how [21]   5/7 13/18 14/7
14/14 15/11 17/21 20/25
21/21 25/4 28/2 28/17
29/22 31/24 31/25 32/3
33/9 42/8 42/8 47/12
61/10 61/19
however [5]   52/7 54/18
54/19 54/19 56/7
hundred [2]   27/23 33/15
Hyattsville [10]   27/12
27/18 38/23 38/23 39/2
39/15 42/7 42/10 42/19
43/16

I

I'd [2]   2/7 2/7
I'll [10]   6/6 7/17 17/19
22/12 22/13 27/17 40/22
44/8 45/10 62/16
I'm [40]   2/16 4/2 5/4
6/18 7/9 11/7 11/12 11/15
12/21 13/12 17/3 17/11
18/13 19/19 28/14 28/18
29/12 29/16 31/16 32/3
35/15 36/10 37/19 39/15
39/16 40/9 42/21 43/5
45/13 45/14 46/19 46/22
47/5 47/24 50/16 57/12
61/5 63/1 63/5 63/18
i.e [1]   28/15
idea [6]   14/2 42/12 43/18
43/18 61/12 61/12
identical [1]   42/20
identify [1]   10/2
ignore [1]   13/14
ignoring [2]   29/10 48/4
imbursed [2]   8/5 8/8
immediately [1]   45/20
impact [4]   5/6 42/3 47/8
56/25
impanel [1]   46/10
impeachment [1]   25/9
implicit [1]   6/4
important [5]   12/6 17/7
18/17 24/21 34/1
impossible [1]   11/20
improper [1]   47/10
improvement [1]   48/19
inappropriate [3]   46/8
46/12 47/16
incident [1]   52/10
include [2]   43/21 51/8

included [6]   2/8 3/22
9/20 10/19 16/21 61/23
including [1]   54/11
inclusion [1]   59/5
incorrect [1]   47/10
independent [33]   9/18
16/17 16/18 16/21 16/22
17/5 18/12 18/15 18/25
27/11 27/13 37/21 38/2
38/8 38/11 38/13 38/15
38/19 39/8 39/11 39/23
40/5 40/7 40/13 41/14
50/20 50/23 51/1 51/7
51/12 51/21 51/22 60/3
independently [1]   57/3
indicate [1]   61/3
indicated [2]   5/5 47/12
indirectly [2]   55/11
55/17
individual [2]   51/1 51/5
inevitable [1]   34/3
infected [1]   46/12
influence [1]   8/20
information [4]   4/15 8/17
8/19 56/25
informed [1]   21/18
initial [1]   63/18
initialed [3]   23/14 23/15
23/18
initials [1]   23/18
initiative [3]   18/13
18/15 51/12
innuendo [1]   35/21
inside [1]   39/19
instead [2]   14/10 48/20
instruct [2]   2/25 5/4
instruction [8]   3/3 9/18
9/21 9/25 10/9 10/14
26/10 61/12
instructions [21]   9/12
9/16 11/3 14/16 17/20
33/22 36/22 49/11 50/1
50/3 50/4 50/7 50/8 50/19
56/7 60/19 61/7 61/23
62/6 63/9 65/6
insulates [1]   48/18
integral [3]   18/18 19/4
51/16
intended [8]   28/22 28/24
28/24 29/6 43/6 43/8
53/22 55/23
intentional [1]   34/21
interactive [1]   36/21
interchange [1]   55/10
interest [1]   4/24
interested [1]   66/10
interesting [1]   21/14
interests [1]   55/12
interpretation [3]   58/16
58/21 62/23
interrogatory [1]   61/7
intuitive [1]   14/5
intuitiveness [1]   14/9
investigated [1]   23/10
investment [1]   51/10
invoice [3]   36/7 40/1
40/1
invoices [2]   36/5 36/12
involved [1]   34/1
ipso [1]   17/5
is [231]

**I**

isn't [4]   7/2 19/24 23/24
49/21
issue [15]   2/15 5/20 10/1
11/3 13/22 16/9 19/9
19/10 25/13 26/11 40/16
44/25 46/9 46/10 59/15
issues [13]   8/21 11/3
11/21 11/23 32/25 44/24
45/6 47/7 47/9 48/16 50/3
50/6 50/20
it [150]
it's [58]   2/21 4/23 10/1
10/4 11/20 13/7 13/12
13/23 17/7 19/22 19/23
20/25 23/5 23/20 23/20
24/24 25/2 25/2 25/11
25/21 25/25 26/1 26/15
27/9 28/1 28/1 28/10
28/11 28/14 29/4 29/6
29/16 30/4 30/23 34/3
34/15 34/20 34/22 41/15
41/16 41/16 41/17 41/17
41/17 41/17 41/25 44/2
44/2 44/17 45/24 46/9
47/24 48/1 48/19 48/23
48/24 51/3 63/2
its [6]   7/10 29/7 29/8
33/13 41/15 44/2

**J**

January [3]   1/5 58/14
66/13
job [22]   12/7 12/7 12/10
12/10 14/19 14/22 14/22
15/8 20/25 21/1 25/7 33/3
35/8 35/8 35/9 36/2 39/9
40/8 40/9 52/2 52/2 52/11
jobs [1]   24/3
JOHN [2]   1/10 29/7
Johnson [2]   49/21 49/22
joint [22]   3/18 9/5 10/14
33/21 33/23 40/22 43/12
54/7 54/8 54/14 54/21
54/24 55/3 55/4 55/21
55/25 59/1 59/4 59/17
59/17 59/19 60/2
jointly [2]   54/9 54/11
joys [1]   18/4
judge [15]   1/10 6/8 7/13
7/18 8/23 9/11 14/16
19/19 19/19 24/18 29/11
29/14 49/25 58/16 62/14
Judge's [2]   11/18 17/20
judges [1]   50/15
judgment [4]   8/1 57/21
59/24 59/24
judgments [3]   19/16 25/12
25/22
JUROR [1]   63/22
jurors [1]   10/24
jury [32]   1/9 2/11 2/12
2/24 4/5 4/15 4/20 5/24
7/10 7/21 8/4 10/5 10/21
10/23 44/12 45/15 45/17
46/4 46/10 46/14 46/24
50/2 50/19 57/14 58/8
58/14 59/6 59/15 61/23
62/20 63/19 63/23
just [66]   3/22 4/2 4/9

4/21 5/15 7/22 9/7 9/8
9/11 9/13 9/17 10/1 10/11
11/9 11/11 11/20 11/21
16/20 19/7 21/24 22/12
22/25 25/24 26/3 26/14
27/3 27/17 28/1 28/1 29/9
29/16 30/12 30/21 30/24
32/20 32/22 33/12 35/13
35/18 35/24 37/5 37/5
37/15 37/16 38/20 39/13
40/17 40/22 41/6 41/11
42/3 42/4 42/21 42/22
43/22 43/22 43/23 44/2
44/8 44/18 45/22 48/4
57/4 59/13 60/14 61/5

**K**

Kaiser [46]   3/11 3/16
3/18 8/6 8/9 8/12 8/15
8/25 9/2 12/1 12/14 13/8
16/12 19/6 19/8 26/22
27/8 27/12 27/18 29/19
30/4 30/10 31/3 31/7 32/5
32/7 33/7 37/11 37/22
38/1 38/23 39/2 39/18
40/3 42/7 42/9 43/16 44/5
45/5 48/12 51/24 52/4
56/11 56/14 56/17 56/20
KATHY [1]   1/3
keep [5]   17/14 23/8 32/21
42/5 50/5
key [1]   39/4
kind [6]   28/17 33/21
36/22 38/20 46/3 47/12
kleinbull [1]   40/3
knew [5]   20/22 28/20
31/20 53/3 53/10
know [43]   2/14 2/14 4/6
7/4 7/8 7/9 7/25 16/11
16/20 16/21 16/23 16/25
20/24 21/4 21/22 24/12
25/20 25/25 27/17 28/7
30/13 31/4 31/22 33/23
34/22 34/23 35/12 36/3
36/11 37/9 38/4 38/6
41/13 43/12 43/19 45/2
45/6 48/9 48/10 48/10
48/14 53/2 61/19
knowing [1]   27/1
knowledge [1]   39/21
KRUGER [3]   1/17 6/20 7/14
KUNTZ [1]   1/13
Kwan [2]   14/25 15/4
Kwan's [2]   14/25 15/2

**L**

labor [6]   14/2 17/8 34/19
51/2 53/4 54/10
Labors [2]   20/10 51/2
lack [2]   20/11 53/7
ladies [13]   4/5 4/24 11/1
11/7 12/23 21/19 47/20
47/23 49/9 50/2 57/5
62/22 63/1
language [1]   14/7
large [1]   43/13
last [7]   5/16 8/25 9/12
19/10 22/2 29/2 48/4
late [1]   16/12
latter [1]   57/2
law [39]   2/12 3/20 10/2

10/8 10/13 12/4 12/5
12/16 13/12 13/13 13/14
16/1 17/7 19/20 19/21
19/22 20/2 20/18 20/19
20/19 26/2 26/15 26/15
28/22 28/24 28/24 29/7
29/8 33/13 34/18 48/4
48/9 48/14 48/17 48/24
48/25 50/13 50/16 59/24
laws [7]   14/8 17/9 20/14
20/16 25/19 34/17 48/6
lawsuit [5]   27/2 28/21
30/1 37/2 42/15
lawyer [3]   20/23 21/13
48/15
lawyers [3]   25/14 39/12
50/10
lay [3]   14/17 18/13 20/1
leads [1]   11/19
learned [1]   35/1
least [2]   25/20 57/16
leave [2]   28/17 44/8
led [1]   11/19
ledger [2]   18/23 18/24
left [5]   9/15 11/13 20/16
26/25 28/17
legal [1]   59/17
lengthy [1]   20/20
LESCHT [10]   1/16 1/17
24/7 46/16 46/24 47/23
48/16 49/2 59/22 65/4
less [4]   7/15 13/22 13/23
20/3
let [6]   6/10 35/12 36/3
50/5 60/17 62/15
let's [3]   26/20 33/3
35/18
lets [1]   36/11
letter [2]   15/8 28/13
letterhead [1]   15/9
letters [2]   28/8 36/20
letting [1]   56/24
level [1]   34/2
liability [3]   10/8 34/11
53/14
liable [13]   10/12 32/22
33/11 33/17 40/17 40/18
40/19 40/20 40/20 42/18
53/16 54/12 59/21
lied [1]   24/13
Lifecare [37]   3/15 3/17
9/3 9/4 14/1 14/13 14/20
15/13 16/11 16/14 20/13
20/15 38/3 40/24 41/9
41/16 41/18 41/20 41/21
41/21 42/6 42/9 42/17
42/24 43/15 43/24 44/4
54/24 55/2 59/2 59/6 59/6
59/13 59/20 59/21 60/1
60/3
like [20]   3/22 11/12
14/11 19/7 19/24 25/18
26/1 28/5 28/15 29/6 29/6
32/18 37/4 37/13 37/23
40/11 41/18 42/1 46/6
61/11
liked [1]   32/1
likely [1]   44/17
Limitations [4]   6/15 7/5
7/6 7/7
Lippman [1]   1/14

| L    Case 1:06-cv-02031-JMF | matter [9]   3/2 17/16 | 11/17 14/3 15/25 18/5 |
|---|---|---|
| liquidated [2]   7/1 7/1 | 21/11 28/1 48/5 49/18 | 21/18 25/19 35/9 35/10 |
| list [2]   59/13 59/20 | 58/6 59/24 66/6 | 35/10 36/4 36/12 36/14 |
| little [1]   37/19 | matters [1]   62/15 | 37/12 37/12 44/17 54/8 |
| lives [1]   11/15 | may [12]   5/24 16/23 16/24 | 54/14 55/6 55/7 59/1 |
| LLC [1]   1/14 | 18/25 21/3 28/15 53/15 | 59/18 |
| location [1]   52/11 | 54/12 54/14 55/16 56/8 | moreover [1]   46/6 |
| long [2]   49/2 49/11 | 57/6 | morning [5]   6/11 11/1 |
| look [19]   3/3 7/16 7/19 | maybe [4]   11/17 13/22 | 12/13 19/10 34/10 |
| 21/8 28/2 28/7 31/23 34/4 | 23/17 30/14 | mornings [1]   24/3 |
| 34/6 34/6 36/21 38/11 | MD [1]   1/15 | most [2]   19/9 19/15 |
| 39/8 40/10 40/10 44/13 | me [27]   4/4 4/4 4/5 4/14 | motion [3]   45/21 47/17 |
| 47/2 51/5 57/18 | 6/2 6/10 6/16 6/20 22/25 | 59/24 |
| looked [3]   35/11 36/20 | 26/6 28/10 28/14 28/19 | moved [1]   60/4 |
| 36/25 | 29/2 29/2 29/3 30/19 33/4 | moving [1]   32/21 |
| looking [5]   7/13 14/8 | 39/13 46/11 48/21 54/19 | Mr [9]   4/18 11/6 24/7 |
| 26/7 45/14 51/4 | 57/21 60/17 61/11 62/15 | 45/10 47/22 49/22 65/3 |
| Looks [1]   37/19 | 66/4 | 65/4 65/5 |
| loose [1]   32/17 | mean [22]   5/6 8/20 20/24 | Mr. [45]   3/10 20/16 21/1 |
| loss [2]   18/3 51/10 | 24/16 26/4 27/25 32/12 | 21/4 22/1 22/12 22/14 |
| lot [4]   34/5 35/19 37/23 | 32/24 38/20 39/11 39/15 | 22/18 22/25 23/1 23/9 |
| 40/4 | 40/14 40/23 41/3 41/6 | 23/18 23/19 24/9 25/17 |
| lower [1]   34/2 | 41/12 42/14 43/21 43/24 | 25/24 27/14 27/24 29/6 |
| lunch [6]   9/22 13/20 | 44/1 44/9 61/14 | 29/20 30/25 30/25 31/16 |
| 30/14 30/20 63/21 63/24 | Meaning [1]   63/17 | 35/1 35/18 35/21 37/7 |
| luncheon [2]   57/16 64/2 | meaningless [1]   46/25 | 37/14 38/3 42/12 43/17 |
| Lynn [1]   57/11 | means [7]   10/3 10/3 41/8 | 43/24 44/4 45/9 46/16 |
| | 55/24 61/4 61/13 62/12 | 46/24 47/23 48/16 49/2 |
| **M** | meant [2]   28/12 61/12 | 49/21 59/22 59/23 62/3 |
| | medical [8]   17/22 17/24 | 63/4 63/19 |
| M-I-S-C-E-L-L-A-N-E-O-U-S [1] | 19/1 19/3 35/2 35/4 41/10 | Mr. Foreperson [2]   63/4 |
| 65/1 | 41/23 | 63/19 |
| machine [1]   1/24 | merely [2]   5/5 53/10 | Mr. Johnson [1]   49/21 |
| made [9]   11/13 22/1 22/21 | met [2]   32/24 48/7 | Mr. Lescht [6]   46/16 |
| 22/22 25/4 31/14 35/3 | method [2]   54/5 56/5 | 46/24 47/23 48/16 49/2 |
| 37/15 38/15 | Metro [3]   31/3 31/7 45/5 | 59/22 |
| magically [1]   48/11 | MICAH [1]   1/13 | Mr. Molina [24]   21/4 22/1 |
| MAGISTRATE [1]   1/10 | middle [1]   11/13 | 22/12 22/14 22/18 22/25 |
| mail [3]   9/12 40/1 40/10 | might [2]   18/6 59/8 | 23/1 23/9 23/18 23/19 |
| mailed [1]   5/16 | military [1]   32/19 | 24/9 25/17 29/6 30/25 |
| mails [8]   28/8 30/18 | million [1]   16/25 | 31/16 35/1 35/18 37/7 |
| 31/23 31/25 32/2 34/4 | mind [3]   2/11 42/5 63/7 | 37/14 38/3 42/12 43/17 |
| 34/5 34/5 | minimizing [1]   31/17 | 43/24 44/4 |
| maintain [2]   15/16 56/6 | minute [1]   57/24 | Mr. Molina's [2]   20/16 |
| maintained [1]   54/6 | minutes [4]   3/11 30/4 | 21/1 |
| Major [1]   33/6 | 30/7 45/9 | Mr. Salb [10]   3/10 25/24 |
| make [29]   6/6 6/7 6/19 | missing [1]   6/11 | 27/14 27/24 29/20 30/25 |
| 6/22 7/10 7/23 11/17 | mistakes [2]   9/14 40/4 | 35/21 45/9 59/23 62/3 |
| 11/20 16/3 18/7 19/5 22/8 | mistrial [2]   46/9 47/17 | Mrs [11]   11/24 12/13 13/6 |
| 25/12 25/16 25/22 26/1 | modified [1]   60/6 | 13/9 13/15 13/25 28/9 |
| 28/22 33/12 34/1 37/7 | modify [2]   23/17 59/3 | 32/11 32/12 37/8 45/2 |
| 39/13 45/21 48/6 48/7 | Molina [24]   21/4 22/1 | Mrs. [19]   31/2 32/11 |
| 48/14 49/4 49/7 50/12 | 22/12 22/14 22/18 22/25 | 32/14 32/21 33/10 33/10 |
| 50/13 | 23/1 23/9 23/18 23/19 | 33/17 33/21 37/8 38/12 |
| makes [4]   18/19 21/22 | 24/9 25/17 29/6 30/25 | 40/17 42/6 42/18 43/4 |
| 38/20 43/12 | 31/16 35/1 35/18 37/7 | 43/8 43/13 43/15 43/23 |
| making [8]   18/5 20/15 | 37/14 38/3 42/12 43/17 | 44/4 |
| 21/5 25/23 34/25 36/8 | 43/24 44/4 | Mrs. Cashetta [7]   32/11 |
| 46/11 56/22 | Molina's [2]   20/16 21/1 | 32/14 32/21 33/10 33/10 |
| managing [1]   41/23 | moment [2]   11/11 45/10 | 33/17 33/21 |
| many [4]   31/24 31/25 | money [17]   18/5 23/7 23/7 | Mrs. Cunningham [8]   37/8 |
| 32/19 47/12 | 29/2 29/2 31/8 31/21 | 38/12 40/17 42/6 42/18 |
| margins [1]   23/18 | 33/15 35/10 36/4 36/12 | 43/8 43/23 44/4 |
| MARIA [5]   1/6 28/9 59/2 | 46/25 47/4 47/10 47/24 | Mrs. Cunningham's [2] |
| 59/14 59/16 | 48/2 56/23 | 43/13 43/15 |
| Marshal [1]   58/4 | months [7]   26/22 27/9 | Mrs. Ferrara [1]   31/2 |
| MARY [1]   1/13 | 31/8 31/14 32/7 43/9 45/3 | Mrs. Radtke [1]   43/4 |
| Maryland [8]   2/12 10/1 | moonlight [2]   43/17 44/1 | Mrs., [1]   40/2 |
| 34/16 34/18 42/21 42/24 | moonlighting [3]   27/17 | Mrs., for [1]   40/2 |
| 61/16 61/24 | 28/15 38/5 | Ms [2]   14/15 30/3 |
| Masters [1]   20/19 | more [23]   7/24 11/17 | Ms. [57]   3/10 3/13 3/15 |

**M**

Ms.... [54]   3/18 6/20
  7/14 7/14 14/1 14/13
  14/21 14/23 14/24 15/5
  15/6 15/8 15/9 15/12
  15/17 15/20 15/25 16/4
  16/4 16/5 16/7 16/7 16/7
  16/8 16/8 16/9 16/10
  16/17 17/4 17/22 18/9
  19/6 19/7 19/25 25/3
  26/20 26/23 27/7 28/11
  28/13 29/13 29/23 33/2
  33/14 33/24 34/7 34/7
  35/19 37/11 37/25 39/2
  40/16 43/3 60/2
Ms. Cashetta [11]   14/21
  15/6 15/9 16/4 16/4 16/5
  16/7 16/8 33/24 35/19
  40/16
Ms. Cashetta's [1]   14/24
Ms. Cunningham [27]   3/15
  3/18 7/14 14/13 14/23
  15/8 15/12 15/17 16/7
  16/7 16/9 16/10 16/17
  17/4 17/22 18/9 19/6
  19/25 25/3 27/7 28/13
  34/7 37/11 37/25 39/2
  43/3 60/2
Ms. Cunningham's [4]   14/1
  15/5 15/20 15/25
Ms. Ferrara [7]   16/8 19/7
  28/11 29/23 33/2 33/14
  34/7
Ms. Kruger [2]   6/20 7/14
Ms. Radtke [5]   3/10 3/13
  26/20 26/23 29/13
much [6]   13/15 13/18
  14/15 17/21 21/15 25/19
muddy [1]   42/4
multiple [1]   14/11
multiply [1]   2/13
must [13]   4/25 12/7 12/10
  51/5 52/2 52/3 52/15
  52/22 53/8 54/1 54/23
  55/2 56/1
my [34]   2/8 5/18 7/20
  9/13 9/13 10/17 11/3 11/9
  25/2 25/9 26/13 26/13
  27/10 27/12 27/24 28/19
  29/22 30/5 30/16 31/14
  31/20 31/20 37/20 38/9
  48/21 50/3 50/6 56/7
  58/16 59/24 59/24 60/23
  61/9 66/3
myself [1]   43/5

**N**

nail [1]   48/20
named [1]   33/8
necessarily [2]   18/6
  63/17
need [12]   17/17 20/4
  25/12 25/22 26/4 28/15
  33/16 34/2 35/12 44/10
  45/10 60/8
needed [4]   35/9 35/22
  36/2 41/9
needs [3]   34/10 36/14
  36/19
negligent [1]   53/10

neither [3]   26/19 28/19
  47/19
never [15]   13/5 17/12
  26/21 26/23 27/12 27/14
  27/21 28/7 28/23 29/24
  29/25 31/20 31/21 31/21
  31/22
nevertheless [1]   53/12
new [3]   9/12 46/10 63/19
next [5]   13/22 22/5 33/19
  40/21 42/20
Nice [1]   49/25
nickel [1]   19/23
night [2]   5/16 9/12
no [61]   1/4 5/6 5/6 9/14
  10/4 12/23 13/23 15/13
  15/24 19/23 21/23 22/19
  22/24 25/9 26/8 27/1 28/3
  28/4 28/5 32/8 32/13
  34/18 37/1 38/20 39/24
  40/17 40/18 40/23 41/24
  42/12 42/22 43/17 43/18
  46/4 47/5 47/11 48/2 48/3
  50/25 52/18 53/21 55/22
  58/5 58/5 60/7 60/14
  60/16 60/20 60/22 61/3
  61/3 61/11 61/12 62/7
  62/9 62/12 63/9 63/11
  63/15 63/15 63/17
non [1]   15/11
non-compete [1]   15/11
none [2]   25/10 60/12
normal [2]   52/10 52/11
not [133]
note [3]   2/8 52/7 62/4
noted [1]   12/22
notes [5]   21/9 57/9 58/14
  62/22 66/4
nothing [17]   12/3 12/25
  23/12 34/11 42/15 42/19
  42/19 43/6 43/9 44/6 44/7
  44/20 44/20 44/22 45/6
  47/10 49/3
notice [2]   27/2 28/21
notion [1]   40/21
now [37]   3/5 4/20 6/7
  7/21 7/22 11/2 13/17
  13/22 13/24 14/5 15/18
  16/3 16/13 17/3 17/7
  19/15 19/19 21/3 22/25
  24/8 24/12 26/6 26/19
  27/10 27/21 30/3 31/16
  38/9 38/11 40/17 41/2
  44/10 45/18 46/2 46/4
  63/6 63/13
number [23]   2/11 2/19
  2/20 2/23 3/25 4/13 4/14
  4/16 7/4 10/15 14/23
  15/14 15/16 33/19 34/12
  34/14 40/15 46/2 49/9
  58/16 58/21 58/24 60/18
numbers [5]   6/20 6/21
  7/10 7/21 30/24
NW [2]   1/18 1/22

**O**

o'clock [2]   34/10 49/23
oath [1]   25/4
object [6]   4/3 9/17 9/18
  9/21 9/25 10/14
objection [7]   2/9 12/20

12/21 24/20 45/14 45/16
  47/18
objections [3]   10/17
  10/19 61/9
obligations [2]   53/10
  53/11
occurred [1]   25/17
odd [1]   33/15
off [4]   18/5 32/20 35/20
  36/1
offer [1]   15/8
office [4]   9/15 30/16
  41/15 41/17
officers [4]   41/20 41/20
  41/21 41/21
official [1]   1/21
officials [1]   21/12
oh [2]   34/14 37/19
okay [26]   5/23 6/9 9/8
  9/17 9/24 14/4 14/14 16/6
  16/8 16/20 17/15 18/18
  19/9 22/8 22/8 22/12 31/8
  33/3 38/17 40/15 40/25
  41/3 41/7 60/17 61/18
  61/25
old [1]   1/14
omission [1]   2/9
once [2]   11/20 18/20
one [60]   2/10 5/1 6/10
  6/14 7/14 8/18 11/17
  11/19 11/25 12/7 12/10
  12/12 13/16 14/3 14/11
  16/1 16/14 18/3 18/16
  24/19 25/1 29/14 29/15
  29/15 32/1 32/2 32/4
  34/17 34/19 36/17 36/24
  37/1 39/24 40/1 41/3 41/7
  41/12 41/14 42/2 42/20
  44/25 49/10 49/15 50/9
  53/21 53/24 54/1 54/23
  55/8 55/11 55/17 55/22
  56/1 56/22 58/9 58/14
  59/18 60/17 62/23 63/5
only [13]   2/19 3/23 8/24
  13/20 25/1 27/10 28/6
  33/5 50/9 53/22 55/23
  60/1 63/5
ooo [2]   62/18 64/3
op [1]   58/23
Open [1]   47/19
opening [1]   50/12
operating [1]   25/10
opinion [1]   61/6
opportunity [4]   18/3
  18/10 35/1 51/10
opposing [1]   47/7
options [2]   58/18 62/25
order [5]   5/19 5/21 9/1
  37/7 53/13
ordinary [2]   14/7 52/9
other [14]   9/19 12/1
  13/16 18/14 22/18 24/19
  33/25 34/21 44/1 45/6
  55/12 55/19 63/4 63/8
otherwise [3]   44/6 45/6
  66/10
our [11]   4/12 13/5 19/18
  19/19 20/25 21/18 27/14
  48/10 58/21 61/6 62/23
out [16]   12/18 12/19
  14/17 18/14 20/1 21/15

out... [10]   28/18 29/12
30/19 31/7 31/10 41/5
42/10 44/5 46/10 46/13
outcome [2]   13/23 66/10
outrageous [3]   28/1 46/6
46/14
over [24]   3/16 13/20
13/21 14/15 17/21 17/23
17/24 23/6 27/18 30/10
31/7 32/7 37/22 38/22
39/2 39/15 39/24 40/22
42/13 42/18 43/8 43/16
51/9 54/16
overall [1]   51/18
overkill [3]   32/12 42/1
42/2
overruled [1]   10/20
overtime [33]   8/12 8/15
17/12 17/15 19/11 20/9
22/4 23/5 24/1 27/16
27/20 27/22 28/19 28/20
30/22 31/1 32/22 34/15
43/11 43/13 50/24 52/12
52/13 52/24 52/25 53/11
53/12 53/17 53/20 54/11
56/17 56/20 61/2
owe [3]   4/12 29/2 29/2
owed [11]   8/7 8/10 8/12
8/15 52/17 53/1 56/12
56/15 56/18 56/20 61/2
own [14]   20/5 30/18 38/24
39/18 41/15 41/15 41/16
41/16 41/17 41/17 41/17
41/17 50/12 50/15
owner [1]   16/4
owners [5]   23/8 41/18
41/19 41/19 41/19
ownership [2]   41/16 41/18

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
2/1
p.m [4]   62/19 63/23 64/1
64/2
page [2]   22/2 65/2
pages [2]   31/24 66/3
paid [24]   8/11 8/14 12/5
16/14 16/18 18/11 27/1
27/20 28/6 29/3 31/18
31/18 32/3 32/14 35/10
38/18 38/19 39/10 39/19
39/21 39/22 48/8 56/16
56/19
pale [1]   37/5
paper [7]   22/2 22/7 22/9
22/11 22/19 22/21 31/24
pardon [1]   11/11
part [11]   12/14 14/20
18/18 18/24 25/20 29/20
43/14 44/21 51/17 52/1
52/5
particular [3]   13/6 54/21
55/15
particularly [5]   18/17
19/18 21/5 41/4 44/11
parties [5]   4/7 4/24
23/21 56/7 66/8
Pause [3]   6/12 45/12
49/17

pay [26]   16/25 17/11
18/23 18/25 20/9 25/1
24/1 26/16 27/22 28/5
29/3 36/11 43/7 48/13
48/25 50/24 52/13 52/17
52/17 52/24 52/25 53/10
53/12 53/17 54/11 61/2
paycheck [4]   16/14 16/15
18/11 29/2
paying [10]   18/24 23/5
28/19 34/15 36/4 40/7
40/9 43/25 49/7 52/17
payment [4]   30/1 53/20
54/5 56/5
penalty [1]   29/5
pending [2]   58/11 64/1
Pentagon [23]   8/6 8/9
11/25 12/14 13/8 26/22
29/19 29/23 30/8 30/9
30/12 31/4 31/10 32/7
33/4 33/4 39/1 45/4 48/12
51/24 52/4 56/11 56/14
people [34]   16/23 18/22
19/3 23/23 24/14 24/17
25/11 25/20 25/22 27/5
27/25 27/25 28/25 29/6
32/1 32/16 32/19 34/5
35/8 35/9 35/10 35/13
35/15 35/17 35/19 36/3
36/11 36/14 36/16 36/17
37/5 37/10 37/16 47/13
percent [1]   27/23
perfectly [1]   5/12
perform [2]   18/13 51/13
performance [1]   51/14
performed [1]   41/22
performs [1]   55/5
Perhaps [1]   59/8
period [6]   16/10 16/18
29/22 39/14 50/22 51/20
permanence [1]   18/15
Permanente [16]   8/6 8/9
8/12 8/15 12/1 13/8 16/13
19/7 19/8 48/12 51/24
52/5 56/12 56/14 56/17
56/20
permit [1]   17/8
permits [1]   2/12
person [7]   14/3 14/3 15/6
23/18 24/9 34/8 40/9
person's [1]   25/1
personal [4]   32/23 33/10
33/11 34/11
personally [6]   32/21
33/17 40/17 40/18 40/19
53/16
pertains [1]   50/5
PhD [1]   1/13
phrase [2]   59/19 61/10
piece [5]   22/2 22/7 22/11
22/21 25/15
pieces [1]   41/5
PILGRIM [2]   1/20 66/13
place [6]   12/1 30/6 30/22
30/23 41/25 46/13
places [1]   44/1
Plaintiff [25]   8/5 8/8
8/11 8/14 29/15 29/15
29/16 43/2 50/20 50/22
51/19 51/23 51/24 52/4
52/16 52/17 54/25 55/3

55/22 56/10 56/13 56/16
56/19 60/10 61/1
plaintiff's [4]   5/10 46/8
52/13 53/25
plaintiffs [29]   1/4 1/13
4/19 16/6 24/10 26/4
26/19 27/22 29/18 32/9
33/20 34/14 42/3 42/5
44/14 52/14 52/21 53/8
53/12 53/14 54/7 54/23
58/25 59/9 59/11 60/24
61/14 63/14 63/16
plaintiffs' [1]   56/9
played [1]   53/20
playing [1]   23/23
plea [1]   49/23
please [20]   7/19 10/21
11/5 13/1 21/19 24/23
28/14 43/15 45/19 45/19
45/23 46/23 50/8 57/15
52/19 57/19 58/20 62/5
62/21 63/20
point [5]   3/24 7/10 11/22
38/3 60/1
pointed [2]   12/18 12/19
points [1]   44/11
popular [1]   25/20
posed [2]   3/21 57/20
position [5]   4/3 6/3 9/14
21/13 21/15
possible [1]   14/11
power [3]   14/18 54/2 56/2
precise [1]   7/24
precisely [1]   19/2
predicate [2]   60/6 60/13
predicated [1]   43/11
prepared [1]   35/3
preponderance [8]   32/10
33/20 53/9 58/25 59/9
59/12 60/25 61/15
present [3]   10/23 10/24
62/20
presentation [1]   25/3
presented [1]   42/19
presenting [1]   25/14
presently [1]   3/7
preserved [1]   6/9
president [2]   32/14 33/25
presume [1]   47/14
presumes [1]   47/14
pretrial [2]   5/19 24/21
pretty [5]   13/13 13/24
14/19 17/3 21/14
previous [1]   46/10
previously [4]   12/19
44/15 50/4 66/6
prime [2]   41/2 41/8
principal [4]   12/15 29/20
52/1 52/5
probably [4]   10/5 36/1
49/19 59/6
proceed [2]   3/4 45/13
proceedings [6]   1/24 6/13
24/21 58/12 62/19 66/5
proceeds [1]   42/10
produced [1]   1/24
professional [1]   21/7
profit [5]   18/3 18/7 18/8
18/10 51/10
prohibited [1]   53/4
Project [1]   41/24

**P**  Case 1:06-cv-02031-JMF

pronounce [1]   21/24
proof [11]   10/2 22/19
  42/16 44/15 50/7 50/21
  51/25 52/15 52/22 53/15
  54/8
proposal [6]   22/2 22/2
  22/6 22/9 22/22 35/3
proposed [2]   3/20 60/24
protect [2]   15/13 28/22
protected [1]   54/11
prove [5]   37/20 42/17
  44/16 44/17 44/18
proven [2]   44/19 44/20
provided [5]   2/4 19/3
  24/10 35/22 66/4
provides [1]   25/11
prudence [1]   11/19
punish [1]   28/25
punished [1]   61/17
punishment [1]   29/5
purpose [1]   15/20
purposes [1]   51/2
pursuant [1]   43/16
put [9]   18/22 18/23 24/11
  26/20 35/23 38/24 42/22
  47/7 59/8
puts [1]   36/25
putting [1]   18/11

**Q**

question [60]   2/2 2/11
  2/19 2/20 3/25 4/13 4/14
  4/16 6/14 11/23 12/16
  12/16 14/12 15/24 16/16
  18/9 19/13 23/24 25/2
  29/13 29/18 32/9 32/13
  33/19 33/22 34/12 34/16
  37/19 38/7 40/21 42/20
  42/20 43/3 43/4 46/17
  49/15 53/3 53/19 53/22
  55/23 58/16 58/21 59/8
  60/5 60/6 60/7 60/9 60/11
  60/14 60/18 60/23 60/24
  61/6 61/13 61/14 62/10
  62/23 63/1 63/7 63/8
questionably [1]   2/14
questions [12]   3/21 5/7
  12/12 15/4 15/21 20/23
  29/17 37/23 50/6 57/3
  57/20 63/12
quit [1]   37/12
quite [2]   19/5 34/15
quitting [1]   28/14
quote [2]   26/14 60/24

**R**

RADTKE [19]   1/3 3/10 3/13
  6/17 6/19 6/25 8/5 8/8
  26/20 26/23 29/13 32/12
  43/4 52/4 56/10 56/13
  60/18 61/1 63/13
Radtke's [1]   51/23
raise [1]   5/15
raised [1]   33/1
Ramon [1]   33/8
rate [6]   16/18 36/10
  36/13 36/13 54/5 56/5
rather [2]   22/23 51/4
reach [1]   2/15

read [10]   4/7 4/19 7/22
  8/7 8/23 26/6 49/11 57/4
  60/6 60/17
reading [1]   10/11
reads [2]   58/15 58/24
real [3]   18/7 47/4 47/10
realities [3]   53/18 53/23
  55/24
reality [6]   17/17 21/25
  51/5 51/19 54/15 55/21
realization [1]   11/19
really [11]   20/8 23/2
  23/3 23/9 23/11 26/2
  36/21 40/18 45/6 57/23
  61/14
reason [7]   11/18 19/15
  40/18 41/24 42/17 46/25
  55/17
reasonable [3]   20/8 24/17
  36/17
reasonably [1]   50/10
reasons [1]   20/6
REBUTTAL [2]   47/22 65/5
recall [2]   21/3 47/11
received [1]   58/13
recess [4]   57/17 58/11
  62/17 64/2
Recessed [1]   64/1
reckless [3]   53/3 53/6
  53/11
recollection [2]   50/13
  50/16
recollections [1]   50/14
record [17]   3/5 9/13
  18/22 29/10 37/24 39/15
  39/15 39/16 42/16 43/1
  43/10 44/3 44/22 46/5
  47/5 61/5 61/9
recorded [1]   1/24
records [9]   7/13 15/16
  17/23 17/24 19/1 19/3
  40/4 54/6 56/6
recruiting [3]   14/25
  14/25 41/22
recruitment [1]   14/22
redone [1]   9/16
Reed [8]   27/9 27/14 27/17
  33/3 35/2 39/1 43/20
  43/24
reference [4]   4/25 56/9
  62/22 63/8
referred [1]   28/16
reflect [2]   9/23 10/10
reflected [2]   17/20 37/17
reflects [2]   36/12 36/13
regarding [4]   9/21 13/17
  13/18 25/4
regardless [1]   15/3
regards [3]   10/15 24/25
  40/16
regular [2]   16/11 52/8
reimburse [2]   32/5 32/6
reimbursed [10]   26/23
  31/2 31/6 31/7 31/9 31/21
  45/3 45/5 56/11 56/13
reimbursing [1]   36/10
rejected [1]   6/5
rejecting [1]   6/6
related [4]   12/4 19/13
  23/24 66/7
relates [2]   16/9 22/4

relation [1]   55/12
relationship [6]   18/16
  41/2 51/15 51/19 53/24
  55/4
relevant [3]   3/24 20/12
  20/14
remain [2]   11/3 57/16
remaining [3]   8/21 50/3
  50/19
remember [14]   13/17 14/20
  15/8 16/4 17/7 17/10 21/7
  21/21 22/4 27/22 33/2
  37/10 41/13 50/14
remind [3]   17/3 50/4 50/9
remove [1]   30/6
repeat [3]   8/3 12/8 43/5
replace [1]   40/12
reported [2]   33/6 33/8
Reporter [2]   1/20 1/21
representations [1]   38/15
request [6]   22/13 22/23
  23/19 26/20 26/23 27/22
requested [1]   22/20
requests [1]   29/25
required [7]   15/12 16/1
  18/13 51/13 58/17 58/22
  62/24
requirement [1]   22/4
requires [1]   43/14
reread [2]   58/20 62/4
research [2]   21/11 48/14
resignation [2]   28/8
  28/13
resolution [1]   8/20
resolve [6]   2/19 2/20
  2/23 5/7 53/22 55/23
respect [5]   24/16 29/13
  34/16 54/20 55/15
Respectfully [1]   15/23
respond [3]   34/9 34/10
  63/12
responsibility [4]   20/15
  48/6 48/7 48/10
responsible [10]   3/16 9/8
  42/6 42/14 43/21 43/25
  49/2 49/5 54/9 60/3
result [6]   10/5 19/12
  22/6 52/14 52/18 54/12
resume [2]   25/6 63/20
resumed [3]   6/13 58/12
  62/19
resumes [1]   25/7
return [1]   18/20
returns [2]   18/21 52/8
reviewing [3]   15/5 15/6
  15/7
revising [1]   63/2
RFP [3]   35/5 35/12 35/24
ridiculous [3]   32/22 42/8
  42/8
right [39]   2/6 2/22 3/4
  3/23 4/20 7/1 7/2 9/9
  9/16 13/3 17/1 17/9 17/15
  17/22 19/23 20/3 21/23
  21/23 24/8 26/5 29/1
  29/10 29/21 29/25 34/2
  34/12 35/22 35/24 36/3
  36/10 43/16 43/18 45/11
  45/22 49/19 49/24 58/13
  59/23 62/16
rights [3]   17/8 54/10

rights... [1]   54/13
Road [1]   1/14
Rockville [2]   29/24 30/10
role [3]   14/24 14/25 15/2
room [2]   44/13 63/19
rounds [1]   11/18
RPR [2]   1/20 66/13
rule [5]   19/24 29/9 33/14
 49/9 50/25
ruled [1]   44/9
run [2]   32/18 33/25
running [2]   21/1 28/18
rutter [1]   20/3
rutter-less [1]   20/3

S

sadly [2]   21/23 21/24
said [19]   3/23 19/22
 25/24 25/25 30/15 30/15
 30/19 33/5 33/6 35/5 39/6
 40/2 40/3 40/4 43/5 44/18
 47/21 48/22 50/10
salaried [1]   36/16
salary [2]   24/11 43/7
SALB [17]   1/13 1/14 3/10
 11/6 25/24 27/14 27/24
 29/20 30/25 35/21 45/9
 45/10 47/22 59/23 62/3
 65/3 65/5
same [8]   16/3 33/21 34/16
 36/22 41/7 41/13 43/3
 58/9
sandwich [1]   30/16
saving [1]   4/24
savings [4]   46/3 47/3
 47/9 47/9
saw [4]   5/17 9/15 29/22
 57/8
say [24]   4/2 4/5 4/5 4/23
 4/24 9/22 17/10 17/10
 17/14 21/22 22/8 32/8
 33/2 33/9 33/14 35/18
 35/23 36/7 36/9 48/9 59/3
 60/8 60/12 60/14
saying [6]   2/16 28/13
 39/24 44/10 47/5 61/21
says [17]   12/5 13/10
 13/11 22/12 26/11 26/16
 30/25 31/23 35/13 36/19
 36/20 37/1 40/8 40/10
 48/2 48/24 48/25
scam [1]   24/12
schedules [2]   54/3 56/4
scheme [2]   30/25 38/21
scheming [2]   27/25 28/1
School [1]   20/19
screens [1]   11/9
seated [1]   62/21
second [8]   5/4 5/15 8/24
 21/16 22/22 32/9 45/22
 60/17
secondly [1]   38/22
see [17]   2/16 12/25 14/16
 26/8 26/11 26/11 26/13
 31/24 32/10 33/22 34/6
 34/7 36/23 45/25 46/14
 47/8 63/6
seek [1]   21/11
seems [1]   7/14

send [3]   32/1 39/7 65/10
sending [1]   63/5
sense [2]   38/20 43/13
sent [3]   28/13 30/18 39/6
sentencing [1]   49/18
separate [2]   5/20 12/2
series [1]   21/1
serious [1]   32/25
Service [1]   22/3
services [5]   35/22 41/22
 41/23 43/25 55/9
session [2]   1/9 57/9
set [2]   14/9 38/24
seven [1]   33/15
shape [1]   57/21
share [2]   55/9 55/16
she [155]
she's [5]   3/15 30/1 30/6
 34/8 34/9
sheet [8]   2/8 10/17 22/9
 27/23 37/18 57/18 57/19
 61/8
sheets [10]   15/6 15/6
 15/7 26/23 28/6 35/17
 39/6 39/7 39/10 39/12
Sherry [2]   17/10 17/11
shortened [2]   13/8 13/9
shorthand [1]   1/24
shortly [1]   27/5
should [44]   5/6 5/6 5/19
 8/5 8/8 8/11 8/14 9/19
 10/15 15/21 16/16 16/16
 27/18 27/20 30/19 31/2
 31/6 31/9 31/18 32/8
 33/11 36/16 39/25 39/25
 40/16 40/20 41/12 41/24
 42/17 44/21 45/3 45/4
 56/10 56/13 56/16 56/19
 56/25 57/2 60/5 60/8
 60/11 60/14 61/16 63/25
shouldn't [1]   31/6
show [3]   4/19 43/6 43/10
showed [5]   21/4 40/1
 42/21 53/3 53/6
showing [2]   39/22 45/17
shows [1]   39/17
side [1]   43/17
sides [2]   8/22 63/7
Sidney [1]   58/4
signed [5]   17/4 22/15
 38/12 44/6 58/15
significance [1]   12/23
signs [1]   22/14
silent [1]   4/16
similar [2]   40/15 52/24
simple [3]   13/22 19/21
 19/24
simply [6]   4/5 5/9 10/11
 21/13 35/14 35/25
simultaneously [1]   55/6
since [2]   4/18 4/18
single [2]   32/1 50/25
sir [3]   5/14 46/23 57/6
sit [1]   49/24
site [8]   12/7 12/7 12/10
 12/10 39/5 52/2 52/2
 52/11
sitting [1]   46/13
situation [5]   6/4 17/18
 19/24 51/3 51/6

six [1]   28/6
skiing [3]   18/12 18/15
 51/12
slightly [1]   13/22
small [8]   24/1 24/9 25/10
 32/18 32/18 32/19 47/24
 48/1
snippet [1]   10/1
so [71]
Sobeit [1]   7/12
sole [1]   20/14
solely [1]   51/4
solicitation [1]   21/17
some [2]   13/24 16/13
 17/19 18/22 20/3 20/11
 22/3 23/15 24/12 28/17
 30/15 32/15 33/15 35/18
 36/9 36/20 37/4 38/20
 41/9 45/1 46/2 49/11
somebody [5]   34/22 36/6
 36/8 40/8 40/12
somebody's [1]   48/20
somehow [1]   29/8
someone [8]   10/11 30/22
 31/17 33/8 36/7 40/2
 40/13 43/22
something [8]   5/16 18/7
 23/16 23/16 23/17 25/17
 40/11 48/22
sometimes [3]   13/10 13/11
 30/15
sophisticated [2]   20/21
 23/9
sorry [8]   4/2 6/18 11/15
 12/21 13/12 37/19 45/13
 57/12
sort [5]   14/5 37/4 45/1
 47/3 48/18
sought [1]   5/10
sound [1]   26/1
sounds [1]   61/11
span [4]   31/8 31/13 32/7
 43/9
specified [1]   3/6
spend [3]   13/3 13/19
 57/20
spent [12]   8/12 8/15 12/6
 12/9 12/13 12/14 43/15
 51/25 52/4 52/5 56/17
 56/20
spot [1]   13/16
staff [2]   41/16 41/17
stand [1]   2/2
standard [3]   12/9 20/10
 51/2
standards [5]   14/2 34/19
 51/3 53/4 54/10
standing [1]   39/24
start [1]   49/16
started [3]   30/3 34/12
 36/22
state [9]   5/9 21/12 48/24
 48/25 56/8 60/19 61/5
 62/6 63/9
stated [7]   9/14 10/17
 38/13 60/5 61/9 62/1 66/6
statement [2]   7/23 56/22
statements [3]   50/12
 50/12 50/13
STATES [5]   1/1 1/10 1/21
 48/23 66/4

Station [1]   31/3
statute [5]   6/15 7/5 7/6 7/6 27/21
Stay [1]   49/14
stayed [1]   30/8
steal [1]   37/16
stenographic [1]   66/4
stick [1]   63/25
still [3]   21/9 21/9 50/5
stipulated [2]   4/22 4/23
stipulating [1]   4/9
stipulation [2]   4/20 5/2
stood [1]   46/20
storm [1]   28/18
story [1]   16/19
straight [5]   16/20 17/23 18/6 26/14 30/21
Street [1]   1/18
strike [1]   59/10
structures [1]   41/25
stuck [1]   11/9
stuff [1]   46/5
subcontracting [1]   41/5
subcontractor [2]   40/25 41/3
submit [5]   2/24 24/15 33/12 39/9 39/12
submits [3]   36/12 36/25 45/15
submitted [6]   26/20 26/23 27/21 27/24 29/25 31/24
submitting [2]   39/10 43/19
such [5]   37/10 47/24 48/1 52/1 53/24
sudden [3]   33/17 36/8 46/4
sue [2]   48/21 48/21
sued [2]   27/3 34/17
suggest [3]   15/23 27/24 60/11
suggests [1]   34/20
Suite [2]   1/15 1/18
sum [2]   24/1 46/25
sums [2]   23/6 23/7
supervise [1]   56/3
supervised [2]   14/23 54/3
supervising [1]   15/2
supervision [1]   39/5
supervisor [5]   10/12 53/15 53/17 53/20 53/23
supplied [1]   35/14
supply [1]   35/4
support [5]   22/24 37/24 42/23 44/23 47/6
supported [1]   44/3
sure [9]   11/7 11/12 11/14 17/3 20/15 47/25 48/6 48/7 48/14
surprise [1]   15/13
SUSAN [1]   1/17
sustained [1]   47/15
switch [1]   11/12
swore [1]   58/10

T

table [1]   24/11
take [8]   7/16 7/19 13/15 21/8 30/16 45/19 45/19

taken [2]   66/5 66/9
taking [2]   4/3 13/19
talk [4]   18/14 31/16 33/3 48/14
talked [7]   17/10 20/18 20/20 21/7 29/20 40/15 49/2
talking [13]   17/9 19/25 25/17 27/4 27/6 31/19 32/4 33/23 35/15 39/16 39/16 48/17 57/23
tax [2]   18/20 18/21
taxes [2]   18/24 38/16
team [2]   14/21 14/21
technical [1]   23/24
tell [11]   3/8 4/4 9/7 9/7 17/19 20/2 22/17 25/23 31/25 40/8 49/25
telling [2]   6/20 8/19
tells [1]   22/14
ten [4]   3/11 19/23 28/6 48/5
terms [6]   7/25 13/23 25/23 27/21 37/2 54/16
test [2]   50/25 53/18
testified [12]   9/22 21/16 25/4 25/6 25/8 30/13 32/15 35/1 37/25 38/2 38/9 42/12
testimony [13]   10/10 11/24 13/17 14/19 15/11 21/4 21/14 24/25 25/14 38/24 39/17 40/22 44/23
than [10]   14/3 15/25 22/18 25/5 25/6 25/8 33/24 44/17 51/4 59/18
thank [19]   5/14 5/23 6/8 10/18 10/19 11/10 13/2 24/5 24/6 26/9 45/8 45/13 47/18 49/8 50/18 57/13 62/15 63/20 63/25
that [441]
that's [30]   3/3 5/12 9/6 12/4 12/8 14/6 14/7 14/9 14/21 17/1 19/2 24/3 27/5 27/14 28/17 28/24 30/7 30/21 31/14 39/8 39/20 39/21 39/22 41/6 41/10 43/9 49/7 50/5 58/2 60/13
their [38]   2/9 4/19 7/17 13/24 14/20 16/24 17/8 19/4 20/5 20/5 20/6 20/9 22/21 22/22 22/22 24/11 24/11 28/2 28/5 28/25 29/1 39/9 47/4 48/13 48/13 48/13 49/7 50/11 50/12 50/12 50/14 51/10 53/4 53/10 60/6 60/7 62/10 63/21
theirs [1]   39/13
them [29]   2/25 7/17 7/22 7/22 7/22 9/1 9/7 9/7 18/14 21/9 21/10 21/18 23/4 29/4 33/1 35/25 36/5 36/8 37/9 41/11 50/5 53/12 57/8 57/10 57/11 59/3 60/8 60/14 60/24
then [33]   3/19 4/4 4/17 7/23 7/24 9/5 11/3 11/4 11/15 16/12 16/24 18/9

20/5 21/17 22/5 23/17 23/19 25/21 27/17 29/3 29/4 30/20 30/22 34/4 34/22 35/11 35/14 36/7 36/16 37/9 37/11 54/9 54/23
there [46]   2/11 2/25 4/16 5/5 6/4 7/14 9/14 9/14 9/19 10/4 12/23 14/10 17/4 17/23 17/24 19/24 20/22 22/11 25/15 26/3 26/12 28/20 29/1 33/5 37/10 39/4 42/13 44/16 45/7 46/21 47/11 48/2 48/3 48/3 50/25 52/25 55/8 55/20 57/20 61/3 61/4 61/20 62/12 63/15 63/16 63/18
there's [36]   6/15 11/21 12/3 15/24 16/10 19/20 19/23 25/1 25/9 26/18 28/3 28/4 28/5 32/1 32/2 32/13 34/16 37/24 40/4 40/17 40/18 40/23 41/24 42/15 42/17 42/22 43/5 43/9 44/19 44/22 44/25 44/25 45/6 47/5 47/10 63/7
thereafter [1]   27/5
therefore [4]   6/25 17/5 52/3 53/8
these [56]   3/9 4/6 4/10 7/9 7/9 7/20 8/19 9/10 9/16 15/19 15/20 17/8 19/5 21/5 23/2 26/5 27/5 27/25 28/2 29/14 29/17 31/25 32/1 33/22 34/5 34/5 34/7 35/13 35/16 35/16 36/16 36/20 36/20 36/24 37/5 37/7 37/10 37/23 37/25 38/25 41/22 42/2 44/11 44/13 44/14 44/17 45/2 45/6 47/2 47/9 51/18 53/21 54/12 55/23 60/15 62/15
they [126]
they'd [1]   2/13
they'll [1]   17/20
they're [8]   12/22 23/8 26/7 29/1 44/10 47/8 49/11 63/21
They've [1]   44/20
thing [8]   5/15 8/24 8/25 12/17 13/6 18/16 25/12 49/25
things [14]   5/1 6/16 20/3 25/6 25/7 34/4 34/7 36/21 36/24 38/25 44/13 44/17 44/18 49/3
think [59]   3/2 3/9 3/24 5/2 6/17 6/19 9/8 10/4 10/7 10/11 10/12 11/18 13/7 13/12 14/7 14/10 14/14 15/22 17/17 17/19 17/20 18/2 18/12 18/16 19/5 20/4 20/4 20/6 21/9 28/16 30/15 31/20 33/6 33/8 35/5 35/14 36/6 36/24 37/3 37/9 37/24 38/17 38/20 38/22 40/1 40/2 42/8 42/9 43/3 43/15

**T**

think... [9]   44/13 44/25
  57/24 59/5 59/19 60/5
  60/9 60/13 62/1
thinking [2]   15/22 19/17
thinks [1]   36/13
third [2]   16/9 46/7
this [167]
those [19]   6/16 11/23
  12/3 16/24 20/1 24/3
  27/18 27/19 28/10 28/23
  30/18 31/23 35/8 35/15
  50/8 50/8 53/11 59/3
  63/12
though [1]   34/23
thought [5]   21/14 36/16
  44/8 45/16 48/11
thousand [4]   32/6 33/16
  37/8 46/3
three [11]   2/13 7/7 25/14
  51/12 54/5 55/14 56/5
  58/2 58/18 58/23 62/25
through [5]   29/12 29/17
  34/18 44/11 44/12
throughout [1]   50/10
thrown [2]   35/20 36/1
tied [1]   19/12
time [75]
times [2]   16/25 55/7
tions [1]   58/23
title [1]   51/4
today [1]   11/18
together [5]   18/14 40/25
  41/1 41/4 41/12
told [10]   2/17 4/17 14/21
  21/8 21/21 28/23 28/25
  30/5 30/17 46/24
too [3]   10/7 22/25 42/2
took [3]   6/3 13/18 25/15
total [5]   8/7 8/10 51/3
  56/12 56/15
touche [1]   18/5
transcript [3]   1/9 1/24
  66/3
transcription [1]   1/25
transporting [1]   48/12
travel [16]   3/11 8/6 8/9
  9/21 11/24 11/25 12/1
  13/16 32/3 32/5 52/1 52/1
  52/9 52/12 56/11 56/14
traveled [1]   31/3
traveling [8]   3/13 12/6
  12/9 12/13 13/8 29/19
  51/23 52/4
travels [1]   52/7
treat [1]   23/4
treated [2]   23/2 28/2
trial [4]   8/21 21/3 24/18
  50/10
tried [1]   48/16
trip [2]   13/9 13/18
triple [2]   10/1 61/17
true [4]   21/23 28/1 52/10
  66/2
truly [3]   20/8 23/2 23/11
trust [1]   50/15
truth [1]   21/25
try [5]   11/20 14/9 22/12
  36/23 49/6
trying [7]   23/1 26/1

turn [1]   44/1
turned [1]   45/24
turning [4]   29/7 29/8
  33/13 46/2
Twinbrook [5]   3/11 31/3
  31/10 32/5 45/5
two [22]   4/14 5/1 7/6
  14/23 18/14 25/14 30/7
  34/10 34/17 41/11 49/23
  54/3 54/8 54/14 55/6 55/6
  55/11 56/3 56/24 58/1
  59/1 63/6
type [6]   24/14 24/14 34/8
  35/4 35/8 38/7
typed [1]   23/17
types [1]   35/13

**U**

ultimate [1]   53/19
unaware [1]   5/25
unclear [1]   10/9
under [14]   6/24 10/8 16/1
  17/8 25/4 26/2 38/2 53/4
  53/15 53/18 53/20 54/10
  55/18 55/18
underlined [1]   26/14
underpaid [1]   28/3
understand [5]   3/5 5/12
  15/21 30/2 42/14
understanding [1]   8/17
understood [1]   26/15
unfair [3]   13/7 13/13
  43/23
UNITED [5]   1/1 1/10 1/21
  48/23 66/4
unless [2]   4/16 26/18
unpaid [2]   28/4 53/16
until [4]   27/1 28/20 37/2
  57/16
up [12]   2/13 26/11 27/19
  29/16 31/22 31/22 39/22
  42/22 45/25 46/7 46/11
  46/20
upon [1]   31/1
urge [1]   57/16
us [9]   11/19 19/21 20/2
  21/8 22/15 23/16 40/3
  44/22 48/22
use [2]   39/16 63/4
used [2]   38/10 42/1
using [2]   39/18 59/19

**V**

vendor [1]   18/23
verdict [24]   2/8 3/6 9/6
  10/17 11/13 29/11 29/14
  37/18 44/21 46/12 57/1
  57/7 57/12 58/11 58/17
  58/22 58/24 61/8 62/24
  63/2 63/4 63/6 63/20 64/1
version [1]   22/15
very [6]   12/6 26/11 26/15
  49/2 49/11 62/1
view [1]   7/20
violated [2]   42/24 61/16
violation [1]   20/10
voice [1]   11/9
voluntarily [1]   17/14

**W**

wage [9]   20/14 25/19
  26/17 34/16 42/21 42/25
  48/6 61/16 61/24
wages [5]   18/7 19/11 20/9
  52/17 53/21
waive [1]   17/15
waiver [6]   22/3 22/23
  22/24 23/20 23/22 23/23
Walter [8]   27/9 27/13
  27/17 33/3 35/2 39/1
  43/20 43/24
want [23]   3/6 4/4 4/5 4/6
  4/8 4/9 4/14 5/11 5/15
  9/17 11/10 13/14 17/14
  18/4 23/7 34/21 35/13
  36/7 38/5 49/12 49/12
  50/3 50/9
wanted [7]   4/2 9/13 30/4
  31/20 35/16 38/17 38/24
warrant [1]   34/11
warranties [1]   38/15
Warren [5]   14/25 14/25
  15/1 15/4 32/3
was [152]
Washington [3]   1/5 1/19
  1/23
wasn't [4]   33/8 37/16
  38/3 60/4
waters [1]   42/4
way [12]   3/4 5/2 8/20
  17/1 20/25 24/19 26/20
  27/1 27/1 41/6 56/23
  56/24
we [65]   2/2 2/5 2/10 3/2
  3/3 3/4 3/6 3/8 3/21 4/2
  4/6 4/10 4/15 5/5 7/4 7/9
  7/20 9/17 9/19 9/21 9/25
  10/14 12/14 13/3 13/5
  14/5 14/6 14/7 14/13
  20/24 20/24 22/13 22/23
  23/6 23/19 24/8 24/16
  25/2 25/17 26/8 30/2
  31/25 32/4 32/8 34/25
  34/25 35/13 35/24 44/15
  47/8 48/2 48/9 48/9 48/10
  48/11 50/9 57/3 58/13
  58/17 58/22 59/3 60/14
  60/21 62/8 63/11
we'll [3]   7/25 9/9 22/12
we're [13]   3/9 7/25 9/8
  13/20 14/8 17/9 19/16
  19/18 22/8 22/9 24/12
  40/11 62/24
we've [5]   23/15 23/16
  24/25 43/1 57/19
wear [1]   32/19
week [2]   11/13 16/24
well [14]   2/17 3/8 3/23
  4/4 7/8 10/14 13/20 13/21
  14/24 18/25 19/2 19/22
  26/20 61/11
went [9]   24/18 30/20
  30/20 33/7 34/18 38/23
  39/2 39/3 41/10
were [44]   2/8 9/16 10/17
  11/14 11/14 14/20 14/21
  19/17 20/16 20/22 23/2
  23/4 23/25 26/3 27/23
  28/2 28/3 28/10 28/23

**W**

were... [25]   32/25 33/21
 35/5 35/20 35/22 41/11
 41/18 41/19 41/20 41/21
 44/9 46/15 46/17 46/20
 47/13 47/13 49/6 53/9
 54/24 55/3 55/21 55/25
 59/1 59/4 61/7
weren't [1]   25/21
what [79]
what's [1]   61/19
whatever [4]   16/11 17/1
 38/5 42/10
whatsoever [1]   22/19
when [48]   2/14 2/17 3/20
 9/15 11/13 15/22 17/22
 17/23 18/22 18/23 19/6
 19/8 19/24 20/22 21/7
 21/21 22/10 26/16 26/25
 27/8 27/11 27/16 29/1
 29/3 31/19 33/7 33/23
 34/2 36/5 36/12 36/21
 37/11 37/21 38/1 38/23
 39/1 39/14 39/16 42/1
 42/7 43/25 46/20 47/2
 47/6 47/8 48/3 49/10 55/5
where [13]   2/2 3/5 3/24
 16/10 20/1 23/16 24/13
 26/11 28/18 36/9 40/2
 55/8 55/14
whereas [1]   44/15
whether [48]   4/18 10/7
 12/13 16/4 16/5 17/25
 18/1 18/2 19/11 19/13
 19/25 23/1 23/4 23/25
 25/3 26/12 29/18 30/3
 35/4 37/20 40/16 44/13
 50/20 50/25 51/6 51/21
 51/23 52/3 52/10 52/13
 52/15 52/21 52/23 52/25
 52/25 53/3 53/23 54/1
 54/24 55/2 55/11 55/21
 55/24 56/1 59/15 59/16
 59/17 61/2
which [22]   3/3 10/12 15/3
 18/17 22/15 24/1 34/18
 35/5 48/5 50/7 51/16
 51/20 52/9 55/5 57/20
 59/11 60/4 60/23 63/8
 63/11 63/12 66/8
while [1]   49/24
who [22]   9/7 10/12 13/24
 15/9 15/12 15/22 16/4
 16/23 17/10 18/22 19/3
 23/23 24/9 28/22 28/25
 35/1 49/1 49/4 49/5 52/7
 52/16 59/4
whole [1]   30/14
why [9]   37/10 37/12 41/10
 42/13 42/14 47/7 47/24
 48/2 50/5
widgets [1]   18/20
will [35]   2/24 4/17 4/23
 4/23 5/22 8/4 8/7 8/10
 8/12 10/5 10/11 11/2 11/3
 11/4 11/8 14/16 14/17
 16/25 17/3 17/14 23/22
 25/23 45/1 47/4 55/4
 56/12 56/15 56/17 56/20
 57/5 57/7 57/9 57/11

**W**

willfully [6]   10/7 19/14
 37/16 52/21 52/23 53/2
willfulness [8]   6/16 6/24
 34/15 34/20 34/20 43/4
 58/1 58/1
window [1]   48/21
wish [1]   4/18
withheld [2]   38/16 52/13
within [1]   36/24
without [6]   7/5 19/18
 36/17 39/5 42/25 57/21
witnesses [1]   22/17
won't [1]   2/14
wonderful [1]   28/11
word [2]   14/10 42/1
words [3]   28/10 30/19
 34/21
work [62]   3/16 3/18 9/9
 11/25 12/2 12/2 12/2 13/4
 13/4 13/10 13/11 14/15
 15/3 16/13 16/13 16/23
 18/4 18/13 18/17 21/17
 21/24 24/14 27/8 27/8
 27/9 27/12 28/12 28/15
 28/16 28/16 30/19 30/20
 30/22 30/23 34/2 37/11
 37/12 37/13 38/7 38/9
 38/10 38/13 38/22 39/1
 39/4 39/22 41/4 41/5 42/6
 42/9 42/18 43/22 44/5
 51/13 51/16 52/9 52/12
 54/3 54/16 55/5 56/3 60/3
workday [9]   12/7 12/10
 12/15 13/18 16/12 52/2
 52/6 52/8 52/9
worked [12]   12/6 12/8
 12/11 27/23 32/13 37/21
 39/5 40/25 40/25 43/14
 48/3 52/3
worker [2]   17/21 18/3
worker's [2]   51/9 54/10
workers [1]   51/9
working [24]   6/21 8/25
 9/2 16/10 17/14 18/4
 18/16 19/6 19/8 27/16
 29/1 29/23 30/3 30/6
 30/10 34/9 38/1 38/1 38/3
 39/14 42/7 43/23 48/11
 51/14
works [5]   17/2 40/2 48/8
 52/11 55/6
workweek [1]   55/7
world [1]   34/4
would [54]   3/12 4/21 5/9
 7/5 7/14 8/15 8/24 9/2
 13/19 15/4 15/23 15/25
 16/12 17/22 19/21 21/18
 23/4 29/7 29/9 30/8 30/14
 30/16 30/17 33/1 33/4
 33/25 35/4 35/5 35/10
 35/11 35/16 35/24 36/1
 36/17 37/20 42/13 43/22
 44/1 45/4 47/7 47/24
 57/16 57/18 57/19 57/25
 58/1 58/3 59/13 59/13
 59/23 60/21 61/3 61/10
 62/11
wouldn't [2]   23/3 35/24
WRAMC [1]   41/23

write [3]   22/13 22/13
 60/14
writes [1]   36/14
writing [4]   22/23 45/15
 46/13 46/21
written [6]   14/2 18/23
 23/20 35/14 44/6 61/20
wrong [4]   28/23 34/22
 34/24 37/2
wrote [6]   23/14 23/19
 25/5 25/7 28/9 28/11

**Y**

yeah [5]   5/25 21/23 31/13
 32/10 60/8
year [2]   7/14 18/20
years [7]   7/6 7/7 24/10
 25/18 25/19 48/5 58/2
yes [19]   5/22 6/2 6/25
 7/3 8/23 35/14 57/24 58/9
 60/15 60/22 61/3 62/3
 62/8 62/11 62/14 63/11
 63/12 63/14 63/22
yesterday [5]   3/9 3/21
 31/16 58/10 61/24
you [354]
you'll [10]   11/17 12/9
 12/12 14/16 16/3 23/5
 33/22 34/6 34/7 63/6
you're [14]   6/9 11/9
 16/21 16/22 18/21 20/2
 26/13 28/18 30/24 31/19
 34/22 34/23 41/7 42/25
you've [24]   11/24 18/21
 20/3 38/25
your [58]   2/20 2/23 3/5
 3/20 4/1 5/25 6/2 7/24
 8/3 8/20 9/9 10/22 10/25
 11/10 11/10 11/13 11/15
 13/10 13/11 17/12 17/15
 18/5 18/19 21/9 24/3
 24/16 24/20 24/22 25/8
 25/23 39/21 40/3 44/8
 45/14 46/19 46/22 49/7
 50/15 57/1 57/2 57/3 57/6
 57/9 57/20 58/20 59/5
 60/5 60/16 60/19 61/22
 61/23 62/4 62/5 62/6
 62/22 63/8 63/9 63/20
yourself [2]   8/3 18/4