**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATHY RADTKE, ET AL. | |
| Plaintiffs, | |
| v. | Civil Case No.: 06cv02031 (EGS) |
| MARIA CASCHETTA, ET AL. | |
| Defendants | |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT THEREOF**
**FOR ATTORNEY'S FEES AND COSTS**

COME NOW Plaintiffs Kathy Radtke and Carmen Cunningham, by and through their undersigned counsel, and respectfully request that this Honorable Court award Plaintiffs their attorney's fees and costs, pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 54, and Md. Code Ann., Labor & Employ. Art., §§ 3-427(d).

On February 18, 2014, Plaintiffs received judgment in their favor under both the federal and state wage and hour statutes requiring that they be paid overtime for hours worked above 40 hours in any one work week.  Pursuant to the statutes cited, Plaintiffs are the prevailing party and should be awarded attorney's fees and costs.  Computed at rates set by the *Laffey* Matrix, Plaintiffs' attorney's fees are slightly more than $265,000.  The Plaintiffs have computed that the *total* value of *all* time spent on this matter exceeds $325,000.  Plaintiffs seek an award of $240,000 in attorney's fees, or less than three-quarters of the total time spent on the case.  Plaintiffs also seek an aware of $8,179.49 in costs.[1]

---

[1] Some of these costs are reflected already on the Bill of Costs previously filed.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

In support thereof, Plaintiffs state as follows:

### I. Background.

This case was an action under the Fair Labor Standards Act, the Maryland State Wage Payment and Collection Act, the Maryland Wage and Hour Law, and the common law tort of Breach of Contract, seeking compensatory damages and equitable relief against Defendants Maria Caschetta, Lifecare Management Partners, and Advanta Medical Solutions, LLC.

Lippman, Semsker & Salb agreed to represent Ms. Radtke and Ms. Cunningham on a purely contingent fee basis in view of the Plaintiffs' inability to afford to pay legal fees and because representations of this sort are consistent with the firm's civil rights and employment justice goals. *See* Retainer Agreements, attached hereto as Exhibit 1.

The Complaint in this case was filed on November 29, 2006. From the very start, this has been a sharply contested matter. The proceedings in this case have included five preliminary motions; an additional motion to dismiss in response to the Plaintiffs' Amended Complaint; two motions by the Plaintiffs for discovery sanctions; litigation over the contents of the confidentiality agreement; lengthy cross-motions for summary judgment; extended work related to the management of documents containing confidential information; at least two mediation sessions; and substantial pretrial proceedings, in addition to a week-long trial.

Of great relevance to this fee petition, at no time at the outset of this case, during either settlement conference, or in advance or during trial did the Defendants have any willingness whatsoever to settle this matter (generally refusing even to engage in any settlement discussions). *See* Affidavit of S. Micah Salb, Esq., attached hereto as Exhibit 2, ¶ 30. In fact, the Plaintiffs

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

offered to settle for as little as $25,000 in December 2006, when the attorney's fees were minimal, but the Defendant refused. *See* Salb letter to Lescht, dated December 1, 2006, attached hereto as Exhibit 6.

At the conclusion of the jury trial in this case, the Court entered judgment as follows: in favor of Defendant Maria Caschetta; in favor of Plaintiff Carmen Cunningham as against Defendant Lifecare Management Partners in the amount of $729.67; and in favor of Plaintiff Kathy Radtke as against Advanta Medical Solutions in the amount of $5,114.62.

## II. Argument.

Pursuant to the Fair Labor Standards Act, the award of attorney's fees to prevailing plaintiffs is mandatory. In an action under the FLSA, the court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonably attorney's fee to be paid by defendant, and the costs of the action." 29 U.S.C. § 216(b); *ee also* Burnley v. Short, 730 F.2d 136, 141 (4th Cir. 1984). Under the parallel Maryland state law, Md. Code Ann., Labor & Employ. § 3-427(d), the Court of Appeals has held that although the statute states that attorney's fees "may" be awarded to the prevailing plaintiff, "the Legislature intended that discretion to be exercised liberally in favor of awarding fees . . ." Friolo v. Frankel, 373 Md. 501, 515 (2003). As a general rule addressing the implementation of fee shifting statutes, the Supreme Court has stated that fees should be awarded the prevailing plaintiff unless the circumstances in a particular case indicate some good reason why a fee award is not appropriate. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

**A.    Plaintiffs are Prevailing Parties.**

Judgment was entered in this case in favor of Ms. Radtke as against Advanta Medical Solutions and in favor of Ms. Cunningham as against Defendant Lifecare Management Partners. Having had judgment in their favor, the Plaintiffs are prevailing parties. A "prevailing party" "is one who has been awarded some relief by the court. . . ." <u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598, 603 (2001).

Judgment was also granted in favor of Defendant Maria Caschetta. That fact does not change the Plaintiffs' status as prevailing parties. <u>Hanrahan v. Hampton</u>, 446 U.S. 754, 758 (1980) (*per curiam*). Nor does it offset the amount of the fees to be awarded because the litigation as against Ms. Caschetta did not require any additional work or expense. *See* <u>Salb Afd.</u>, Exh. 2, ¶ 34.

**B.    The Tasks Performed.**

As with most wage and hour litigation, the successful prosecution of Plaintiffs' case required substantial investigation, through discovery, and careful preparation for trial. Plaintiffs' counsel is also cognizant that litigation should also be conducted efficiently. The request made herein is based upon the contemporaneous time, task, and expense records maintained by Plaintiffs' counsel's firm, and have been carefully reviewed. *See* <u>Salb Afd.</u>, Exh. 2, ¶ 38.

Prior to filing the complaint, counsel for Plaintiffs engaged in a careful investigation of Plaintiffs' claims, including the factual underpinnings and applicable statutes. Counsel interviewed the Plaintiffs as well as potential witnesses. Counsel also reviewed all

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

documentation that was then available. In addition, counsel for Plaintiffs attempted to resolve the matter prior to filing suit, but Defendants did not respond to a settlement proposal.

After filing the Complaint, counsel conducted additional factual investigation and case development, as well as necessary legal research on a range of relevant issues.

Counsel devoted the necessary time to the development, service, and filing of the Complaint, Amended Complaint, and other pleadings.

Following service of the Complaint, Plaintiffs engaged in extensive discovery. Discovery was unusually contentious in this case, and Plaintiffs filed several discovery motions (including motions related to the confidentiality order). Defendants finally produced hundreds of pages of payroll checks and time records that needed to be carefully reviewed. Because these documents were not produced in an orderly manner, the review was particularly time-consuming.

Plaintiffs' counsel deposed both Ms. Caschetta and Mr. Molina. The deposition transcripts were used throughout the trial. The Defendants deposed the Plaintiffs.

The Plaintiffs sought summary judgment in 2008 in an effort to avoid protracted litigation; the Court denied it without prejudice. The Plaintiffs sought summary judgment again in 2010, and the Defendants filed a cross-motion. The Court denied both motions.

As detailed in the accompanying time records, trial preparation began in earnest when it was clear that no settlement would occur. Trial preparation included extensive preparation with Plaintiffs. None of them had given testimony in a trial previously, and were largely unfamiliar with court proceedings and procedures.

Plaintiffs' counsel spent significant time reviewing all documents produced by Defendants and reviewing the deposition transcripts and discovery responses in order to prepare

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

for witness examinations. Plaintiffs' counsel drafted the Joint Pretrial Order, prepared trial exhibits, and the like. Plaintiffs' counsel researched a number of issues relevant to the case and legal issues that counsel needed to be prepared to argue.

During trial, Plaintiff's counsel conducted research on legal issues that arose during the trial and worked at length on calculating the Plaintiffs' damages. Those calculations were complicated by not knowing what categories of damages would ultimately be applicable.

Following trial, Plaintiffs' counsel prepared several post-trial documents, including damages calculations.

The trial itself was conducted in an efficient manner. Plaintiffs were represented at trial by two attorneys, both of whom were actively engaged in the tasks of trial, including eliciting testimony, keeping notes regarding testimony, exhibits, and legal issues, and the like.

Plaintiff devoted appropriate time in efforts to attempt to settle this matter. Prior to the two settlement conferences held in this case, Plaintiffs' counsel extensively reviewed the case and worked with the Plaintiffs to determine their range of acceptable settlement. Counsel prepared the pre-conference letter. Unfortunately, Defendants demonstrated no interest in resolving the matter at either of the settlement conferences or at Plaintiffs' counsel's repeated inquiries about settlement thereafter.

Plaintiffs' counsel has sought to be efficient in the preparation of this motion and supporting documentation. Time and expenses required for the preparation of a motion for attorneys' fees and costs are compensable. Ganey v. Garrison, 813 F.2d 650, 652 (4th Cir. 1987). Some of the time in this category was expended reviewing time sheets and ensuring that the time entries adequately explained the tasks involved. Substantial time was expended in analyzing the

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 6 -

inclusion or exclusion of each entry in preparation for the fee petition and Bill of Costs. The steps required to prepare a proper fee application are necessarily time-consuming. Counsel has sought to adequately explain the work necessary that led to the judgment in Plaintiffs' favor with the hope that the time records and explanation of work involved will reduce the Court's and Defendants' time in addressing this application.

**C.     The Attorney's Fees Rates Requested by Plaintiffs Are Reasonable.**

Under both the federal and Maryland laws, the "lodestar" method for establishing the proper amount of a fee award is to be applied. <u>Copeland v. Marshall</u>, 641 F.2d 880, 905 (D.C. Cir. 1980); <u>Friolo v. Frankel, et. al</u>, 403 Md. 443 (2008)). The lodestar method consists of the "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *Friolo*, 403 Md. at 453. "Excessive, redundant, or otherwise unnecessary" hours should be excluded. *Friolo*, *id*.

This Court may consider the twelve factors discussed in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983), though "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, *id.* at 434 n.9. Accordingly, an item-by-item review of the twelve factors is not what is intended and might well lead to a mistaken conclusion. Rather, the Court's duty is to consider all those factors at one point or another in determining the proper fee. When an applicant has carried the burden of demonstrating that the hours and rate requested are reasonable, the result is a presumptively reasonable fee. <u>Blum v. Stenson</u>, 465 U.S. 886, 897 (1984).

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

"Rates common in the community for similar types of cases," is the first element for setting the appropriate rate. The appropriate rates for this case are the rates earned by private counsel in other complex litigation. Thus, in Admiral Mortgage, Inc. v. Cooper, 357 Md. 533, 552 (2000), another case under the Wage Payment and Collection Law, the Court of Appeals equated such litigation to cases invoking 42 U.S.C. § 1988 in the federal context, stating that: "[a]lthough we presently have no rule comparable to Fed. R. Civ. P. 54(d)(2) or the procedure set forth in 42 U.S.C. § 1988, a generally similar post-verdict approach may be used." As the United States Court of Appeals for the Second Circuit has held, "[Congress] intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation . . . and not be reduced because the rights involved may be nonpecuniary in nature." Farbotko v. Clinton County, 433 F.3d 204, 211 (2d Cir. 2005), *citing* S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

The "*Laffey* Matrix" is the best tool available for specifying the appropriate rates. The *Laffey* Matrix is based on the hourly rates allowed by the United States District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C.Cir. 1984).[2] Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). This Court has recognized that the *Laffey* Matrix is evidence of

---

[2] The United States Attorney's Office in Washington, D.C. — a frequent litigator of employment discrimination cases from the defense side — issues an updated *Laffey* Matrix each year, reflecting its views of appropriate hourly rates. That Matrix uses the 1981 findings in *Laffey* and updates them based on the Consumer Price Index.

- 8 -

prevailing market rates for litigation. *See* Covington v. District of Columbia, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995); Heller v. D.C., 832 F.Supp.2d 32, 48 (D.D.C. 2011).

Mr. Salb completed law school and passed the Bar Exam in 1994, first becoming licensed in early 1995. He now has 19 years' experience. When this case was filed, he had 11 years' experience. He has practiced employment litigation throughout his career, with the first half of his career devoted exclusively to employment litigation. *See* Salb Afd., Exh. 2, ¶ 8. He served as a member of the Steering Committee of the District of Columbia Bar Labor and Employment Law Section, including service as the co-Chair of the Section. *Id.* at ¶ 6.

The rates applicable to Mr. Salb's work pursuant to the *Laffey* Matrix are as follows:

| 2005-06 | 2006-07 | 2007-08 | 2008-09 | 2009-10 | 2010-11 | 2011-12 | 2012-13 | 2013-14 |
|---------|---------|---------|---------|---------|---------|---------|---------|---------|
| $360 | $375 | $390 | $410 | $410 | $420 | $435 | $445 | $450 |

*See* Laffey Matrix, attached hereto as Exhibit 3.

Dr. Kuntz began practicing law in 2008. *See* Salb Afd., Exh. 2, ¶ 19. The rate at which Dr. Kuntz's time was billed was $245 per hour until September 2013 and $325 per hour thereafter. *See* Salb Afd., Exh. 2, ¶ 28.

The rate on the current *Laffey* Matrix applicable to work by attorneys with from one to three years' experience is $250 per hour. The rate on the current *Laffey* Matrix applicable to work by attorneys with from four to seven years' experience is $295 per hour. Thus, according to the *Laffey* Matrix, Dr. Kuntz should be compensated at the rate of either $250 or $295 per hour, depending on when the work was done.

The Plaintiffs propose to bill Dr. Kuntz's time at the *lower* of her actual rate or the *Laffey* rate. Thus, though *Laffey* would have Dr. Kuntz's time from 2008 through 2011 be billed at

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

$250 per hour, the Plaintiffs propose to bill Dr. Kuntz's time at $245 per hour (her actual rate, which is the lower rate). *Laffey* would bill Dr. Kuntz's time from 2011 to the preset at $250 per hour. The Plaintiffs propose to bill Dr. Kuntz's time at her actual rate of $245 per hour through September 2013 (lower than the *Laffey* rate) and at the *Laffey* rate of $250 per hour thereafter (less than her actual rate of $325 per hour).

Services have also been rendered in this case by other attorneys working at the Plaintiff's counsel's law firm. Those attorneys have had experience ranging from one to twenty years' experience. Nevertheless, the Plaintiffs propose that those attorneys all be compensated at the *Laffey* rate applicable to attorneys with one-to-three years' experience, even when they had more years of experience. The rate on the *Laffey* Matrix for 2013-2014 applicable to work by attorneys with from one to three years' experience is $250 per hour.

The usual billing rate for plaintiffs' employment law work by Lippman, Semsker & Salb is generally a little bit less than common market rates for lawyers in small law firms performing complex litigation. To the extent that this occurs, this is the result of the civil rights and economic justice objectives around which the firm's employment law practice revolves. Nevertheless, Plaintiff's counsel's time should be billed at *Laffey* rates:

> Attorneys who practice privately and for profit but charge "reduced rates reflecting noneconomic goals" are entitled to receive attorneys' fees based on the prevailing market rate. Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1524 (D.C.Cir.1988) (concluding that "Congress did not intend the private but public-spirited rate-cutting attorney to be penalized for his public spiritedness by being paid on a lower scale than either his higher priced fellow barrister from a more established firm or his salaried neighbor at a legal services clinic").

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 10 -

<u>Does I, II, III v. D.C.</u>, 448 F. Supp. 2d 137, 141 (D.D.C. 2006); see also <u>Griffin v. Washington</u>

<u>Convention Ctr.</u>, 172 F.Supp.2d 193, 198 (D.D.C. 2001) (*following Save Our Cumberland*

*Mountains*).


    **C.**    **Because of the Length of this Litigation, Current *Laffey* Rates Should be Used.**
        The Supreme Court has held that:

> compensation received several years after the services were rendered—as it
> frequently is in complex civil rights litigation—is not equivalent to the same
> dollar amount received reasonably promptly as the legal services are performed,
> as would normally be the case with private billings. We agree, therefore, that an
> appropriate adjustment for delay in payment—whether by the application of
> current rather than historic hourly rates or otherwise—is within the contemplation
> of the statute.

<u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 283-84 (1989); *see* <u>Harvey v. Mohammed</u>, 951

F.Supp.2d 47, 55 (D.D.C. 2013) (applying *Jenkins*); <u>McKesson Corp. v. Islamic Republic of Iran</u>,

935 F. Supp. 2d 34, 43 (D.D.C. 2013) (same).

    Furthermore, the Court of Appeals has directed that the " 'lodestar' fee may be increased

to reflect the possibility that the litigation would not be successful and that no fee ultimately

would be obtained." *Copeland*, 641 F.2d at 906.

    In view of the amount of time required by this case, the ferocity of the Defendants'

defense, the Defendants' refusal to consider settlement, and the length of time from start to finish

of the litigation, the principles warranting the use of current (rather than historic) *Laffey* rates and

of increasing the lodestar rate to reflect the possibility of loss in a contingency fee case warrant

payment of fees at current *Laffey* rates.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

Thus, Mr. Salb's time should be compensated at the rate of $450 per hour, Dr. Kuntz's time should be compensated at the rate of either $295 per hour or $250 per hour, and all other attorneys should be compensated at the rate of $250 per hour. These amounts are consistent with the spirit of the fee agreement as well. *See* Blanchard v. Bergeron, 489 U.S. 87, 92-93 (U.S. 1989).

**D.     Analysis of the Factors That Can Affect Fee Amounts.**

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1492 (11th Cir.1994). The product of reasonable time and reasonable rate "is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir.2008).

The resulting lodestar figure may be adjusted upward or downward in light of what are known as the "*Johnson* factors:" (1) the time and labor required for the case; (2) the novelty and difficulty of the questions presented in the case; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (*cited*

- 12 -

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

*in Hensley*, 461 U.S. at 430 n.3); *see also* <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216, 226 (4th Cir. 1978).

The reasonableness of Plaintiffs' request is established through an analysis of the *Johnson* factors, as follows:[3]

### 1.    The Time and Labor Required.

The time and labor required to litigate this matter are detailed in the records attached hereto as Exhibit 4, which demonstrates the time/task records contemporaneously maintained by counsel's office, with a summary by attorney and a summary by task type.  The exhibit shows

---

[3] There are several other factors that can play a role in the amount of fees to be awarded, but Plaintiffs do not believe that those other factors are relevant in this case.  Those other factors are as follows:

**The Novelty and Difficult of the Questions.**  The case involved the application of both established and evolving legal principles under the FLSA and Maryland state law.  Plaintiffs do not believe that this factor either increases or decreases the amount of the fee award.  While Plaintiffs were obligated to research numerous legal issues which arose during the litigation and for trial, and the case was complicated by the multiple entities which employed or controlled the Plaintiffs, the lack of clarity in the law, and the like, those factors are the ordinary factors present in any complex litigation.

**The Level of Skill Required to Perform the Legal Service Properly.**  To be successful, FLSA and state wage law litigation requires specialized skills and current knowledge of legal developments.  For example, representing the Plaintiffs involved numerous legal issues, such as: record-keeping requirements and evidentiary issues that flow therein; who is an independent contractor versus who is an employee; individual liability under both the FLSA and state law; what evidence is probative of unpaid overtime; and the like.  However, Plaintiffs do not contend that this factor either increases or decreases the amount of the fee award because those factors are the ordinary factors present in any complex litigation.

**The Customary Fee.**  The discussion above regarding reasonableness of rates addresses this issue adequately.

**The Time Limitations Imposed by the Client or the Circumstances.**  Plaintiffs do not contend that there were any time limitations in this case that increase the rate at which fees should be paid.

**The Nature and Length of the Professional Relationship with the Client.**  Plaintiffs' counsel represented Plaintiffs from the outset of this case and has not represented them in other matters.  Plaintiffs do not contend that this factor should increase the rate at which fees should be paid.

**Awards in Similar Cases.**  As detailed in the attached affidavit, Plaintiffs' counsel has regularly received attorney's fees at the customary, market rates.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD  20814
Tel. (301) 656-6905
Fax (301) 656-6906

the identity of the time keeper, a description of the work task performed, the date the work was

performed, and the amount of time necessary to perform the work, measured to the one-tenth of

one hour. As detailed herein, the work was reasonably and necessarily performed in the case.

Where possible, tasks are assigned to legal assistants or law clerks to keep the costs down.

### a.    This Fee Petition Excludes the Sorts of Charges That Are Disfavored in Fee Petitions.

Plaintiff's counsel has a regular practice of not recording certain expenditures of time.

For example, if a lawyer spends more time on a task than the task warrants, the excess time will

be removed from the client's invoice when the monthly bills are created.  If one lawyer meets

with another to provide an update, only one of the lawyers' time is typically recorded except in

unusual cases in which both lawyers are actively working during that meeting.  Thus, Plaintiff's

counsel's time records largely avoid many of the sorts of charges that courts disfavor in fee

petitions.

Nevertheless, Plaintiff's counsel has carefully reviewed the time reported on Exhibit 4

to ensure that it does not include charges that are inadequately documented, arguably duplicative,

unduly time-consuming for the task, and the like.  The few time records that were in fact

recorded in the Plaintiffs' time records which violate this approach were excluded from the fee

petition.  This self-editing has reduced the amount of the fee petition by more than ten percent.

Notwithstanding counsel's efforts throughout the proceeding to keep billing records trim,

as well as Plaintiff's diligent efforts to locate such records in the time records during the

production of this fee petition, undoubtedly Plaintiffs' time records still do include time records

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 14 -

for time spent on matters not central to the litigation, or more time spent than a task requires, and so on. Therefore, Plaintiffs propose that this Court make a further ten percent "up front" reduction in the fees to reflect the possibility of such time charges in the fee petition. Doing so will streamline the fee petition process and avoid a line-by-line debate over every time record, since attorney's fees petitions "should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

> **b.    The Length and Time Spent in this Litigation Was a Direct Function of the Defendants' Refusal to Engage in Settlement Discussions.**

Plaintiffs' counsel made many efforts to settle this case. Even before serving the Complaint, Plaintiff's counsel wrote to the Defendants' attorney seeking settlement. *See* Salb letter to Swerdlin, dated November 2, 2006, attached hereto as Exhibit 5. Shortly thereafter, after Mr. Lescht was employed, the Plaintiffs wrote again to the Defendants:

> We write now to reiterate our settlement demand, because it seems plain to us that your client will spend far more defending this case than the current settlement demand. Furthermore, your client will certainly wish to avoid the steep negative consequences that flow as a result of an adverse result in a Service Contract Act matter. Finally, litigation will rapidly increase the Plaintiffs' attorney's fees, so that the cost of settlement will consistently increase.

Salb letter to Lescht, dated December 1, 2006, attached hereto as Exhibit 6.

> The Plaintiffs attempted, again, at the end of December to settle the case:

> We write for the purpose of exploring the possibility of early settlement with you.

> * * *

> we expect that our clients will receive an award of $46,000. The Plaintiffs will also be awarded their attorney's fees, which are currently $6,600, so that the total award will be $52,600. Of course, this number will increase precipitously when litigation commences, as attorney's fees will quickly mount.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

Nevertheless, Ms. Cunningham and Ms. Radtke have authorized me to propose an early resolution of this matter in order to avoid the burdens associated with litigation. They have instructed me that they will accept a settlement amount of $25,000, which is less than half of the amount that they expect to receive if this case is litigated. We expect that this amount reflects substantially less than the amount which your clients will pay in attorney's fees to litigate this case, which makes this settlement of further value to the Defendants.

This is an exceedingly reasonable settlement demand which cannot, given the costs of litigation, remain open indefinitely. We understand that you will need some time to share this offer with your client, but we would appreciate your letting us know your thoughts as soon as possible.

Salb letter to Lescht, dated December 28, 2006, attached hereto as Exhibit 7.

The Defendants declined to engage in settlement talks then, as they consistently did thereafter when counsel attempted to broach the topic. Instead, the Defendants filed a counter-claim for purported breach of a non-compete agreement, frequently complained bitterly about that purported breach, and appeared to be so motivated by anger at the loss of the federal government contract that they litigated with the greatest zeal. <u>Salb Afd.</u>, Exh. 2, ¶ 31.

Courts regularly recognize that "the fact that the Defendants litigated tooth-and-nail at every stage of the case . . . places the number of hours claimed by the Plaintiff in perspective." <u>Catalan v. RBC Mortgage Co.</u>, 2009 WL 2986122 *9 (N.D. Ill. 2009). That dynamic was certainly present in this case.

>    c.    **The Length and Time Spent in this Litigation Was a Direct Function of the Defendants' Refusal to Collaborate with Plaintiffs' Counsel on a Calculation of Damages.**

A central part of this case is the quantum of damages. Obviously, the employer controls the relevant data in a wage and hour case. Rather than work with Plaintiffs' counsel to create a

clear data set, the Defendants offered no information and, instead, embarked on a sustained effort to demonstrate that the time records proved that Ms. Cunningham had engaged in "fraud" and "perjury". *See, e.g.*, Lescht letter to Salb, dated September 9, 2009, attached hereto as Exhibit 8.

During the course of these proceedings, Plaintiffs provided their assessment of damages to the Defendants on multiple occasions. The Defendants never informed the Plaintiffs of any inadequacies, errors, or deficiencies in those calculations. In fact, the Plaintiffs had advised the Defendants that they believed that the Defendants had not produced all time records; it was not until trial that the Defendants clarified that they had in fact done so. Had the Defendants cooperated with the Plaintiffs in the computations of the amounts paid, the scope of the litigation likely would have been reduced. *See* <u>Salb Afd.</u>, Exh. 2, ¶ 35.

Ultimately, though, the Defendants demonstrated consistently that they had no interest whatsoever in settlement of the case. Indeed, the only settlement offers that the Defendants ever made were for the *Plaintiffs* to pay the *Defendants*. *See* <u>Salb Afd.</u>, Exh. 2, ¶ 30. As such, the actual amount of the damages plainly did not play a role in determination of whether the case could settle.

> **d.    It Is Firmly Established That a Modest Amount in Controversy in a Wage and Hour Cases Does Not Diminish the Time Reasonably Required for the Litigation.**

There is no question that the fees incurred in this case are disproportionate to the recovery obtained. That is irrelevant.

> Congress has affirmed its desire to have even small violations of the FLSA litigated, and many of those violations by their very nature are small. Litigation is expensive, and "it is no surprise that the cost to pursue the contested claim will

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

often exceed the amount in controversy." Anderson, 578 F.3d at 545; see SKF USA Inc. v. Bjerkness, 2011 WL 4501395, at *3 (N.D.Ill.2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested). The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered. Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 592 (7th Cir.2000).

Dominguez v. Quigley's Irish Pub, Inc., 897 F. Supp. 2d 674, 686-87 (N.D. Ill. 2012).

2.    **The Preclusion of Employment by the Attorney Due to Acceptance of the Case.**

Plaintiffs' counsel practices at a very small law firm. The Defendants' mode of litigation imposed enormous cost on the Plaintiffs' attorneys' time. The Defendants adamantly refused to ever discuss settlement; quarreled frequently over non-central issues, such as the terms and application of the confidentiality order; consistently delayed producing discovery responses; produced discovery in a completely un-sorted and even unnumbered set, requiring far more time for the review and sorting of discovery than should have been required; and so on. The Defendants' conduct ensured that the case was very time-consuming, causing counsel to decline to accept some potential clients during the course of this litigation.

Plaintiffs' lead counsel is the principal attorney of the Firm, with numerous additional demands on his time, such as supervision of junior attorneys, practice management, legal compliance, and the like. Consequently, Plaintiffs' counsel must use great care in accepting cases to avoid becoming overburdened and therefore unable to litigate appropriately.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 18 -

As such, accepting this case directly limited counsel's ability to accept other work. A reduction in compensation would, therefore, unfairly prejudice Plaintiffs' counsel.

### 3.     Whether the Fee Is Fixed or Contingent.

This case was brought on a contingent basis, with the expectation that fees would be paid pursuant to a fee petition. *See* <u>Salb Afd.</u>, Exh. 2, ¶ 36; *see also* Exh. 1 (fee agreements between Plaintiffs and counsel). It is black-letter law that fee-shifting provisions of the FLSA (and certain other statutes, such as Title VII), are designed to encourage attorneys to prosecute cases which vindicate the purposes of the statutes, even though the cases might be economically unattractive under a contingency fee agreement. *See Hensley*, 461 U.S. at 433, n.7. That the representation of Plaintiffs was undertaken at significant risk of loss for Plaintiffs' counsel militates strongly in favor of the fees requested.

### 4.     The Amount Involved and the Results Obtained.

This factor is among the factors that most warrants consideration in making a determination on this fee petition. Preliminarily, it is important to underscore that the Plaintiffs succeeded in their most important goal: They vindicated their right to receive overtime pay for hours worked over 40 in any one work week.

Nevertheless, the Plaintiffs recognize that the *amount* of the unpaid wages which was recovered in this litigation is relatively modest (both in terms of absolute number of dollars and relative to the potential amount recoverable had, for example, the jury determined that Ms.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

Caschetta were an employer of Ms. Cunningham).  These factors do not warrant a reduction in the fees awarded.  Lee v. Krystal Co., 918 F.Supp.2d 1261, 1273-74 (S.D.Ala. 2013).

### 5.    The Experience, Reputation, and Ability of the Attorneys.

The attorneys' experience is set forth in the attached Affidavit of S. Micah Salb.  Salb Afd., Exh. 2.  Plaintiffs' attorneys are highly skilled and experienced in the field of employment law.  They are well-regarded within the employment law bar and in the community generally.  As such, this factor supports the fees requested.

### 6.    The "Undesirability" of the Case.

Although counsel did not find Plaintiffs' case "undesirable," few attorneys who practice regularly in the field of employment law (including wage payment cases) are willing to take such cases on a straight contingency basis, as Plaintiffs' counsel has done here.  This demonstrates that at a business level, the case is "undesirable" because of the financial risk assumed by Plaintiffs' counsel over the life of the litigation.

Wage payment cases are undesirable by virtue of the limited damages available in such cases.  Wage payment cases usually involve very small sums of money because the nonpayment is often just a small portion of the employee's compensation (e.g., just for the time spent working overtime) and because such employees are often paid relatively small amounts.  In addition, the damages scheme permitted in FLSA and Maryland wage payment cases permits very small amounts of damages.  As such, the damages recovered in these cases are oftentimes very modest.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD  20814
Tel. (301) 656-6905
Fax (301) 656-6906

The lawyer who represents plaintiffs in wage and hour cases knows that his or her fees will be paid, if at all, through the fee-shifting provisions of the applicable law. This implicates a series of factors that sharply diminish the desirability of such cases:

❖ Fee shifting is triggered upon successful completion of the case. As a result, the lawyer must work for a long time without recompense, often including advancing sums necessary for out-of-pocket expenses as well.

❖ The amount of the fee is almost always subject to contention and reduction by the court, diminishing the value of those fees worked.

❖ Even when paid, the amount paid is a reflection of reasonable market rates applied to the hours worked. As a result, the lawyer will not receive the sort of profits that can offset the risks associated with such cases.

❖ Defendants frequently agree to settle such sums with little or no allocation toward attorney's fees, potentially creating a conflict between lawyer and client which, *ipso facto*, requires that the lawyer sacrifice his or her fee to ensure that his or her interests are not afforded greater weight than the client's.

*See* Salb Afd., Exh. 2, ¶ 36.

For these and other reasons, wage and hour cases are undesirable cases and warrant payment without reduction. Therefore, this Court should award the Plaintiffs $240,000 in attorney's fees. *See* Fees Summary, attached hereto as Exhibit 10.

**E.    Plaintiffs' Are Entitled to Payment of Their Reasonable Expenses.**

Plaintiffs submit a list of all expenses reasonably incurred in this litigation and claimed here for reimbursement. *See* List of Expenses, attached hereto as Exhibit 9. All expenses sought are the type of costs that would regularly be billed to a fee paying client. *Salb Afd.*, Exh. 2, ¶ 47.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 21 -

## IV.  Conclusion.

For the foregoing reasons, Plaintiffs respectfully request that the court award Plaintiffs

$240,000 in attorney's fees and $8,179.49 in costs.


Respectfully submitted,


_____/s/ S. Micah Salb_____

S. Micah Salb, Esq.
LIPPMAN, SEMSKER & SALB, LLC
7979 Old Georgetown Road
Suite 1100
Bethesda, Maryland 20814
Phone: (301) 656-6905

*Counsel for Plaintiffs*

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906