**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATHY RADTKE, ET AL. | |
| Plaintiffs, | |
| v. | Civil Case No.: 06cv02031 (EGS) |
| MARIA CASCHETTA, ET AL. | |
| Defendants | |

**AFFIDAVIT OF S. MICAH SALB, ESQ.**

1.  I am the principal attorney at the law firm of Lippman, Semsker & Salb, LLC, located in Bethesda, Maryland.

2.  Lippman, Semsker & Salb provides a variety of services aimed at individuals and small businesses, with a special focus on employment law. Lippman, Semsker & Salb was formed in 1972 to deliver labor law services. With the evolution in employment rights from the labor arena to individual employment rights in the 1980s, the firm's work gradually shifted to focus on employment discrimination claims. Over the past decade, Lippman, Semsker & Salb has represented more than five hundred clients in discrimination, wage & hour, harassment, and similar employment claims.

**My Education, Bar Admissions, and Ratings.**

3.  I was an undergraduate student, studying political science and women's studies, at the University of Connecticut in Storrs. After receiving a Bachelor's degree in 1991, I attended

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

the Emory University School of Law, receiving a J.D. degree in 1994. While at Emory, I was an Articles Editor for the *Bankruptcy Developments Journal*.

4.  I have been admitted to the bars of the State of Maryland (1995) and the District of Columbia (1996) and I have practiced *pro hac vice* in Virginia and Illinois. I am also admitted to practice before the United States Supreme Court as well as the United States Courts of Appeals for the District of Columbia, Federal, and Fourth Circuits.

5.  I am a member of the bar associations of the District of Columbia and the state of Maryland.

6.  In 2005, I was elected to the Steering Committee of the Labor & Employment Section of the District of Columbia Bar; I was reelected in 2008. I served as co-Chair of that Committee from 2008 through 2010.

7.  I am AV-rated by Martingale-Hubbell and I have a "Superb" rating from Avvo.com. Both are the highest ratings issued by those entities.

**My Experience.**

8.  I have practiced employment litigation throughout my career, with the first half of my career devoted exclusively to employment litigation.

9.  I have served as lead counsel in dozens of employment law cases against private and public employers and major corporations in State and Federal courts in Maryland, Virginia, and the District of Columbia as well as before the EEOC and the Merit Systems Protection Board I have also represented and advised numerous businesses in employment-related matters. My experience includes all aspects of the litigation process, including drafting pleadings, discovery,

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

motions practice, and trials.  Examples of complex employment cases that I have served as lead counsel include:

    a.    <u>Allworth v. Howard University</u>, in which a university professor alleged that the University had breached the covenant of good faith and fair dealing by employing her to do research but failing to provide her with a laboratory in which to do research;

    b.    <u>Marable et al. v. District Hospital Partners</u>, a putative class action which required extensive expert and statistical analysis;

    c.    <u>Halpern v. Washington Center for Internships</u>, in which the plaintiff was fired after he complained that it was improper to deny an applicant from a conservative Christian college the opportunity to intern for Hon. Barney Frank because of Mr. Frank's sexual orientation;

    d.    <u>Hicks et al. v. Georgetown University</u>, in which the older female plaintiffs alleged that attractive young men were afforded training and work experience that were denied to them, making the men better qualified in a RIF analysis;

    e.    <u>Thompson v. District of Columbia</u>, a due process case involving the plaintiff's allegations that the District of Columbia lottery board engaged in retaliatory conduct by engineering his removal because he "blew the whistle" on improper contracting practices;

    f.    <u>Coclough v. Results, The Gym</u>, in which a trainer alleged sexual harassment;

    g.    <u>Smith v. Café Asia</u>, a sexual harassment case which involved numerous difficult evidentiary issues.

I have handled a great many additional such cases.

10.    I have served as lead or primary counsel in numerous employment law cases in which there were published decisions.

11.    Cases in the federal appellate courts in which I have served as lead counsel include: <u>Brooks and Taylor, on Behalf of Themselves and All Others Similarly Situated v. District Hospital Partners, L.P., doing business as George Washington University Hospital</u>, 606

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

F.3d 800 (D.C.Cir. 2010) (addressing complicated issues related to the "single filing rule" and finality for purposes of appeals; cited in that regard by Wright & Miller, Fed. Prac. & Proc. § 1522.2, *Modifying Scheduling Orders*, and § 3950.5, *Civil Cases-Premature Notice*); Thompson v. District of Columbia, 530 F.3d 914 (D.C. Cir. 2008) (*cited in* Sarah L. Fabian, Garcetti v. Ceballos: Whether an Employee Speaks as a Citizen or as a Public Employee — Who Decides?, 43 UC Davis L. Rev. 1675; Thomas Keenan, Circuit Court Interpretations of Garcetti v. Ceballos and the Development of Public Employee Speech, 87 Notre Dame L. Rev. 841); Steele v. Schafer, 535 F.3d 689 (D.C. Cir. 2008) (a successful appeal cited in more than a dozen law review and other secondary sources, as well as more than 100 cases); Aleman v. Chugach Support Services, Inc., 485 F.3d 206 (4th Cir. 2007) (primary role in amicus brief).

12.   Cases in the federal district courts in which I have served as lead counsel include: Vincent v. Geithner, --- F.Supp.2d ----2012 WL 3887199 (D.D.C. 2012); Smith v. Cafe Asia, 724 F.Supp.2d 125 (D.D.C. 2010); Smith v. Cafe Asia, 256 F.R.D. 247 (D.D.C. 2009); Smith v. Cafe Asia, 598 F.Supp.2d 45 (D.D.C. 2009); Smith v. Cafe Asia, 246 F.R.D. 19 (D.D.C. 2007) (Hon. John M. Facciola); Dickerson et al. v. SecTek, Inc., 238 F.Supp.2d 66 (D.D.C. 2002) (cited in Wright & Miller, Fed. Prac. & Proc., § 1183, *Pleadings Permitted by Rule 7-in General*; the Department of Justice Manual; Case Law Developments, 35 Mental & Physical Disability L. Rep. 823, 881; and "Sex in the Sexy Workplace", 9 NW J. L. & Soc. Pol'y 88, 121); Sotabinda v. Hotel Lombardy, 173 F.R.D. 3 (D.D.C. 1997); Van Allen v. Bell Atlantic-Washington, D.C., Inc., 921 F.Supp. 830 (D.D.C. 1996).

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

13.     Cases in the state courts in which I have served as lead counsel include <u>Lockhart v. Cade</u>, 728 A.2d 65 ( D.C. 1999), and <u>Allworth v. Howard University</u>, 890 A.2d 194 2006 (2006) (quoted in six law reviews).

14.     Cases in administrative agencies in which I have served as lead counsel include <u>Law v. US Postal Service</u>, 77 M.S.P.R. 30 (MSPB 1997).

**Dr. Mary Kuntz's Background.**

15.     Mary Kuntz was an undergraduate student at Washington University in St. Louis, studying Classical Languages and Religion and graduating *magna cum laude*, Phi Beta Kappa. She attended Yale University in Classical Languages and Literatures, earning an M.A., an M.Phil., and, in 1985, a Ph.D.

16.     Dr. Kuntz was a professor of Classics for twenty years, at the University of Iowa, the University of Oregon, and then Auburn University. At Auburn she served as special assistant to the Provost and Director of Women's Studies.

17.     In 2005, Dr. Kuntz matriculated at the George Washington University law school, where she completed her J.D. in 2008.

18.     During law school, Dr. Kuntz worked as a Senior Research Fellow at the Institute for Women's Policy Research. While employed there, she worked on a Ford Foundation-funded research project into the effectiveness of consent decrees used to resolve Title VII cases in changing workplace conditions.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

19. Dr. Kuntz was admitted to the Bar of the Commonwealth of Virginia in 2008, of the state of Maryland in 2010, and of the District of Columbia in 2014. Throughout her career as a lawyer, Dr. Kuntz has focused on employment discrimination and wage and hour law.

20. Dr. Kuntz has represented more than 100 individuals, non-profit organizations, and companies in employment-related cases. In the majority of those matters, she has served as the lead or primary lawyer. Dr. Kuntz was lead counsel in a D.C. Office of Human Rights age discrimination trial and in an administrative hearing in Maryland. She has served as second-chair at numerous trials.

**Billing Rates.**

21. I have set my hourly rate and the rates of employees in my office based generally on the "*Laffey* Matrix." The *Laffey* Matrix for establishing attorney fees was initially set forth by the EEOC in the late 1980s. Hatfield v. Garrett, Appeal No. 01892909 (EEOC 1989). It has been consulted by many courts and administrative forums as well as parties to litigation to determine the appropriate rate of compensation for attorneys in employment case. *See, e.g.*, Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc).

22. In accordance with the *Laffey* Matrix, the market rate for an attorney practicing employment law for at least eleven and as many as nineteen years is $450 per hour. *See* Laffey Matrix, attached to the Petition for Attorney's Fees and Costs as Exhibit 3. During the entire time that I have worked on this case, I have fallen within that range of years of experience.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

23.     My billing rate for employment matters has been $400 per hour from 2011 through the present. From 2008 through 2011, my billing rate was $375 per hour. These rates are close approximations to or slightly below *Laffey* rates.

24.     In setting our rates, we have aimed to set rates that we believe to be fair and a reflection of market rates. We have determined market rates by talking with clients and colleagues about their experience paying lawyers at small law firms. We have long supplemented our understanding of market rates by reference to the *Laffy* Matrix.

25.     In January 2011, the *Laffey* rate for a lawyer with 11-19 years of experience was $420. I chose to bill my time at $400 rather than $420 not only because I believed it to be a fair and market rate, but also because as a round number, it was easier for clients to understand and calculate.

26.     I have not increased my rate since 2011 because we generally seek to reset our rates only ever several years in order to provide our clients with greater predictability. However, when we reset our rates, we do so consistent with the *Laffey* Matrix.

27.     Dr. Kuntz began practicing law in 2008. When she began practicing law, we billed her time at the rate of $225 per hour. We set that rate because we believed it to be appropriate to the market (particularly given her sophistication in employment and gender issues). Our belief as to the market rate was confirmed by the fact that $225 was the *Laffey* rate applicable at that time to someone with up to three years' experience.

28.     From October 2011 through September 2013, we charged Dr. Kuntz's time at $245 per hour. The *Laffey* rate applicable then was $240 per hour.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

29. In September 2013, we began charging Dr. Kuntz's time at $325 per hour. The Laffey rate then applicable for Dr. Kuntz was $295 per hour, but we determined that her experience, background in academia, and performance in the field of employment law (including as it relates to academics) warranted a higher rate and we wished to avoid having to increase her rate again for several more years.

**Factors that Affect Billings.**

30. At no time at the outset of this case, during either settlement conference, or in advance or during trial did the Defendants offer to settle this matter (generally refusing even to engage in any settlement discussions). Plaintiffs made innumerable requests to settle this case, at the outset, throughout discovery, in advance of trial, and during the trial. The Defendants' response was invariably either a flat "no" or to make a demand that the Plaintiffs make payment to the Defendants to settle! In fact, the only settlement offers that the Defendants ever made were for the *Plaintiffs* to pay the *Defendants*.

31. Not only did the Defendants refuse to engage in settlement talks throughout, they litigated with ferocity. They filed a counter-claim for purported breach of a non-compete agreement (dropping that specious claim only in advance of trial) and used that claim as a cudgel against the Plaintiffs. They frequently complained bitterly about that purported breach. They blamed the Plaintiffs for their loss of a valuable federal government contract. All of this led the Defendants to litigate this case with the greatest zeal. They threatened Rule 11 sanctions on at least a half-dozen occasions.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

32. The Defendants quarreled frequently over non-central issues, such as the terms and application of the confidentiality order; consistently delayed producing discovery responses; produced discovery in a completely un-sorted and even unnumbered set, requiring far more time for the review and sorting of discovery than should have been required; and so on. The Defendants' conduct ensured that the case was very time-consuming, causing counsel to decline to accept some potential clients during the course of this litigation.

33. I am the principal attorney of Lippman, Semsker & Salb, with numerous additional demands on my time such as supervision of junior attorneys, practice management, legal compliance, and the like. Consequently, we must use great care in accepting cases to avoid becoming overburdened and therefore unable to litigate appropriately. As such, accepting this case directly limited our ability to accept other work. In fact, I turned away two clients in the early winter of 2013 because of the upcoming trial in this case, and I can recall declining multiple client inquiries during busy periods of discovery in this case because of the burdens of this case.

34. One of the claims in this case is that Maria Caschetta was an "employer" as that term is defined in the applicable laws. Exploration of the facts relevant to that claim, and time spent presenting relevant evidence at summary judgment and trial, did not require any additional work or expense of any meaningful amount. There is no way to separate out time spent on that claim from the time spent on the successful claims, since the evidence in that regard was relevant to the successful claims and would have been obtained for that purpose even absent the claim against Ms. Caschetta.

35. During the course of this case, I provided our calculation of the Plaintiffs' damages to the Defendants on multiple occasions. I repeatedly asked the Defendants to advise me of errors

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

in our calculation. They declined to respond to my requests. In fact, I advised the Defendants that we believed that they had not produced all of the Plaintiffs' time records to us — it was not until trial that the Defendants clarified that they had in fact done so. Had the Defendants cooperated with the Plaintiffs in the computations of the amounts paid, the scope of the litigation likely would have been reduced.

36.     In taking this case, I agreed to represent the Plaintiffs on a contingency fee basis. Though the retainer agreement describes the fee to be paid as a contingent fee, I was well aware that the reality in wage and hour cases is that the amount of the recovery is invariably quite modest and inadequate to compensate a firm for the work necessary to do the litigation. Therefore, as is generally true when representing plaintiffs in wage and hour cases, I knew that my fees would be paid, if at all, through the fee-shifting provisions of the applicable law. This implicates a series of factors that sharply diminish the desirability of wage and hour cases in my estimation:

- ❖ Fee shifting is triggered upon successful completion of the case. As a result, I knew that I would have to work for a long time without recompense, often including advancing sums necessary for out-of-pocket expenses as well.

- ❖ The amount of the fee is almost always subject to contention and reduction by the court, diminishing the value of those fees worked.

- ❖ Even when paid, the amount paid is a reflection of reasonable market rates applied to the hours worked and often does not include an increase to reflect the risk of a contingent fee. As a result, I knew that I would be unlikely to receive the sort of profits that can offset the risks associated with such cases.

- ❖ Defendants frequently agree to settle such sums with little or no allocation toward attorney's fees, potentially creating a conflict between lawyer and client which, *ipso facto*, requires that the lawyer sacrifice his or her fee to ensure that his or her interests are not afforded greater weight than the client's.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

**The Time Spent on this Case.**

37. Attached to the Petition for Attorneys' Fees and Costs as Exhibit 4 is a detailed breakdown of the billable hours incurred in this case. This is an accurate statement of the time that we spent that we made on this case.

38. The list of billable hours is based upon the contemporaneous time, task, and expense records maintained by Plaintiffs' counsel's firm, and have been carefully reviewed.

39. Our list of billable time shows that we spent more than 1,060 hours on this case.

40. Of the 1,060 total hours shown on our list of billable time, we have eliminated about 130 hours from our fee petition of time that we believe should not be billed because it reflects excessive time spent on a task and the like. We believe that the 937.7 hours that remain were properly spent and payable in this litigation.

41. I have a regular practice of not recording certain expenditures of time. For example, if a lawyer spends more time on a task than the task warrants, the excess time will be removed from the client's invoice when the monthly bills are created. If one lawyer meets with another to provide an update, only one of the lawyers' time is typically recorded except in unusual cases in which both lawyers are actively working during that meeting.

42. I have carefully reviewed the time reported on Exhibit 4 of the <u>Petition</u> to ensure that it <u>does not include</u> charges that are inadequately documented, arguably duplicative, unduly time-consuming for the task, and the like. The few time records that were in fact recorded in the Plaintiffs' time records which violate this approach were excluded from the fee petition.

43. In addition, this list of billable time does not include what we compute to be more than 200 hours that we did not include at all on our list of billable time because those hours

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

reflected time which we believe should not be billed to clients. For example, we generally avoid including time spent on intra-office discussions, the time of a secondary participant in a meeting, clearly excessive time spent on various tasks, and time spent on "dead-end" aspects of a case on a client's invoice.

44. Notwithstanding our efforts throughout the proceeding to keep billing records trim, as well as our diligent efforts to locate time records during the production of this fee petition which we do not believe should be billed, we believe that it is likely that our list of billable time still includes time records for time spent on matters not central to the litigation, or more time spent than a task requires, and so on. Therefore, Plaintiffs propose that this Court make a further "up front" reduction in the fees in the amount of ten percent to reflect the possibility of such time charges in the fee petition. Doing so will streamline the fee petition process and avoid a line-by-line debate over every time record, since attorney's fees petitions "should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

45. If we had sought recompense for all time spent on this case, our fee potion would seek more than $325,000.

46. Instead, we seek $240,000, or less than 75% of the total time spent on the case, in attorney's fees. See <u>Fees Summary</u>, attached to Petition for Attorneys' Fees as Exhibit 10.

47. Attached to the Petition for Attorneys' Fees and Costs as Exhibit 9 is a detailed breakdown of the expenses incurred in this case. This is an accurate statement of the expenses that we incurred in this case. The list of expenses is based upon the contemporaneous time, task, and expense records maintained by Plaintiffs' counsel's firm, and have been carefully reviewed

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

for accuracy. These expenses are all of the type that would regularly be billed to a fee-paying client. We seek recompense for these expenses. The cost of those expenses is $8,179.49.

48.    Attached to the Petition for Attorneys' Fees and Costs as Exhibit 1 is a true and correct copy of the retainer agreements that we signed with our clients.

49.    On the basis of my personal experience, the total cost of legal services and expenses was reasonable and necessary for the nature of the legal services provided to the Plaintiffs and the time necessary to handle this case.

I have read this Affidavit and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal information, knowledge, and belief.

March 5, 2014

_____
S. Micah Salb, Esq.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906