UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KATHY RADTKE,** *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
|           v. | )    Civil Action No. 06-2031 (JMF) |
| | ) |
| **MARIA CASCHETTA,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

**MEMORANDUM OPINION**

This matter is before the Court for all purposes. Currently pending and ready for resolution is <u>Plaintiffs' Motion and Memorandum in Support Thereof for Attorney's Fees and Costs</u> [#167]. For the reasons stated below, the motion will be granted in part and denied in part.

### I.     INTRODUCTION

Plaintiffs, Kathy Radtke and Carmen Cunningham, were medical records coders who brought suit for unpaid overtime pay. <u>See</u> Amended Complaint [#50] at 5-6. Radtke worked for defendant Advanta Consulting, LLC as a contractor at both the Pentagon and Kaiser Permanente, and Cunningham worked for defendant Lifecare Management Partners as a contractor at Walter Reed Medical Center (she was later employed by Advanta as an independent contractor at Kaiser Permanente). <u>Id.</u> Plaintiffs brought suit under 1) the Maryland Wage and Hour Law, Maryland Labor and Employment Article § 3-403, *et seq.*; 2) the Maryland Wage Payment and Collection Law, Maryland Labor and Employment Article § 3-507.2; 3) the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201,[1] *et seq.*; and 4) the common law—for breach of contract. [#50] at 6-10. Although defendants conceded that they never paid Radtke and Cunningham any overtime

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

pay, they maintained that plaintiffs were exempt from the requirement under both the administrative and professional exemptions, as defined in 29 C.F.R. § 541.200 and 29 C.F.R. § 541.300, respectively.[2]  See Defendants' Pretrial Statement [#112] at 2.

The Court held a bifurcated jury trial.  At the conclusion of the first phase of the trial, which addressed the applicability of the administrative and professional exemptions, the jury found that plaintiffs were not exempt from the above requirements.  See Verdict Form for Plaintiff Kathy Radtke [#143]; Verdict Form for Plaintiff Carmen Cunningham [#144].  As a result of the verdict, defendants were liable to plaintiffs for unpaid overtime.  At the conclusion of the second phase of the trial, the jury entered a verdict in favor of defendants on ten of the eleven issues.  See Verdict Form for Plaintiff Kathy Radtke [#153]; Verdict Form for Plaintiff Carmen Cunningham [#155].  The jury found that the defendants did not act "willfully" in violating the FLSA, and the dispute between the parties was not "not bona fide."[3]  See [#153]; [#155].  The Court thereafter entered judgment in the amount of $5,114.62 for Radtke and $729.67 for Cunningham, plus prejudgment interest.  See Judgment [#163]; Prejudgment Interest Order [#162].  The Court declined to award liquidated damages, finding that defendants acted reasonably and in good faith by not paying the plaintiffs overtime wages.[4]  See Omnibus Post-

---

[2] These definitions are also incorporated into the relevant Maryland exceptions.  See Code of Maryland Regulations 09.12.41.01 ("'Administrative capacity' has the meaning stated in 29 CFR §541.200 et seq.") and 09.12.41.17 ("'Professional capacity' has the meaning stated in 29 CFR §541.300 et seq.").

[3] The double negative in the jury's finding is an unfortunate result of the construction of the relevant Maryland statute.  See Md. Lab & Emp. Code Ann. § 3-507.2(b) ("If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.").  Therefore, the Court instructed the jury that "[a] finding of no 'bona fide' dispute is essentially a finding that the defendants acted in bad faith."  See Ocean City, Md., Chamber of Commerce, Inc. v. Barufaldi, 75 A.3d 952, 961 (Md. 2013).

[4] The Court is careful to note that under the FLSA, the "willfulness" and "good faith" inquiries are separate and distinct.  The willfulness determination, upon which the statute of limitations turns, is a question for the jury, with the burden of proof on the plaintiff.  See 29 U.S.C. § 255(a).  The good faith determination, upon which liquidated damages turns, is a question for the Court, with the burden on the defendant.  See 29 U.S.C. §260.  Therefore, it is possible for a defendant under the FLSA to be found to not have acted willfully by a jury, yet still have liquidated damages assessed against it by a court.  See Rodriguez v. Farm Stores Grocery, 518 F.3d 1259, 1274 (11th Cir.

Trial Order [#160] at 3-5, 8-9.  Finally, the Court denied defendants' post-judgment motions for judgment notwithstanding the verdict and for a new trial.  See Memorandum Opinion and Order [#182].  Plaintiffs now seek attorney's fees.

## II.     DISCUSSION

A. Legal Standard

In an action under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (2000).   The award of counsel fees to a prevailing employee's attorney in FLSA cases is therefore mandatory and unconditional.  See Bradshaw v. Jefferson Grill, No. 11-CIV-1558, 2012 WL 2803401, at *1 (D.D.C. July 10, 2012); Falica v. Advance Tenant Servs., 384 F. Supp. 2d 75, 77 (D.D.C. 2005).  Once a plaintiff crosses the statutory threshold of establishing that he is a prevailing party, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[5]  In the typical case, the district court determines the reasonableness of a fee by analyzing "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433; Laffey v. Nw. Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985).  The court then determines whether the number of hours expended on the litigation—and for which plaintiffs seek fees—is reasonable.  See Falica, 384 F. Supp. 2d at 79.  This figure is commonly referred to as the "lodestar." See e.g., Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980).

---

2008).  Nevertheless, the Court in this case was persuaded that that the defendants had met their burden for the same reasons that the jury was persuaded that the plaintiffs had not met theirs.  See [#160].

[5] While Hensley concerned attorney's fees under 42 U.S.C. § 1988, the Court noted that the standards set forth in the opinion were generally applicable in all cases brought under statutes where Congress has authorized a fee-shifting provision for the prevailing party.  Hensley, 461 U.S. at 433.

While the lodestar operates as the presumptive starting point for the trial court's analysis, other considerations may require the trial court to adjust the fee upward or downward. See Hensley, 461 U.S. at 434-35. One important consideration is the "results obtained" by the plaintiff. Id.  In some cases, while the plaintiff is technically a prevailing party for purposes of the fee-shifting statute, the court must reduce the lodestar where the hours the attorney expended are unreasonable in light of the "limited success" of the litigation.  See id.; Goos v. Nat'l Ass'n of Realtors, 997 F.2d 1565, 1572 (D.C. Cir. 1993); Cole v. Wodziak, 169 F.3d 486, 487 (7th Cir. 1999).  In assessing the results obtained in a lawsuit with limited success, Supreme Court precedent instructs the trial court to answer two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award?" Hensley, 461 U.S. at 434.

  B.  Application

Defendants do not contest that plaintiffs are prevailing parties. Thus, in determining a reasonable attorney's fee, the Court must determine: 1) whether the hourly rate claimed by plaintiffs is reasonable; 2) whether the hours expended on the litigation were reasonable; 3) whether the result of the litigation requires further adjustment of the lodestar; and 4) whether plaintiffs should be reimbursed for additional costs.

    1.  The Appropriate Hourly Rate

        a.  The Appropriate Rate Generally

For complex federal litigation, the Laffey matrix is used to determine prevailing market rates for attorney compensation.  See Laffey, 572 F.Supp. at 374.  The parties agree that the Laffey rates should be used, but disagree over which year's rates should apply.  Each year, the

Civil Division of the United States Attorney's Office for the District of Columbia updates rates by "adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year." See [#167-3] at 1.  The matrix is further adjusted to "ensure that the relationship between the highest rate and lower rates remains reasonably constant." Id.  Changes to the cost of living are "measured by the Consumer Price Index for All Urban Consumers," based on data released by the Department of Labor. Id.

Litigation in this matter began in 2006.  See Complaint [#1].  Plaintiffs seek to use the rates from 2014 for all earlier years under the theory that they are actually losing the money they would have been able to generate through interest, had they had their fees paid as they litigated. See [#167] at 11-12.  The District of Columbia Circuit has held that in cases where "compensation for delay is necessary to provide a reasonable fee, it may be made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" West v. Potter, 717 F.3d 1030, 1034 (D.C. Cir. 2013) (citing Perdue v. Kenney A. ex rel Winn, 559 U.S. 542, 556 (2010)).  The reason for such an enhancement is that "[c]ompensation received years after services are rendered is less valuable than the same dollar amount received promptly,"[6] simply because the eligible party has necessarily lost out on potential returns in interest and other uses of the funds in the interim.

In light of this economic reality, and the fact that this case is now eight years old, the Court will award fees at the 2014 Laffey hourly rate — there is no reason to think that awarding 2014 rates would generate an impermissible "windfall."  See Murray v. Weinberger, 741 F.2d 1423, 1433 (D.C. Cir. 1984).

    b.    The Appropriate Rate for Individual Attorneys in this Case

---

[6] West, 717 F.3d at 1031 (citing Copeland v. Marshall, 641 F.2d 880, 893 (D.C. Cir. 1980)).

Plaintiffs were represented by 1) S. Micah Salb, 2) Dr. Mary Kuntz, 3) Ms. Wu, 4) Ms. D'Souza, 5) Mr. Hellams, 6) Ms. Kay, 7) Ms. Tuffet, and 8) Mr. Murray. The following chart contains a summary of their qualifications, as detailed in the Affidavit of S. Micah Salb, Esq. [#167-2] and Plaintiffs' Response to Court's Second Order to Supplement the Fee Petition [#189].

|   | Name | Billing Practices | Skill, experience, reputation | Dates/States Admitted for Practice |
|---|---|---|---|---|
| 1. | Salb | Billed at $375 per hour from 2008-11 and $400 per hour from 2011 to the present. See [#167-2] at 6-7. | Specializing in employment law throughout his career. [#167-2] at 2. | 1995 – MD<br>1996 – DC<br>[#167-2] at 2. |
| 2. | Kuntz | Billed at $225 per hour from 2008-11; $245 per hour from 2011-13; and $325 from 2013 to the present. See [#167-2] at 7-8. | Practicing law since 2008 and focusing on employment discrimination and wage and hour law. [#167-2] at 6. | 2008 – VA<br>2010 – MD<br>2014 – DC<br>[#167-2] at 6. |
| 3. | Wu | Billed $180 per hour in 2006. See [#189] at 2; [#167-3]. | Practicing employment law since 2004. See [#189] at 2. | 2004 – MD<br>2007 – DC<br>See [#189] at 2. |
| 4. | D'Souza | Billed between $180-$225 per hour in 2007-08. See [#189] at 3-4; [#167-3]. | Practicing employment law since before 2007. See [#189] at 3. | 1996 – MD<br>1997 – DC<br>See [#189] at 3. |
| 5. | Hellams | Billed between $185-$225 per hour in 2009-10. See [#189] at 4; [#167-3]. | Practicing primarily in the areas of estate planning and general litigation. See [#189] at 3. | 2009 – SC<br>2010 – DC<br>2011 – MD<br>See [#189] at 3. |
| 6. | Kay | Billed between $145-$185 per hour in 2014. See [#189] at 5; [#167-3]. | Practicing employment law for less than two years. See [#189] at 5. | 2013 – MD<br>See [#189] at 5. |
| 7. | Tuffet | Billed $145 per hour in 2013-14. See [#189] at 5-6; [#167-3]. | Practicing employment law for less than two years. See [#189] at 5-6. | 2013 – NY<br>See [#189] at 5-6. |
| 8. | Murray | Billed between $185-$225 per hour in 2008-09. See | Practicing employment law for | 2007 – MD<br>See [#189] at 6. |

6

|  |  | [#189] at 6; [#167-3]. | at least 14 months. See [#189] at 6. |  |

  In accordance with the above analysis, attorneys Salb and Kuntz will be reimbursed at the 2014 <u>Laffey</u> rates. The remaining attorneys and the paralegal referenced in plaintiffs' spreadsheet will be reimbursed at either the <u>Laffey</u> rate for professionals with their level of experience or at the rate sought, if it is lower.

  2. <u>The Hours Expended on the Litigation</u>

  When counsel makes a petition for attorney's fees, it must exercise proper "billing judgment." <u>See</u> <u>Hensley</u>, 461 U.S. at 434. The trial court need not award attorney's fees for hours that are "excessive, redundant, or otherwise unnecessary." <u>Id.</u> Just as private attorneys who receive fees directly from their clients have an ethical obligation to exclude unnecessary hours from their bill to their clients, attorneys for prevailing parties under fee-shifting statutes must exercise the same judgment in their submission to the court. <u>See id</u>; <u>Oklahoma Aerotronics, Inc. v. U.S.</u>, 943 F.2d 1344, 1347 (D.C. Cir. 1991).

  Here, plaintiffs calculate that the total value of all time spent on this matter exceeds $325,000, but ask to be compensated for just under $256,000, or roughly three-quarters of the total time spent on the case. <u>See</u> [#167], at 1; <u>Plaintiffs' Response to Court's Order To Supplement The Fee Petition</u> [#181-1], at 1. Plaintiffs have indicated their efforts to exclude the sorts of charges that are disfavored in fee petitions: "Plaintiff's counsel has carefully reviewed the time reported . . . to ensure that it *does not include* charges that are inadequately documented, arguably duplicative, unduly time-consuming for the task, and the like." [#167], at 14 (emphasis in original). Plaintiffs argue that their "self-editing" has reduced the fee petition by 10% and propose that this Court take an additional 10% reduction to reflect the possibility of further unnecessary charges in the fee petition. <u>Id.</u> Defendants do not make a specific attack on the

7

hours claimed, and therefore, the Court will accept the plaintiffs' proposed figure of $255,898.80 as a presumptive starting place for the fee award analysis.

    3.   <u>Adjustments to the Lodestar Based on the Result of the Litigation</u>

Although both the hourly rate and number of hours claimed appear reasonable, this Court finds this litigation to be a prime example of a case where the limited success of the litigation counsels towards a reduction in the overall fee award. Plaintiffs' attorneys request approximately $255,898.80 in attorneys' fees despite Ms. Radtke and Ms. Cunningham recovering a mere $5,114.62 and $729.67, respectively.

In determining whether a fee deduction based on the litigation's results is appropriate, the Court must respond to the two inquiries in <u>Hensley</u>. First, did the plaintiffs fail to prevail on claims that were unrelated to the claims on which they succeeded? See <u>Hensley</u>, 461 U.S. at 434. Claims are "unrelated" for <u>Hensley</u> purposes where the unsuccessful claims are "distinctly different in all respects, *both legal and factual,* from the successful claims." <u>Pigford v. Vilsack</u>, No. 97-CIV-1978, 2009 WL 1327462, at *1, *3 (D.D.C. May 12, 2009) (emphasis in original). In this case, while plaintiffs failed to succeed on their liquidated damages claim, plaintiffs did receive compensatory damages and these claims are both legally and factually related. Where claims are interrelated, "a court is to skip the first <u>Hensley</u> inquiry and move to its second." <u>George Hyman Const. Co. v. Brooks</u>, 963 F.2d 1532, 1537 (D.C. Cir. 1992).

The second <u>Hensley</u> inquiry asks: "did the plaintiff achievfe a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" <u>Hensley</u>, 461 U.S. at 434. Where the plaintiff has achieved a "limited success" in the litigation, the trial court is within its authority to reduce the lodestar. See <u>id.</u> ("A reduced fee award is appropriate if the

relief, however significant, is limited in comparison to the scope of the litigation as a whole."). As circuit precedent has noted:

> "Under the second *Hensley* inquiry, the factfinder must then consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel. When an injured party obtains excellent results, his attorney should recover a fully compensatory fee. When a party achieves only partial or limited success, however, then compensation for all of the hours reasonably expended on the litigation as a whole may be an excessive amount."

Brooks, 963 F.2d at 1535.

While the jury awarded the plaintiffs compensatory damages for unpaid overtime in the amount of $5,114.62 for Radtke and $729.67 for Cunningham, plaintiffs' counsel's first damages demand sought liquidated damages in the amount of $26,096.24 for Radtke and $39,924.92 for Cunningham, in addition to $8,698.75 in compensatory damages for Radtke and $13,308.31 in compensatory damages for Cunningham. See Plaintiffs' Pretrial Statement [#117]. Put simply, the compensatory damages recovered are meager in comparison to the potential liquidated damages award plaintiffs sought. It is equally true that plaintiffs recovered in compensatory damages much less than they sought. Indeed, Radtke recovered a mere 15%, and Cunningham less than 2%, of the damages originally demanded, and after eight years of litigation, Cunningham secured an award of less than $1,000. While plaintiffs are undoubtedly prevailing parties, these figures demonstrate the limited success of the litigation when taken as a whole.

Where the trial court takes a limited success deduction, the court must "provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee

9

awarded and the results obtained." Hensley, 461 U.S. at 437. The stark comparison between what was demanded and what was gained, just made, meets that requirement.

There are additional considerations that compel a reduction that flow from application of the factors that the courts have always considered in assessing the reasonableness of a fee. See Hensley, 461 U.S. at 429-430 citing the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).[7]

First, the legal and factual issues presented by this case were not novel but a straight forward application of the FLSA and a cognate state statute to contested facts. While I did not rule on the earlier summary judgment motions, they were resolved with a traditional holding that there were genuine issues of fact. There was no significant, novel issue that the Court had to resolve. The trial was relatively brief and turned on the testimony of a few witnesses. While the drafting of instructions in this case and the verdict form was difficult because of the interrelationship between the federal and state statutes, that drafting was done by the Court itself.

Second, the factors of the time and labor required and the skill required to perform the legal services required are cognate. The greater the skill the lawyer has the less time it should take her to complete the task. It is plaintiffs' counsel inability to provide a meaningful demand for the actual damages suffered that is driving me to reduce the fee. That failure haunted this case. Indeed, this Court struggled mightily with plaintiffs' counsel before plaintiff's counsel provided any calculation of damages to this Court. Plaintiffs' counsel failed to provide a

---

[7] The twelve factors identified in Johnson are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717–19.

damages calculation in their Complaint [#1] or Amended Complaint [#50]. Further, when plaintiffs' counsel first purported to provide a damages calculation in their Trial Brief [#108], counsel failed to actually file the attachment with the damages calculation. It was not until the eve of trial, and several years into the litigation, that counsel provided this Court with any calculation of plaintiff's damages. See [#117]. The record reflects that this final calculation appeared in itself to be a work in progress, which the jury rejected anyway.

This failure to find out what value the case actually has makes management of the case difficult. Indeed, the value of the case is such an important consideration that Rule 26(a)(1) requires a party to provide a damage calculation without a discovery demand and it is, of course, necessary to know the value of the case accurately to engage in the crucial balancing required to ascertain whether the cost of certain discovery outweighs its utility. See Fed. R. Civ. P. 26(2)(c)(iii).

Moreover, in my experience, the overwhelming majority of cases in the federal court system settle; few go to trial. Magistrate Judges like me spend a substantial portion of their time presiding over settlement discussions and if they have learned nothing else, it is that realistic settlement discussions are impossible unless they begin with an honest calculation of the potential damages. Even allowing for the understandable "puffing," careful and frank case assessment begins with a fair and honest damage calculation. This was an FLSA case in which the final calculation of the damages should be simple arithmetic. That it was never done until the bitter end of the suit, that it was much less than what was claimed originally explains the incongruity of the plaintiffs demanding a quarter of a million dollars in fees in a case where one of them recovered less than $6,000 and the other less than $1,000. A failure to come to grips truly with the actual damages at issue should not be condoned, let alone rewarded by the kind of

fees plaintiffs seek here.  The interests of justice are far better served when plaintiff's counsel determines the proper damages calculation *ex ante*, rather than *ex post*.  Indeed, *ex ante* damages calculations are a necessary part of competent lawyering if litigants are to make any sort of good-faith effort to settle a case before trial.  This Court is not alone in this opinion.  Judge Easterbrook expressed the same sentiment when reviewing a case with similar facts:

> Commitment of $85,000 in legal time to a claim with an expected value well below $50,000 was unreasonable both *ex ante* and *ex post*.  That the final award was less than 10% of the demand highlights what should have been obvious earlier.

Cole v. Wodziak, 169 F.3d 486, 488 (1999).

I appreciate that the Supreme Court has held that attorney's fees need not be proportionate to plaintiff's damages award in certain exceptional public interest cases, see Rivera v. City of Riverside, 477 U.S. 561 (1986), but this is not such a case.  See also Farrar v. Hobby, 506 U.S. 103, 115 (1992) ("Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.").  Rivera concerned a complaint against the Riverside, California police department for use of excessive physical force against eight Chicano individuals.  Rivera, 477 U.S. at 564.  The plurality opinion held that attorney's fees in excess of plaintiff's damages award were not *per se* unreasonable under the *Hensley* framework.  Id. at 570, 576.  In reaching this conclusion, the plurality emphasized the important deterrent effect the litigation might have in the area of police misconduct. Id. at 574.  Further, the plurality reiterated the district court's findings that plaintiff's counsel had used "sound legal judgment," that the case "presented complex and interrelated issues of fact and law," and that counsel had "achieved excellent results for their client." Id. at 571-72.  Upon these considerations, the Court deferred to the district court's judgment that the attorney's fees demanded were reasonable under

the circumstances. Id. at 572.  Justice Powell's concurrence, providing the necessary fifth vote for the judgment, stood on narrower grounds, and upheld the disproportionate fee award only because the district court "made an explicit finding that the public interest had been served by the jury's verdict . . . " Id., at 585 (Powell, J. concurring). Further, Justice Powell noted that "[i]t probably will be the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." Id. at 585, n.3 (emphasis in original).

While Rivera indicates that fees in disproportion to plaintiff's relief may be appropriate in certain exceptional cases, the case before this Court is markedly unlike Rivera.  There was no public interest in this case, other than the public interest in seeing all cases, no matter how large or small, to their conclusions.  The verdict will have no deterrent effect on those who do not pay their employees in accordance with the law. This is not an FLSA case, like others I have encountered, where an employer utterly fails to keep records or shamelessly exploits defenseless workers who do not speak English, have little education, and little knowledge of their rights.  I presided over the trial in this case and it was clear to me that, at worst, the defendants made a reasonable and conscientious interpretation of the exceptions from the FLSA requirements under a regulation, which is particularly demanding of employers because it narrows the exception for managerial employees stringently.  While the jury found that interpretation to be incorrect, it hardly follows that the defendants should have to pay lawyers more than a quarter of a million dollars when at worst the defendant only failed to pay these two employees less than the $6,000.

As the Rivera case teaches, fee shifting statutes effectuate the Congressional design to supplement public enforcement of statutes such as the FLSA or Title VII of the Civil Rights Act by shifting fees to successful plaintiffs in these actions to attract a bar willing to take such cases.

See Rivera, 477 U.S. at 579.  Unless the lawyers are fairly compensated, that bar will never emerge nor prosper and cases like this one, brought on behalf of persons who could not possibly afford the hourly rates of most D.C. firms, will never be filed.  But, it hardly follows that every demand by counsel must be satisfied no matter how much it exceeds what the lawyer in fact accomplished. See S.Rep. No. 94-1011, at 6 (1776) ("[t]he appropriate standards . . . are correctly applied in such cases … which are adequate to attract competent counsel but which do not produce windfalls to attorneys") (internal citations omitted).

It must be recalled that the defendants in this case were not large entities and they too are entitled to litigation that satisfies the most fundamental requirement of Rule 1 of the Federal Rules of Civil Procedure—that all the rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  To visit upon defendants an award of over a quarter million dollars after six years of litigation yielded about $6,000 in damages is unconscionable, particularly when, in my view, a realistic evaluation of the value of this case at its inception would have spared the litigants and the Court so much money and time.  In that sense, awarding plaintiffs the fee they seek would be a shocking defeat of the aspiration expressed in Rule 1.  Indeed, it would create a brutally unfair regime of defendants having to pay more than plaintiffs are truly due, lest they face ruinous fees. Who would *not* have settled this case for more than the jury awarded plaintiffs rather than pay fees of more than a quarter of a million dollars?

A substantial adjustment to the lodestar is therefore in order.  A lapidary judgment is impossible and no time should be spent trying to achieve it.  To the contrary, the Supreme Court has stated:

> We emphasize, as we have before, that the determination of fees should not result in a second major litigation.  The fee applicant

> (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation. We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend.

Fox v. Vice, 131 S. Ct. 2205, 2216 (2011) (internal citations and quotations omitted).

Precedent in this circuit has certainly sanctioned reductions in the lodestar in limited-success lawsuits:

> The court, in its consideration of success, met its obligation by comparing [plaintiff's] $9,000 jury award to the $19,000 to $20,000 claim for pay and benefits and the open-ended claim for humiliation made by her attorney at closing argument . . . Although the court must perform this analysis again in light of our opinion, it is on solid legal footing when it compares the $9,000 award to the relief requested by plaintiff.

See Goos, 997 F.2d 1565, 1572 (1993) (remanded on other grounds). A number of other circuits have upheld percentage reductions to the lodestar based on the limited success of the lawsuit. See e.g., Cooke v. Stefani Mgmt, 250 F.3d 564 (7th Cir. 2001) (upholding a 50% reduction to the lodestar where plaintiff had requested nearly $300,000 but recovered only $7,500); Kline v. Kansas City Fire Dep't, 245 F.3d 707 (8th Cir. 2001) (upholding a 40% limited success reduction); Cmty Ass'n for Resotration of Env't v. Henry Bosma Dairy, 305 F.3d 943 (9th Cir. 2002) (upholding a 30% limited success reduction). With this guidance, and considering the results actually achieved and the failure of plaintiffs' counsel to make an accurate assessment of the value of plaintiffs case, which caused so much time and effort that would not have been expended had it been made earlier, the Court will therefore reduce the lodestar figure of

$255,898.80 to $56,474.70, a reduction of 75%. In my view, that is more than adequate compensation for what plaintiffs achieved.

    4. <u>Costs</u>

Under Rule 54 of the Federal Rules of Civil Procedure, a prevailing party may recover costs "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). As noted above, in an action brought pursuant to the FLSA, a prevailing party is entitled to the reimbursement of "the costs of the action." 29 U.S.C. § 216(b) (2000). The specific fees that may be taxed as costs are those listed in section 1920 of Title 28 of the United States Code. A court may not tax as costs any fees not identified in section 1920 or otherwise authorized by statute. <u>See</u> <u>Crawford Fitting Co. v. J.T. Gibbons</u>, 482 U.S. 437, 440-45 (1987). <u>See</u> <u>also</u> <u>Padurjan v. Aventura Limousine & Transp. Serv.</u>, 441 Fed. Appx. 684, 687 (11th Cir. 2011) (applying section 1920 to the FLSA). <u>But</u> <u>see</u> <u>Herold v. Hajoca Corp.</u>, 864 F.2d 317, 323 (4th Cir.1988), <u>cert. denied</u>, 490 U.S. 1107 (1989) (holding that under the FLSA, recoverable costs can extend beyond those itemized in Rule 54 or section 1920). Only those sections applicable to plaintiffs' motion will be discussed.

    a. <u>Section 1920(1)</u>

Under 28 U.S.C. § 1920(1), plaintiffs may be reimbursed for "[f]ees of the clerk and marshal." Under this section, courts have allowed for the reimbursement of filing fees. <u>Berke v. Fed. Bureau of Prisons</u>, 942 F. Supp. 2d 71, 80 (D.D.C. 2013). Plaintiffs will therefore be reimbursed as follows:

| Bill Date | Description | Amount Billed | Amount to be Reimbursed |
|---|---|---|---|
| 11/28/2006 | Filing Fee | $350.00 | $350.00 |

    b. <u>Section 1920(2)</u>

Under 28 U.S.C. § 1920(2), plaintiffs may be reimbursed for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Thus, the cost of deposition transcripts is recoverable. Guevara v. Onyewu, 943 F. Supp. 2d 192, 197 ("deposition transcripts are taxable if they are 'necessarily obtained for use in the case.'") (citing 18 U.S.C. § 1920(2)). Plaintiffs will therefore be reimbursed as follows:

| Bill Date | Description | Amount Billed | Amount to be Reimbursed |
|---|---|---|---|
| 1/4/2010 | Deposition Transcript – Caschetta | $1,050.00 | $1,050.00 |
| 1/4/2010 | Deposition Transcript – Molina | $721.00 | $721.00 |
| | | Total | $1,771.00 |

    c.   Section 1920(3)

Under 28 U.S.C. § 1920(3), plaintiffs may be reimbursed for "[f]ees and disbursements for printing and witnesses." Thus, "the cost of serving a subpoena on an individual who testifies at a deposition, hearing, or trial, as well as witness costs" are taxable. Medina v. D.C., 864 F. Supp. 2d 13, 23 (D.D.C. 2012); accord Youssef v. FBI, 762 F. Supp. 2d 76, 88-89 (D.D.C. 2011). Plaintiffs will therefore be reimbursed as follows:

| Bill Date | Description | Amount Billed | Amount to be Reimbursed |
|---|---|---|---|
| 7/25/2008 | Witness fee for deposition – Brown | $44.19 | $44.19 |
| 7/25/2008 | Witness fee for deposition – Turpin | $67.27 | $67.27 |
| 1/1/2014 | Witness fee for trial – Kwan | $68.56 | $68.56 |
| 1/1/2014 | Witness fee for trial – Mendez | $68.56 | $68.56 |
| 1/1/2014 | Witness fee for trial – Mizrahi | $83.35 | $83.35 |
| 1/1/2014 | Witness fee for trial – Wyant | $68.56 | $68.56 |
| | | Total | $400.49 |

    d.   Section 1920(4)

Under 28 U.S.C. § 1920(4), plaintiffs may be reimbursed for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Thus, photocopying costs are generally recoverable. Berke, 942 F. Supp. 2d at 80.

However, plaintiffs must provide the court with specific facts that demonstrate that the copies at issue were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4).  Without such a proffer, the court cannot make an award.  See Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1045 (5th Cir. 2010) (vacating district court's award of costs for copying in FLSA action because the court made no factual findings as to the appropriateness of the reimbursement under section 1920).  In this case, plaintiffs have failed to provide any information about the nature of the photocopying charges, and they therefore will not be reimbursed for these costs.

The remaining costs identified by plaintiffs are not recoverable under section 1920, and therefore will not be reimbursed.  They include the following:  1) "Fee for expert reports"; 2) "Faxes"; 3) "Courier"; 4) "Overnight mail"; 5) "Postage"; 6) "(Attempted) Service for deposition"; 7) "Service of Process fee for trial";  8) "Taxicab Fare"; 9) "Costs for online legal research"; and 10) "Pacer and ECF access."  See [#167-9].

### III.   CONCLUSION

In light of the foregoing, plaintiffs' motion will be granted in part and denied in part; plaintiffs will be awarded the following in attorney's fees and costs. An Order accompanies this Memorandum Opinion.

| | |
|---|---|
| Attorney's Fees ($255,898.80 x .235) | $56,474.70 |
| Costs ($350.00 + $1,771.00 + $400.49) | $2,521.49 |
| TOTAL | $58,996.19 |

 

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE