**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATHY RADTKE, ET AL. | |
| Plaintiffs, | |
| v. | Civil Case No.: 06cv02031 (RCL) |
| LIFECARE HEALTH SYSTEMS, ET AL. | |
| Defendants | |

**AFFIDAVIT OF S. MICAH SALB, ESQ.**

1.      I am the principal attorney at the law firm of Lippman, Semsker & Salb, LLC, with offices located in Bethesda, Maryland.

2.      Lippman, Semsker & Salb provides a variety of services aimed at individuals and small businesses, with a particular focus on employment law.  Lippman, Semsker & Salb was formed in 1972 to deliver labor law services.  With the evolution in employment rights from the labor arena to individual employment rights in the 1980s, the firm's work gradually shifted to focus on employment discrimination claims.  Over the past decade, Lippman, Semsker & Salb has represented more than five hundred clients in discrimination, wage & hour, harassment, and similar employment claims.

**My Education, Bar Admissions, and Ratings.**

3.      I was an undergraduate student, studying political science and women's studies, at the University of Connecticut in Storrs.  After receiving a Bachelor's degree in 1991, I attended the Emory University School of Law, receiving a J.D. degree in 1994. While at Emory, I was an Articles Editor for the *Bankruptcy Developments Journal*.

4.      I have been admitted to the bars of the State of Maryland (1995) and the District of Columbia (1996) and I have practiced *pro hac vice* in Virginia and Illinois.  I am

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

EXHIBIT 1

also admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the District of Columbia, Federal, and Fourth Circuits.

5.    I am a member of the bar associations of the District of Columbia and the state of Maryland.

6.    In 2005, I was elected to the Steering Committee of the Labor & Employment Section of the District of Columbia Bar; I was reelected in 2008. I served as co-Chair of that Committee from 2008 through 2010.

7.    I have been a member of, and served on the executive board of, the Metropolitan Washington Employment Lawyers Association.

8.    I am AV-rated by Martindale-Hubbell and I have a "Superb" rating from Avvo.com. Both are the highest ratings issued by those organizations.

**My Experience.**

9.    I have practiced employment litigation throughout my career, with the first half of my career devoted exclusively to employment litigation.

10.    I have served as lead counsel in dozens of employment law cases against private and public employers and major corporations in State and Federal courts in Maryland, Virginia, and the District of Columbia as well as before the EEOC and the Merit Systems Protection Board. I have also represented and advised numerous businesses in employment-related matters. My experience includes all aspects of the litigation process, including drafting pleadings, discovery, motions practice, and trials. Examples of complex employment cases that I have served as lead counsel include:

a.    Allworth v. Howard University, in which a university professor alleged that the University had breached the covenant of good faith and fair dealing by employing her to do research but failing to provide her with a laboratory in which to do research;

b.    Marable et al. v. District Hospital Partners, a putative class action which required extensive expert and statistical analysis;

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

    c.    <u>Halpern v. Washington Center for Internships</u>, in which the plaintiff was fired after he complained that it was improper to deny an applicant from a conservative Christian college the opportunity to intern for Hon. Barney Frank because of Mr. Frank's sexual orientation;

    d.    <u>Hicks et al. v. Georgetown University</u>, in which the older female plaintiffs alleged that attractive young men were afforded training and work experience that were denied to them, making the men better qualified in a RIF analysis;

    e.    <u>Thompson v. District of Columbia</u>, a due process case involving the plaintiff's allegations that the District of Columbia lottery board engaged in retaliatory conduct by engineering his removal because he "blew the whistle" on improper contracting practices;

    f.    <u>Coclough v. Results, The Gym</u>, in which a trainer alleged sexual harassment;

    g.    <u>Smith v. Café Asia</u>, a sexual harassment case which involved numerous difficult evidentiary issues.

I have handled a great many additional such cases.

    11.    I have served as lead or primary counsel in numerous employment law cases in which there were published decisions.

    12.    Published decisions in the federal appellate courts in which I have served as lead counsel include:  <u>Brooks and Taylor, on Behalf of Themselves and All Others Similarly Situated v. District Hospital Partners, L.P., doing business as George Washington University Hospital</u>, 606 F.3d 800 (D.C.Cir. 2010) (addressing complicated issues related to the "single filing rule" and finality for purposes of appeals; cited in that regard by Wright & Miller, Fed. Prac. & Proc. § 1522.2, *Modifying Scheduling Orders*, and § 3950.5, *Civil Cases-Premature Notice*); <u>Thompson v. District of Columbia</u>, 530 F.3d 914 (D.C. Cir. 2008) (*cited in* <u>Sarah L. Fabian, Garcetti v. Ceballos: Whether an Employee Speaks as a Citizen or as a Public Employee — Who Decides?</u>, 43 UC Davis L. Rev. 1675; Thomas Keenan, <u>Circuit Court Interpretations of Garcetti v. Ceballos and the Development of Public Employee Speech</u>, 87 Notre Dame L. Rev. 841); <u>Steele v. Schafer</u>, 535 F.3d 689 (D.C. Cir. 2008) (a successful appeal cited in more than a dozen law review and other secondary sources, as well as more than

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

100 cases); <u>Aleman v. Chugach Support Services, Inc.</u>, 485 F.3d 206 (4th Cir. 2007) (primary role in amicus brief).

13.    Cases in the federal district courts in which I have served as lead counsel include:  <u>Vincent v. Geithner</u>, 890 F.Supp.2d 8 (D.D.C. 2012); <u>Smith v. Cafe Asia</u>, 724 F.Supp.2d 125 (D.D.C. 2010); <u>Smith v. Cafe Asia</u>, 256 F.R.D. 247 (D.D.C. 2009); <u>Smith v. Cafe Asia</u>, 598 F.Supp.2d 45 (D.D.C. 2009); <u>Smith v. Cafe Asia</u>, 246 F.R.D. 19 (D.D.C. 2007); <u>Dickerson et al. v. SecTek, Inc.</u>, 238 F.Supp.2d 66 (D.D.C. 2002) (cited in Wright & Miller, Fed. Prac. & Proc., § 1183, *Pleadings Permitted by Rule 7-in General*; the <u>Department of Justice Manual</u>; Case Law Developments, 35 <u>Mental & Physical Disability L. Rep.</u> 823, 881; and "Sex in the Sexy Workplace," 9 <u>NW J. L. & Soc. Pol'y</u> 88, 121); <u>Sotabinda v. Hotel Lombardy</u>, 173 F.R.D. 3 (D.D.C. 1997); <u>Van Allen v. Bell Atlantic-Washington, D.C., Inc.</u>, 921 F.Supp. 830 (D.D.C. 1996).

14.    Cases in the state courts in which I have served as lead counsel include <u>Lockhart v. Cade</u>, 728 A.2d 65 ( D.C. 1999), and <u>Allworth v. Howard University</u>, 890 A.2d 194 2006 (2006) (quoted in six law review articles).

15.    Cases in administrative agencies in which I have served as lead counsel include <u>Law v. US Postal Service</u>, 77 M.S.P.R. 30 (1997).

**Background and Experience: Trial Attorneys.**

*A.    Dr. Mary Kuntz.*

16.    Mary Kuntz was an undergraduate student at Washington University in St. Louis, studying Classical Languages and Religion and graduating *magna cum laude*, Phi Beta Kappa. She attended Yale University studying Classical Languages and Literatures, earning an M.A., an M.Phil., and, in 1985, a Ph.D.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

17.    Dr. Kuntz was a professor of Classics for twenty years, first at the University of Iowa, then the University of Oregon, and then Auburn University.  At Auburn she served as special assistant to the Provost and Director of Women's Studies.

18.    In 2005, Dr. Kuntz matriculated at the George Washington University law school, where she completed her J.D. in 2008.

19.    During law school, Dr. Kuntz worked as a Senior Research Fellow at the Institute for Women's Policy Research.  While employed there, she worked on a Ford Foundation-funded research project into the effectiveness of consent decrees used to resolve Title VII cases in changing workplace conditions.

20.    Dr. Kuntz was admitted to the Bar of the Commonwealth of Virginia in 2008, of the state of Maryland in 2010, and of the District of Columbia in 2014.  Throughout her career as a lawyer, Dr. Kuntz has focused on employment discrimination and wage and hour law.

21.    Dr. Kuntz joined Lippman, Semsker & Salb in 2008 and departed in 2015. During her tenure, Dr. Kuntz represented more than 100 individuals, non-profit organizations, and companies in employment-related cases.  In the majority of those matters, she served as the lead or primary lawyer.  Dr. Kuntz was lead counsel in a D.C. Office of Human Rights age discrimination trial and in an administrative hearing in Maryland.  She has served as second-chair at numerous trials.

**B.    *Clare Wu.***

22.    Clare Wu graduated from Cornell University's School of Industrial and Labor Relations in 2001.  She is a 2004 graduate of the American University's Washington College of Law.

23.    Ms. Wu was first admitted to practice law in Maryland in December 2004 and became a member of the District of Columbia Bar in July 2007.

- 5 -

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

24.    Ms. Wu became an Associate Attorney at Lippman, Semsker & Salb in June 2006. She had about two years of experience as an employment law litigator at that time.

25.    At Lippman, Semsker & Salb, Ms. Wu performed substantial work on numerous employment law cases, including both a class action matter and a Fourth Circuit amicus brief. Her work included tasks such as preparing discovery requests and responses, writing and editing complex briefs, working with expert witnesses, interviewing witnesses, and the like. Ms. Wu had primary responsibility for several of the cases on which she worked. All of Ms. Wu's work was in the field of employment law.

### C.    Gwen D'Souza.

26.    Gwen D'Souza received her law degree from the Catholic University of America, Columbus School of Law, in 1994 with a Certificate in Law and Public Policy. She also received her Bachelor's degree from Catholic University.

27.    Ms. D'Souza was admitted to practice in Maryland in June 1996 and was admitted to practice in the District of Columbia in February 1997.

28.    Ms. D'Souza is AV-rated by the attorney rating firm Martindale-Hubbell. Prior to and while employed by Lippman, Semsker & Salb, Ms. D'Souza served in various leadership capacities for professional organizations. She served as Treasurer of the Maryland Employment Lawyers Association from 2005-2008, was the Treasurer of the Hispanic Bar Association from 2004 through 2005, was the Co-Editor of the Women's Bar Association of Maryland Newsletter in 2005 and 2006, and has been a Bar Leader of the Bar Association of Montgomery County since 1999. Ms. D'Souza has long been a member of the Metropolitan Washington Employment Lawyers Association.

29.    Ms. D'Souza provided services on the *Radtke* matter from April 2007 through August 2008. During that time, she had been licensed for eleven or more years and had achieved substantial experience and successes in the field of employment law. The work

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 6 -

that she did at Lippman, Semsker & Salb was consistent with that of an employee with ten or more years of experience, such that, for example, she had plenary responsibility for the litigation of complex employment matters.

**D.    James Hellams.**

30.    James Williams Hellams earned his B.A. in History and Political Science in 2003 from Clemson University.  He received his J.D. from the Charleston School of Law in 2008, where he served on the editorial staff of the <u>Charleston Law Review</u>.

31.    Mr. Hellams was admitted to practice in South Carolina in May 2009, in the District of Columbia in January 2010, and in Maryland in June 2011.

32.    While at Lippman, Semsker & Salb, Mr. Hellams worked primarily in the fields of estate planning and general litigation.  He provided services on the *Radtke* matter from November 2009 through February 2010, during which time he was in his first year of law practice.

**E.    Jamie Kay.**

33.    Jamie Kay received her B.A. in political science from Northeastern University, where she graduated *summa cum laude* in 2010.  She earned her J.D. from Georgetown University Law Center in 2013 and served as the Executive Editor of <u>The Georgetown Environmental Law Review</u>.

34.    Ms. Kay became a member of the State Bar of Maryland in December 2013.

35.    Before joining Lippman, Semsker & Salb, Ms. Kay served as a law fellow with the American Diabetes Association.

36.    During the time that she provided services in the *Radtke* matter, Ms. Kay was nearing the end of her first year of practice following licensure.

- 7 -

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

*F.*     *M. Chantal Tuffet.*

37.    Chantal Tuffet received her B.A. in International Relations and French in May 2000 from Wheaton College in Norton, Massachusetts. She achieved an LL.B. with Honors in June 2010 from the University of Manchester School of Law in Manchester, UK.  In May 2011, Ms. Tuffet received an LL.M. from the George Washington University School of Law.

38.    Ms. Tuffet became a member of the New York State bar in August 2013. Ms. Tuffet began working at Lippman, Semsker & Salb in December 2012.  She provided services in the *Radtke* matter in December 2013 and January 2014, during which time she was in the first year of practice following licensure.

*G.*     *Zachary Murry.*

39.    Zachary Murry received a Bachelor of Arts in English from The Ohio State University in 2003.  He was a member of the Honors and Scholars program, the John Glenn Learning Community, and the National Society of Collegiate Scholars.  He received his J.D. from The Catholic University of America, Columbus School of Law, in 2007, where he served as a moot court associate and member of the law school's national labor and employment moot team.

40.    Mr. Murry became a member of the Maryland Bar in December 2007.

41.    Mr. Murry worked for Lippman, Semsker & Salb from April 2008 until June 2009, when he returned with his family to his hometown in Ohio.

**Billing Rates.**

42.    I have set the hourly rates of the attorneys in my office based generally on the "*Laffey* Matrix."  The *Laffey* Matrix for establishing attorney fees was initially set forth by the EEOC in the late 1980s.  Hatfield v. Garrett, Appeal No. 01892909 (EEOC 1989).  It has been consulted by many courts and administrative forums as well as parties to litigation to

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

determine the appropriate rate of compensation for attorneys in employment case. *See*, *e.g.*, <u>Save Our Cumberland Mountains v. Hodel</u>, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc).

43.      In accordance with the *Laffey* Matrix, through 2014 the market rate for an attorney practicing employment law for at least eleven and as many as nineteen years is $450 per hour. *See* Laffey Matrix, attached to the <u>Petition for Attorney's Fees and Costs</u> as Exhibit 3. I have fallen within that range of years of experience throughout the most of the trial phases of this case.

44.      In 2014, following the trial of this case and after the various Notices of Appeal were filed, I reached by twentieth year of practice under the *Laffey* guidelines. Under the 2014-2015 *Laffey* Matrix, a lawyer with this level of experience commands a market rate of $520 per hour.

45.      My billing rate for employment matters is $500 per hour. My billing rate for employment matters was $400 per hour from 2011 through 2015. From 2008 through 2011, my billing rate was $375 per hour. These rates are close approximations to or slightly below *Laffey* rates.

46.      In setting our rates, we have aimed to set rates that we believe to be fair and a reflection of market rates. We have determined market rates by talking with clients and colleagues about their experience paying lawyers at small law firms. We have long supplemented our understanding of market rates by reference to the *Laffy* Matrix.

47.       In January 2011, the *Laffey* rate for a lawyer with 11-19 years of experience was $420. I chose to bill my time at $400 rather than $420 not only because I believed it to be a fair and market rate, but also because as a round number, it was easier for clients to understand and calculate.

48.      Dr. Kuntz began practicing law in 2008. When she began practicing law, we billed her time at the rate of $225 per hour. We set that rate because we believed it to be appropriate to the market (particularly given her sophistication in employment and gender

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

issues). Our belief as to the market rate was confirmed by the fact that $225 was the *Laffey* rate applicable at that time to someone with up to three years' experience.

49.    From October 2011 through September 2013, we charged Dr. Kuntz's time at $245 per hour. The *Laffey* rate applicable then was $240 per hour.

50.    In September 2013, we began charging Dr. Kuntz's time at $325 per hour. The *Laffey* rate then applicable for Dr. Kuntz was $295 per hour, but we determined that her experience, background in academia, and performance in the field of employment law (including as it relates to academics) warranted a higher rate and we wished to avoid having to increase her rate again for several more years.

**Factors that Affect Billings.**

51.    At no time at the outset of this case, during either settlement conference, or in advance or during trial did the Defendants offer to settle this matter (generally refusing even to engage in any settlement discussions). Plaintiffs made innumerable requests to settle this case, at the outset, throughout discovery, in advance of trial, and during the trial. The Defendants' response was invariably either a flat "no" or to make a demand that the Plaintiffs make payment to the Defendants to settle! In fact, the <u>only</u> settlement offers that the Defendants ever made were for the *Plaintiffs* to pay the *Defendants.*

52.    The trial court conducted two mediation sessions with the goal of settling this matter, on Dec. 14, 2007 and March 18, 2009. Neither one of them was successful. At both, the Plaintiffs appeared in good faith, had calculated the Defendants' potential exposure to damages, and were prepared to discussion resolution of their claims. At both sessions, the Defendants declined to put up any meaningful settlement offer.

53.    Not only did the Defendants refuse to engage in settlement talks throughout, they litigated with ferocity. They filed a counter-claim for purported breach of a non-compete agreement (dropping that specious claim only in advance of trial) and used that

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

claim as a cudgel against the Plaintiffs. They frequently complained bitterly about that purported breach. They blamed the Plaintiffs for their loss of a valuable federal government contract. All of this led the Defendants to litigate this case with the greatest zeal. They threatened Rule 11 sanctions on at least a half-dozen occasions.

54.     The Defendants quarreled frequently over non-central issues, such as the terms and application of the confidentiality order; consistently delayed producing discovery responses; produced discovery in a completely un-sorted and even unnumbered set, requiring far more time for the review and sorting of discovery than should have been required; and so on. The Defendants' conduct ensured that the case was very time-consuming, causing counsel to decline to accept some potential clients during the course of this litigation.

55.     I am the principal attorney of Lippman, Semsker & Salb, with numerous additional demands on my time such as supervision of junior attorneys, practice management, legal compliance, and the like. Consequently, we must use great care in accepting cases to avoid becoming overburdened and therefore unable to litigate appropriately. As such, accepting this case directly limited our ability to accept other work. In fact, I turned away two clients in the early winter of 2013 because of the impending trial in this case, and I can recall declining multiple client inquiries during busy periods of discovery in this case because of the burdens of this case.

56.     One of the claims in this case is that Maria Caschetta was an "employer" as that term is defined in the applicable laws. Exploration of the facts relevant to that claim, and time spent presenting relevant evidence at summary judgment and trial, did not require any additional work or expense of any meaningful amount. There is no way to separate out time spent on that claim from the time spent on the successful claims, since the evidence in that regard was relevant to the successful claims and would have been obtained for that purpose even absent the claim against Ms. Caschetta.

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

57.    During the course of this case, I provided our calculation of the Plaintiffs' damages to the Defendants on multiple occasions.  I repeatedly asked the Defendants to advise me of errors in our calculation.  They declined to respond to my requests.  In fact, I advised the Defendants that we believed that they had not produced all of the Plaintiffs' time records to us — it was not until trial that the Defendants clarified that they had in fact done so.  Had the Defendants cooperated with the Plaintiffs in the computations of the amounts paid, the scope of the litigation likely would have been reduced.

58.    In taking this case, I agreed to represent the Plaintiffs on a contingency fee basis.  Though the retainer agreement describes the fee to be paid as a contingent fee, I was well aware that the reality in wage and hour cases is that the amount of the recovery is invariably quite modest and inadequate to compensate a firm for the work necessary to do the litigation.  Therefore, as is generally true when representing plaintiffs in wage and hour cases, I knew that my fees would be paid, if at all, through the fee-shifting provisions of the applicable law.  This implicates a series of factors that sharply diminish the desirability of wage and hour cases in my estimation:

❖ Fee shifting is triggered upon successful completion of the case. As a result, I knew that I would have to work for a long time without recompense, often including advancing sums necessary for out-of-pocket expenses as well.

❖ The amount of the fee is almost always subject to contention and reduction by the court, diminishing the value of those fees worked.

❖ Even when paid, the amount paid is a reflection of reasonable market rates applied to the hours worked and often does not include an increase to reflect the risk of a contingent fee. As a result, I knew that I would be unlikely to receive the sort of profits that can offset the risks associated with such cases.

❖ Defendants frequently agree to settle such sums with little or no allocation toward attorney's fees, potentially creating a conflict between lawyer and client which, *ipso facto*, requires that the lawyer sacrifice his or her fee to ensure that his or her interests are not afforded greater weight than the client's.

59.    In order to advance this matter, my office carefully investigated Plaintiffs' claims, including the factual underpinnings and applicable statutes.  Counsel interviewed the Plaintiffs and potential witnesses.  Counsel also reviewed all documentation that was

- 12 -

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

then available.   In addition to significant written discovery, Plaintiffs deposed the Plaintiffs'

supervisors, Maria Caschetta and Joseph Molina, to capture testimony regarding the

Plaintiffs' work duties and responsibilities.   The deposition transcripts were used

throughout the trial.  The Defendants also deposed the Plaintiffs.

60.     Once it became clear that this matter was going to proceed to trial, counsel

engaged in extensive rial preparation efforts.  These efforts included:

- ❖ Extensive preparation with the Plaintiffs, both of whom were largely unfamiliar with court proceedings and procedures;
- ❖ Significant time reviewing all documents produced by the Defendants;
- ❖ Reviewing the deposition transcripts and discovery responses in order to prepare for witness examinations;
- ❖ Drafting the Joint Pretrial Order;
- ❖ Preparing trial exhibits;
- ❖ Researching a number of legal issues for trial presentation and argument.

61.     The trial of this matter was conducted in an efficient manner.  The Plaintiffs

were represented at trial by two attorneys (Micah Salb and Mary Kuntz), both of whom

were actively engaged in the tasks of trial, including eliciting testimony, keeping notes

regarding testimony, exhibits, and legal issues, and the like.


**The Time Spent on this Case**.

62.     Attached to this Declaration as Exhibit A is a detailed breakdown of the

billable hours incurred in this case.  This is an accurate statement of the time that we spent

that we made on this case.

63.     The list of billable hours is based upon the contemporaneous time, task, and

expense records maintained by Plaintiffs' counsel's firm, and have been carefully reviewed.

Our list of billable time shows that we spent more than 1,400 total hours on this case.

64.     Of the approximately 1,400 total hours shown on our list of billable time, we

have eliminated over 150 hours from our fee petition of time that we believe should not be

billed because it reflects excessive time spent on a task and the like.  We believe that the

approximately 1,240 hours that remain were properly spent and payable in this litigation.

- 13 -

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

65.    I have a regular practice of not recording certain expenditures of time.  For example, if a lawyer spends more time on a task than the task warrants, the excess time will be removed from the client's invoice when the monthly bills are created.  If one lawyer meets with another to provide an update, only one of the lawyers' time is typically recorded except in unusual cases in which both lawyers are actively working during that meeting.

66.    I have carefully reviewed the time reported on Exhibit A to ensure that it <u>does not include</u> charges that are inadequately documented, arguably duplicative, unduly time-consuming for the task, and the like.  The few time records that were in fact recorded in the Plaintiffs' time records which violate this approach were excluded from the fee petition.

67.    In preparing this fee petition, I spent substantial time analyzing the inclusion or exclusion of each time and cost entry recorded.  I have sought to adequately explain the work necessary that led to the judgment in the Plaintiffs' favor with the hope that the time records and explanation of work involved will reduce the Court's and the Defendants' time in addressing this application.

68.    In addition, this list of billable time does not include what we compute to be more than 200 hours that we did not include at all on our list of billable time because those hours reflected time which we believe should not be billed to clients.  For example, we generally avoid including time spent on intra-office discussions, the time of a secondary participant in a meeting, clearly excessive time spent on various tasks, and time spent on "dead-end" aspects of a case on a client's invoice.

69.    Notwithstanding our efforts throughout the proceeding to keep billing records trim, as well as our diligent efforts to locate time records during the production of this fee petition which we do not believe should be billed, we believe that it is likely that our list of billable time still includes time records for time spent on matters not central to the litigation, or more time spent than a task requires, and so on.  Therefore, Plaintiffs propose that this Court make a further "up front" reduction in the fees in the amount of ten percent

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

to reflect the possibility of such time charges in the fee petition. Doing so will streamline the fee petition process and avoid a line-by-line debate over every time record, since attorney's fees petitions "should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

70.     If we had sought recompense for all time spent on this case, our fee potion would seek more than $537,000.

71.     Instead, we seek approximately $435,000, or approximately 20% less than the total time actually spent on the case, in attorney's fees. *See* <u>Fees Summary</u>, Attachment A hereto.

72.     Attached to this Declaration as Exhibit B is a detailed breakdown of the expenses incurred in this case. This is an accurate statement of the expenses that we incurred in this case. The list of expenses is based upon the contemporaneous time, task, and expense records maintained by Plaintiffs' counsel's firm, and have been carefully reviewed for accuracy. These expenses are all of the type that would regularly be billed to a fee-paying client. We seek recompense for these expenses. The cost of those expenses is $2,559.28.

73.     Attached to the Declaration as Attachment C is a true and correct copy of the retainer agreements that we signed with our clients.

74.     On the basis of my personal experience, the total cost of legal services and expenses was reasonable and necessary for the nature of the legal services provided to the Plaintiffs and the time necessary to handle this case.


I have read this Affidavit and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal information, knowledge, and belief.


June 29, 2016                                    ___/s/ S. Micah Salb_____
                                                 S. Micah Salb, Esq.

- 15 -

**Lippman, Semsker & Salb, LLC**
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906