**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KATHY RADTKE, and** ) | |
| **CARMEN CUNNINGHAM,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No: 06-cv-2031-RCL** |
| ) | |
| **MARIA CASCHETTA, et al.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

This case comes before the court on plaintiffs' renewed motion for attorneys' fees, ECF No. 208.  Over ten years ago, plaintiffs filed claims for failure to pay overtime wages in violation of the Fair Labor Standards Act and Maryland state law.  In 2014, a jury returned a verdict in favor of plaintiffs, finding that their employers were not exempt from the requirement to pay overtime under either the administrative or professional exemptions of the FLSA.  Ms. Radtke was awarded $5,114.62 in damages and Ms. Cunningham was awarded $729.67 in damages.  Defendants appealed the jury verdict, arguing that they were entitled to judgment as a matter of law and for a new trial, but the Court of Appeals affirmed the verdict.  Plaintiffs filed a motion for attorneys' fees and costs and were awarded $56,500, a 75% reduction in fees due to the court's conclusion that plaintiffs failed to provide a meaningful demand for the actual damages suffered until the eve of trial.  This decision was reversed by the Court of Appeals, and the case was remanded for a de novo determination of fees.

Plaintiffs now bring this renewed motion for attorneys' fees totaling approximately $429,300,[1] and costs totaling $2,559.28. Defendants argue that an award in this amount is improper and should be reduced for the following reasons: 1) plaintiffs' lack of success; 2) the denial, dismissal, or dropping of several claims, and plaintiffs should not be permitted to recover for time billed related to these unsuccessful claims; 3) plaintiffs have submitted excessive, redundant, and unnecessary charges; and 4) plaintiffs have acted in bad faith. In addition, the parties dispute whether current or historic *Laffey* rates should be used in calculating plaintiffs' award.

For the reasons stated below, the Court finds that current *Laffey* rates apply, but that a 40% reduction to the fees expended on pre-appellate work is warranted based on lack of success. No reduction is warranted for appellate work. The Court will award $307,980 in fees and $2,559.28 in costs, totaling $310,539.28.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Kathy Radtke and Carmen Cunningham were medical records coders working for defendant Advanta Medical Solutions (Maryland) and Lifecare Management Partners (D.C.), respectively. In 2006, plaintiffs brought an action for failure to pay overtime wages in violation of the FLSA (as neither the administrative nor the professional exemptions to the FLSA applied) and Maryland state law. Ms. Radtke, who worked for Advanta, claimed that she was entitled to unpaid overtime wages from November 30, 2003 through January 6, 2006, pursuant to the Maryland three year statute of limitations applicable to Maryland wage and hour claims. Ms.

---

[1] As explained further below, plaintiffs' motion states that they are seeking fees totaling $435,000. This Court relies, however, on the figures listed in plaintiffs' detailed fee petition, attached as Exhibit 1-A to plaintiffs' motion. In addition, plaintiffs have included a 10% up front reduction in order to address the possibility of duplicative or excessive time charges. Thus, plaintiffs' petition states that counsel billed approximately $477,000 on this case, which reduced to $429,300 after the 10% reduction.

Cunningham, who worked for Lifecare, claimed that she was entitled to unpaid overtime wages from November 30, 2003 through March 31, 2005 pursuant to the Maryland three year statute of limitations.[2]  Ms. Cunningham argued that Lifecare was an employer subject to Maryland law. Lifecare argued that it was not subject to Maryland law—it is a District of Columbia general partnership and Ms. Cunningham performed work for Lifecare exclusively in D.C.   Ms. Cunningham also argued that Advanta and Lifecare were joint employers jointly liable for damages, and therefore that Lifecare was liable under Maryland law based on the actions of Advanta.  Finally, Ms. Cunningham, argued that she was employed by Lifecare while working as an independent contractor for Advanta.  Independent contractors are not entitled to overtime pay, so Ms. Cunningham sought to establish she was an "employee" at this time.

Plaintiffs also argued that they were entitled to liquidated damages.  Plaintiffs may obtain double damages under the FLSA, and treble damages under Maryland law, if they can show that their employer did not act in good faith.  *See* 29 U.S.C. § 260; Md. Code Ann., Lab. & Empl. § 3-507.2(b).  In sum, Ms. Radtke sought damages totaling $34,749.99.  Ms. Cunningham sought damages totaling $52,633.23.[3]

Apart from their overtime claims, plaintiffs claimed in their Complaint that 1) that they were required as a common practice to work holidays; 2) that they were not paid overtime or holiday pay for services they were required to perform on holidays; 3) that they were not paid minimum wages; 4) that they were paid in an untimely manner; and 5) that defendants failed to provide an accurate and timely accounting of the method of computation of their pay.  These claims

---

[2] FLSA claims are subject to a two year statute of limitations unless the employer has acted willfully.  29 U.S.C. § 255.

[3] These totals are taken from defendants' opposition to plaintiffs' fee petition and plaintiffs do not appear to contest them.

were withdrawn prior to trial. Plaintiffs also brought a claim for breach of contract, arguing that such a breach was malicious.

In 2014, a jury returned a verdict for the plaintiffs, finding that defendants failed to establish that the plaintiffs were exempt from overtime requirements under either the administrative exception or the professional exception. After the second phase of the trial, the jury found 1) that the time Radtke spent traveling was part of her job (and therefore was compensable); 2) that defendant Maria Caschetta was not an employer (and therefore not liable); 3) that none of the defendants were joint employers; 4) that plaintiffs failed to establish that the overtime dispute was not bona fide (*i.e.*, that defendants had acted in bad faith); 5) that defendants had not acted willfully; and 6) that Ms. Cunningham was working as an independent contractor, not an employee, for defendant Advanta.

After trial, Judge Facciola found that plaintiffs failed to offer evidence in support of their breach of contract claim—noting that "plaintiffs' counsel admitted that he 'did not know' why he included a breach of contract claim, only that it would be 'malpractice' not to include it"—and dismissed the breach of contract count. He also found that Maryland's three year statute of limitations did not apply to Ms. Cunningham's work for Lifecare because Lifecare was not a Maryland employer and Lifecare and Advanta (which was a Maryland employer) were not joint employers jointly liable. In addition, because the jury found that the defendants did not act willfully, the FLSA's two year statute of limitations applied to Ms. Cunningham's claims. Judge Facciola further rejected Ms. Cunningham's arguments that she was not an independent contractor and that Advanta and Lifecare were joint employers. Finally, Judge Facciola found that liquidated damages were not appropriate because defendants had shown that they acted in good faith. Judge Facciola concluded that defendant Advanta was liable to Ms. Radtke for $3,245.66 ($5,114.62

with interest) and that defendant Lifecare was liable to Ms. Cunningham for $445.34 ($729.67 with interest).

Plaintiffs subsequently sought attorneys' fees totaling $255,898.80. Judge Facciola awarded fees in the amount of $56,464.70, significantly reducing the fee award after finding that the plaintiffs failed to provide a timely demand for their actual damages. *See Radtke v. Caschetta*, No. CV 06-2031 (JMF), 2014 WL 11802595, at *5 (D.D.C. Dec. 30, 2014). Both parties appealed; plaintiffs challenged the fee award as too low, and defendants challenged it as too high. The Court of Appeals determined that plaintiffs timely filed their fee petition and were entitled to fees, and that the lower court's error was "quite clear." *Radtke v. Caschetta (Radtke II)*, 822 F.3d 571, 575 (D.C. Cir. 2016). It found that plaintiffs "were not negligent or dilatory in providing a damages estimate; they did so time and again, including before they filed suit," and that "[t]hey even offered an early settlement, but the Employers never responded." *Id.* The Courts of Appeals thus vacated Judge Facciola's decision and remanded for a new determination of fees. Judge Facciola having retired, this case was randomly assigned to the undersigned judge.

In addition, defendants appealed the jury decision against them, arguing for judgment as a matter of law, for a new trial, or to alter or amend the judgment. The Court of Appeals rejected the defendants' arguments, finding that the issue of whether plaintiffs' were exempt from overtime requirements was a question for the jury, and that defendants' failed to show that the evidence presented to the jury was "so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Radtke v. Lifecare Mgmt. Partners (Radtke I)*, 795 F.3d 159, 165 (D.C. Cir. 2015). Defendants also argued for a new trial because 1) Ms. Radtke "blurted out" an answer even after the court had sustained the defendants' objection to the question; 2) Ms. Cunningham contradicted herself and the jury was not given a perjury instruction; 3) plaintiffs' counsel stated

5

that defendants needed to prove Ms. Radtke and Ms. Cunningham were exempt by clear and convincing evidence, even though the standard is preponderance of the evidence. *See id.* at 166–68. The Court of Appeals rejected all three arguments. *See id.*

Plaintiffs state that they are seeking $435,000 in the substance of their motion. The Court will rely, however, on the figures used in plaintiffs' fee petition, attached to their motion as Exhibit 1-A, and which details the number of hours billed, the rates used (current *Laffey*), and the time entry value for each entry. According to the fee petition, plaintiffs' counsel billed approximately 1,240 hours on this case, totaling approximately $477,000.[4] Of those 1,240 hours, approximately 954 hours were billed for work prior to the two appeals described above, totaling approximately $337,000, and approximately 286 hours were billed on appellate work, totaling approximately $140,000. After the voluntary ten percent reduction, these values change to $303,300 and $126,000, respectively, totaling $429,300. Plaintiffs also seek an award of $2,559.28 in unreimbursed costs.

## III.  LEGAL STANDARDS FOR DETERMINING A FEE AWARD

Prevailing parties in FLSA actions are entitled to attorneys' fees. The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The award of such fees is therefore mandatory. *Bradshaw v. Jefferson Grill, Inc.*, No. CIV.A. 11-1558 ABJ, 2012 WL 2803401, at *1 (D.D.C. July 10, 2012). In fee-shifting cases, such as those brought under the FLSA, courts apply the "lodestar" method of determining fee awards, as it is "presumptively sufficient to achieve [the] objective [of inducing a capable attorney to undertake the representation of a meritorious civil rights case]." *Perdue v. Kenny A. ex rel. Winn*,

---

[4] This does not include the 156.50 non-billed hours ($59,782.20), which plaintiffs have excluded.

559 U.S. 542, 552 (2010); *see Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 113–14 (D.D.C. 2014).

Under this method, the "number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate," with "excessive, redundant, or otherwise unnecessary" hours excluded. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts may also adjust the fee award upward or downward based on the results obtained. *Id.* at 534. "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. However, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* at 435.

## IV. FEE AWARD REDUCTIONS

After calculating the number of hours spent on this litigation multiplied by current *Laffey* rates,[5] plaintiffs now seek to recover approximately $429,300 in fees, after a voluntary 10% reduction. Defendants argue that an award in this amount is improper and should be reduced for the following reasons: 1) plaintiffs' lack of success; 2) the denial, dismissal, or dropping of several claims, and plaintiffs should not be permitted to recover for time billed related to these unsuccessful claims; 3) plaintiffs have submitted excessive, redundant, and unnecessary charges; and 4) plaintiffs have acted in bad faith.

---

[5] The Court's discussion of the applicable *Laffey* rates, *i.e.*, the "reasonable hourly rate" in the lodestar calculation, is located *infra* at Part V.

## A. Reductions for Lack of Success

Defendants argue that plaintiffs' fee award should be reduced due to lack of success. Based on the relatively low amount of damages awarded by the jury, defendants argue that the fees sought are grossly disproportionate to the amount of damages recovered and that the fee request should be reduced because the amount of damages awarded was far below the amount originally sought by the plaintiffs. For the reasons stated below, although a purely proportionate reduction is inappropriate, the Court concludes that a 40% reduction to the fees spent on pre-appellate work is warranted based on lack of success as reflected by the low damages award and due to fact that the plaintiffs were ultimately unsuccessful on many of their claims. No reduction is warranted for the time spent on appellate work as plaintiffs fully succeeded on every point.

### 1. Proportionate Reduction

Defendants argue that the fee award should be reduced so as to be proportionate to the amount of damages actually recovered by plaintiffs. While the amount of damages recovered may be relevant to the proper fee award, fees awarded need not necessarily be proportionate to the amount recovered by the prevailing party, and should not be reduced solely to achieve proportionality. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986), *Williams v. First Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000) (declining to "read a 'rule of proportionality' into [the Consumer Protection Procedures Act]" and rejecting the defendant's argument that the fee award should be reduced to 10-15% of the fees requested because the damages awarded amounted to only 10-15% of the plaintiff's litigation objectives"); *Nelson v. D.C.*, 967 F. Supp. 2d 360, 363 (D.D.C. 2013) (declining to reduce fees where the plaintiff sought $2.5 million, but was awarded $12,500 by the jury, because "Supreme Court and D.C. Circuit precedent make it clear that proportionality is not required"); *In re InPhonic, Inc.*, 674 F. Supp. 2d

273, 281 (D.D.C. 2009) ("A fee award may therefore be reasonable in relation to the success achieved even though the plaintiff's fee award may be 'disproportionate to the damages he recovered.'").  Furthermore, simply because a fee award is greater than—even much greater—the damages ultimately awarded does not automatically make that fee excessive.  *See Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1129 (D.C. Cir. 2001) ("That the fees awarded are, as the district court acknowledged, 'nearly five times the amount of plaintiff's recovery,' does not make them excessive.).  In short, [t]here is, of course, no mathematical rule requiring proportionality between compensatory damages and attorney's fees awards, and courts have awarded attorney's fees where plaintiffs recovered only nominal or minimal damages." *Thompson v. Int'l Ass'n of Machinists & Aerospace Workers*, 664 F. Supp. 578, 581 (D.D.C. 1987).

As acknowledged by another member of this court, "the use of the lodestar approach will, at times, necessitate fee awards that exceed the aggregate recovery to their clients." *Driscoll*, 55 F. Supp. 3d at 113–14.  This is no reason to reduce fee awards given the policy objectives of fee-shifting statutes.  In 1986, the Supreme Court, considering 42 U.S.C. § 1988, which allows for the recovery of attorneys' fees in civil rights cases, found that

> [a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.  This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights.  In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).  Similarly, the FLSA contains a fee-shifting provision in order to "provide an adequate economic incentive for private attorneys to take employment discrimination cases, and thereby to ensure that plaintiffs would be able to obtain competent legal representation for the prosecution of legitimate claims." *Laffey v. Nw. Airlines,*

*Inc.*, 746 F.2d 4, 11 (D.C. Cir. 1984) *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988); *see also Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) (finding that Congress sought to "'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances,' . . . [and that] [c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourage[s] the vindication of congressionally identified policies and rights'"). Thus, a rule of strict proportionality is inconsistent with the policy objectives of the fee-shifting provision of the FLSA.

In conclusion, to the extent that defendants are arguing that the fee award should be reduced because the requested fees are grossly disproportionate to the amount of damages recovered, the Court rejects that argument and will not reduce the fee award on this ground. The Court will now turn to whether the fee award should be reduced for lack of success, as reflected by the relatively low damages award.

## 2. Reduction Based on Lack of Success

Defendants also argue that plaintiffs' fee award should be reduced because the amount of damages awarded was far lower than the amount sought, *i.e.*, that plaintiffs were largely unsuccessful on their claims. Plaintiffs claim that the Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*, governs this issue and dictates that the outcome of a case—the verdict amount—does not affect the amount of the fee award. In *Perdue*, the Supreme Court considered whether the district court erred in enhancing the lodestar fee award by $4.5 million based on superior performance and results, determining "whether either the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement." *Perdue*, 559 U.S. at 541–52, 554. It found that "superior results are relevant only

10

to the extent it can be shown that they are the result of superior attorney performance. Thus, we need only consider whether superior attorney performance can justify an enhancement." *Id.* at 554. The court confirmed that there are three circumstances justifying an enhancement based on superior attorney performance, but such circumstances are "'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* Because the district court failed to provide proper justification for the $4.5 million enhancement, it was essentially arbitrary and its decision was reversed. *Id.* at 557–60.

Plaintiffs argue that under *Perdue*, the outcome of a case does not affect the amount of a fee award and that, when a case produces poor results, a downward adjustment is only appropriate if it was the consequence of poor lawyering. The Court disagrees. The Fifth Circuit recently addressed the same argument in *Combs v. City of Huntington, Texas*, 829 F.3d 388 (5th Cir. 2016). The *Combs* plaintiff, a former employee who brought a Title VII sexual harassment suit, argued that "*Perdue* requires that reductions to the lodestar, like enhancements to it, be allowed only where the outcome of the litigation is directly tied to the attorney's performance." *Id.* at 393. Analyzing *Perdue*, the Fifth Circuit found that it "simply emphasizes what the Court has long recognized: enhancements are permissible only in a rare and exceptional class of cases," because unjustified enhancements result in windfalls to attorneys, a result inconsistent with the aims of fee-shifting statutes. *Id.* at 393–94. Furthermore, "though the lodestar is presumed reasonable, it may be adjusted where it 'does not adequately take into account a factor that may be properly considered in determining a reasonable fee,'" such as a poor results for a plaintiff. *Id.* at 394. The Court agrees with the reasoning of the Fifth Circuit in *Combs* and finds that *Perdue* does not dictate that that a downward adjustment is only appropriate when it is the result of poor lawyering.

But, even finding that *Perdue* does not control the issue here, the Court's inquiry is not at an end. It must still determine whether a downward adjustment is warranted for lack of success. District courts should consider the disparity between the amount of damages sought versus the amount of damages ultimately awarded. *See Combs*, 829 F.3d at 395–96 (collecting cases). The Court notes, however, that while relatively small damages awards (as compared to damages sought) may be indicative of a lack of success, this is by no means a foregone conclusion. *See e.g.*, *Hensley*, 461 U.S. at 455 n.11 ("[A] plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."). Thus, "[a]lthough a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees, a lack of litigation success will." *McAfee v. Boczar*, 738 F.3d 81, 94 (4th Cir. 2013). As taught by the Supreme Court decades ago in *Hensley* "the most critical factor is the degree of success obtained" when determining the proper fee award. *Hensley*, 461 U.S. at 436.

The Court finds that the ultimate damages award reflects lack of success and the fee award should be reduced accordingly. As explained above, plaintiffs originally sought $5,962.55 in overtime wages for Ms. Radtke, which was later reduced to $3,243.28, and $8,845.59 in overtime wages for Ms. Cunningham, which was later raised to $8,893.43. Plaintiffs argued that a three year statute of limitations applied to their claims. The general statute of limitations for FLSA claims is two years, but this extends to three years for willful violations. 29 U.S.C. § 255. An employer acts willfully when "the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the requirements of the Act." 29 C.F.R. § 578.3(c)(1). Thus, if a plaintiff claims that she was denied overtime wages under the FLSA, she must show that the FLSA violation was willful in order to recover for time outside the general two year statute of limitations

period.  Under Maryland law, the statute of limitations for wage and hour actions is three years.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Based on the evidence presented at trial and the jury's verdict, the court found, however, that the three year limitations period only applied to Ms. Radtke's claims because her employer, Advanta, was a Maryland employer.  A two year period applied to Ms. Cunningham's claims because her employer, Lifecare, was not a Maryland employer and was not a joint employer with Advanta, and because plaintiffs failed to prove that the defendants acted willfully.  Had plaintiffs successfully argued that Lifecare was a Maryland employer, or that it was a joint employer with Advanta, or that it had acted willfully, Ms. Cunningham would have been entitled to a greater amount of overtime pay.  Plaintiffs' lack of success on these issues thus reduced Ms. Cunningham's ultimate damages award.  Ms. Cunningham's damages award was further reduced by the jury's rejection of her argument that she was an employee entitled to overtime, not an independent contractor.

Although the statute of limitations issue reduced Ms. Cunningham's potential damages, the greatest reduction in both plaintiffs' damages came from their inability to succeed on their claim that their employers did not act in good faith.  Under the FLSA, plaintiffs are entitled to liquidated damages—double damages—unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act."  29 U.S.C. § 260.  Under Maryland law, plaintiffs may recover overtime wages under the Wage and Hour Law and the Wage Payment and Collection Law, *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625–26 (Md. 2014), and may recover treble damages if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide

dispute." Md. Code Ann., Lab. & Empl. § 3-507.2(b). A "bona fide dispute" is "a legitimate dispute over the validity of the claim or the amount that is owing where the employer has a good faith basis for refusing an employee's claim for unpaid wages." *Peters*, 97 A.3d at 627 (internal quotation marks omitted). Thus, if plaintiffs had shown the lack of a bona fide dispute—that the employers did not act in good faith—they could have recovered double or treble damages.

The jury concluded, however, that plaintiffs failed to establish that the dispute with their employers was not "bona fide," *i.e.*, that defendants had acted in bad faith. Judge Facciola, citing the jury's determination and evidence entered at trial, concluded that liquidated damages (either double or treble) were not warranted. Had plaintiffs successfully shown that defendants had acted in bad faith in denying them overtime, they would have been entitled to a substantially higher damages award.

Given plaintiffs lack of success on two major issues that would otherwise have greatly increased their damages, the Court finds that a downward departure is warranted. Before determining the appropriate fee reduction, the Court first turns to the closely related issue of reducing the fee award for time spent on unsuccessful claims.

### 3. Reduction for Time Spent on Unsuccessful Claims

Defendants also argue that plaintiffs' fees should be reduced to eliminate time spent on claims that were dropped, dismissed by the court, or rejected by the jury. The following claims were dropped by plaintiffs prior to trial: 1) that plaintiffs were required as a common practice to work holidays; 2) that they were not paid overtime or holiday pay for services they were required to perform on holidays; 3) that they were not paid minimum wage; 4) that they were paid in an untimely manner; and 5) that defendants failed to provide an accurate and timely accounting of the method of computation of their pay. The following claims were denied by the jury: 1) that Ms.

Cunningham was not an independent contractor; 2) that defendant Caschetta was an employer; 3) that defendants were joint employers; 4) that defendants acted in bad faith; and 5) that defendants acted willfully. Plaintiffs' breach of contract claim was dismissed by the court.

Fees may be reduced for time spent on ultimately unsuccessful claims, but those claims generally must be both unsuccessful and unrelated to the successful claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983) ("[P]laintiff[s] may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories," but "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim"); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992) ("*Hensley*'s first prong requires a trial court or ALJ to conduct an examination of the hours counsel expended on each claim in the case, weeding out work done on unrelated unsuccessful claims from any award."); *see also Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048, 1061 (9th Cir. 2016) ("Time spent on unsuccessful claims the court deems related are to be included in the lodestar, while '[h]ours expended on unrelated, unsuccessful claims should not be included' to the extent those hours can be 'isolated.'").

Although "there is no certain method of determining when claims are 'related' or 'unrelated,'" *Hensley*, 461 U.S. at 436 n. 12, claims are generally completely unrelated when they are "'distinctly different' in all respects, both legal and factual, from plaintiff's successful claims." *Morgan v. D.C.*, 824 F.2d 1049, 1066 (D.C. Cir. 1987). In such circumstances, no fees may awarded for the time spent on the unsuccessful claims. *Craig v. D.C.*, 197 F. Supp. 3d 268, 283 (D.D.C. 2016). However, different claims brought in one lawsuit may be interrelated, *i.e.*, they "involve a common core of facts" or are "based on related legal theories" and "cannot be viewed

as a series of discrete claims." *Hensley*, 461 U.S. at 435). In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," so "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Therefore, "if successful and unsuccessful claims share a common core of facts[,] . . . a court should simply compute the appropriate fee as a function of degree of success." *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1569 (D.C. Cir. 1993) (internal quotation marks omitted).

In this case, plaintiffs claimed that they were employed by defendants as medical records coders and were required to work in excess of forty hours per week, but were denied overtime pay, including overtime or holiday pay, in violation of the FLSA (because they did not fall under any of the overtime exemptions of the FLSA) and Maryland wage and hour laws. Plaintiffs also claimed that that defendants failed to pay "minimum wages as required by the FLSA, often failing to pay them at all for the work they performed, and paying them only partially and in an untimely manner when they did pay the Plaintiffs, in violation of the FLSA, 29 U.S.C. §§ 206(a)." They claimed that defendants' failure to pay minimum and overtime wages was a willful violation of the FLSA and that they were entitled to liquidated damages (*i.e.*, damages for bad faith). Finally, plaintiffs claimed that under their employment contracts, defendants "agreed to pay [p]laintiffs for their services at a specified hourly rate," but, in breach of that contract, that plaintiffs were not paid fully, and that "[d]efendants failed to provide an accurate and timely accounting of the method of computation of [p]laintiffs' pay." Plaintiffs sought to hold defendant Maria Caschetta, an officer and/or director of Lifecare and Advanta, personally liable as an employer, and sought to

hold all defendants liable as joint employers.  Finally, Ms. Cunningham claimed that she was an employee entitled to overtime pay while working as an independent contractor for Advanta.

The Courts concludes that the unsuccessful claims derive from a common core of facts or are based on related legal theories.  The claims here all derive from allegations that defendants failed to pay—either timely or at all—plaintiffs proper wages, whether they were overtime wages, holiday wages, or minimum wage.  Plaintiffs sought to hold the defendants liable on various theories of liability, including joint liability, employer liability for defendant Caschetta, and liability to an employee not working as an independent contractor.  They further sought to expand their damages based on willful violations or bad faith conduct.  Finally, although plaintiffs' breach of contract claim sounds in different legal theory from their FLSA and Maryland wage and hour law claims, it still appear to derive from the same common facts regarding the hours worked by plaintiffs and the defendants' failure to pay as required.[6]

Accordingly, the Court will not reduce counsel's hours on a claim by claim basis, but finds it appropriate to reduce the overall fee award based on the degree of success.  *See, e.g.*, Craig, 197 F. Supp. 3d at 283; *Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1, 11 (D.D.C. 2016).  Plaintiffs were successful on three of the general causes of action they brought: 1) failure to pay overtime wages in violation of the FLSA; 2) failure to pay overtime in violation of the Maryland Wage and Hour Law; and 3) failure to pay overtime in violation of the Maryland Wage Payment and Collection Law.  Plaintiffs were unsuccessful on their fourth general cause of action, breach of contract, and for other theories of wage and hour liability including failure to pay holiday wages, failure to pay minimum wage, and failure to make timely payments.  In addition, plaintiffs were unsuccessful on their theories of joint liability, employer liability of defendant Caschetta, and

---

[6] The Court notes that there are very few facts identified in the Complaint regarding the breach of contract claim and that plaintiffs did not offer any evidence supporting this claim at trial.

liability based on Ms. Cunningham's status as an employee instead of an independent contractor. Finally, plaintiffs were unsuccessful in proving willful violations or bad faith.

Considering plaintiffs lack of success as reflected by the low damages award and the number of ultimately unsuccessful claims described above, the Court finds it appropriate to reduce the fee award for time billed on pre-appellate work by 40%, to total $181,980.00.

### 4.    Appellate Work

Although the Court concludes that a reduction based on lack of success is warranted for the time spent on pre-appellate work, it will not impose a reduction for time spent on appeal. Again, two appeals were taken in this case: 1) a merits appeal taken by defendants; and 2) plaintiffs appeal of Judge Facciola's attorneys' fees decision, which was cross-appealed by defendants. Plaintiffs were the clear winners of each appeal. First, the Court of Appeals found no merits in defendants' arguments that they were entitled to judgment as a matter of law or a new trial. Any time spent by plaintiffs' counsel defending the merits appeal was brought on by defendants themselves. In this Court's view, the merits appeal was borderline frivolous, and defendants acted as if the jury never even made the findings that it did. It was "clear to [the Court of Appeals] that the appellants [were] not entitled to judgment as a matter of law. Appellants [showed] at most that there was a conflict in the evidence before the jury. It is the function of the jury and not [the Court of Appeals] to weigh evidence and make findings." *Radtke I*, 795 F.3d at 165. The Court of Appeals further "agree[d] with the district court that 'this case presented a pristine example of how a genuine issue of material fact emerges from all the evidence, requiring its resolution by the jury.'" *Id.*

Furthermore, plaintiffs were successful in their appeal of Judge Facciola's attorneys' fees decision and in defeating defendants' cross-appeal. As explained above, the Court of Appeals

found that Judge Facciola committed clear error, vacated the entire decision, and remanded to this Court for a de novo fee determination. *Radtke II*, 822 F.3d at 576. Defendants failed to persuade the Court of Appeals that Judge Facciola correctly reduced the fees, or that the fee petition should have been denied as untimely or reduced more substantially.

In sum, the time spent by plaintiffs' counsel on appellate work should not be reduced for lack of success, as plaintiffs succeeded in both of the appeals. Plaintiffs are entitled to the full fees of $126,000.00 for the appellate work.

### B.    *Reductions for Excessive, Redundant, or Unnecessary Time*

Courts should not award fees for "excessive, redundant, or otherwise unnecessary" time. *Hensley*, 461 U.S. at 433. Defendants argue that plaintiffs' fee petition contains the following unnecessary and excessive time entries: 1) eighty hours spent preparing responses to defendants' written discovery requests; 2) fifty hours spent preparing for and taking two depositions; 3) thirty hours spent on internal communications discussing tasks to be performed; 4) ten hours drafting a complaint; 5) approximately 8 hours spent amending the complaint; 6) approximately two and half hours spent communicating with bar counsel regarding concerns about ethical violations; 7) forty-two hours researching and drafting a motion for summary affirmance and a reply to defendants' opposition, which was denied by the D.C. Circuit; and 8) $195,000 incurred since plaintiffs' original fee petition and one hundred and forty-six hours spent appealing the trial court's decision on fees.

The Court rejects defendants' argument. Plaintiffs have met their "burden of demonstrating that the number of hours expended on particular tasks was reasonable by submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Lopez v. D.C.*, 383 F. Supp. 2d 18,

24 (D.D.C. 2005). Throughout this section of defendants' brief, they have essentially simply stated that the hours spent on such tasks were "excessive." Not only does the amount of time spent on the tasks identified not strike the Court as obviously excessive, defendants have failed to explain why or how the time spent was excessive and, with respect to the first three categories, have completely failed to direct the Court to the time entries containing unreasonable charges. This is insufficient to convince the Court that the time spent on preparing discovery responses, preparing for and taking depositions, internal communications, and drafting the complaint was excessive and unreasonable. *See Taylor v. USF-Red Star Exp., Inc.*, 212 F. App'x 101, 111 (3d Cir. 2006) ("'[T]he adverse party's submissions cannot merely allege in general terms that the time spent was excessive,' but must identify both the general type of work being challenged and the specific grounds for contending that the hours were unreasonable."); *see also Blum v. Stenson*, 465 U.S. 886, 892 (1984) ("We decline to consider petitioner's further argument that the hours charged by respondents' counsel were unreasonable. As noted above, petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged."); *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.").

Defendants also argue that the time spent amending plaintiffs' complaint should be excluded. Again, defendants in no way identify *why* this time was unreasonable, simply stating that the fee petition improperly includes this time. *Cf. Falica v. Advance Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 80 (D.D.C. 2005) (finding, where plaintiffs had to amend their complaint because they failed to inform their counsel about certain elements of their case, "it would be unreasonable

to require the defendants to pay for the filing of a perfected complaint, which was required solely because of the plaintiffs' inattention to detail that should have been incorporated into the complaint when it was first prepared"). This is insufficient.

With respect to the hours spent communicating with bar counsel regarding plaintiffs' concerns about ethical violations, defendants argue that this time was not spent on plaintiffs' claims and should be rejected as unnecessary. The Court again disagrees. Plaintiffs explain that they contacted bar counsel about a potential ethical violation after defendants threatened Rule 11 sanctions and demanded that plaintiffs pay defendants $5,000 to settle the case. Plaintiffs' time sheet confirms that this was the case. As such, this time was related to the case and was not unreasonably accounted for.

Defendants also argue that time spent on an ultimately unsuccessful motion for summary affirmance should be rejected. In certain circumstances, it may be improper to award fees for time spent on unsuccessful appeals. *See Clark v. City of Los Angeles*, 803 F.2d 987, 993 (9th Cir. 1986) (concluding that it was not an abuse of discretion to exclude hours spent on an appeal where "nothing associated with the appeal contributed to any favorable result achieved by the litigation," but noting that "[i]t may be quite proper for a court to award fees for an unsuccessful appeal when the party claiming fees ultimately prevails on retrial"); *Kelsey v. D.C.*, No. CV 13-1956 (BAH), 2016 WL 7017252, at *6–7 (D.D.C. Dec. 1, 2016). The circumstances here do not warrant the exclusion of this time. Plaintiffs moved for summary affirmance of the district court's order denying defendant's motion for judgment as a matter of law and motion for new trial. Although the Court of Appeals denied the motion because the merits of the parties' positions were not so clear as to warrant summary action, it later found in favor of plaintiffs on these same issues. *See Radtke I*, 795 F.3d 159. Therefore, plaintiffs did eventually succeed on the substance of their

argument—that judgment as a matter of law was improper and that a new trial was not warranted—they just did not succeed at the summary affirmance stage. Awarding fees for this time would thus not run afoul of *Hensley*'s directive that "no fee may be awarded for services on [an] unsuccessful claim." *Hensley*, 461 U.S. at 435.

Finally, the Court rejects defendants' argument that the time spent on appeals is excessive and redundant. Again, defendants wholly fail to explain why such time is unreasonably excessive or redundant, simply stating that it is "unbelievable" and "incredible." Plaintiffs, on the other hand, note that there were three appeals in this case—defendants' own appeal of the judgment against them, plaintiffs' appeal of the court's reduction of the fee award, and defendants' cross-appeal of the court's fee decision—encompassing two rounds of briefing and arguments. In addition, in defendants' appeal of the judgment, they raised twelve assignments of error, none of which succeeded, and all of which plaintiffs were forced to respond to. Furthermore, plaintiffs were forced to respond to defendants' (ultimately unsuccessful) cross-appeal of the fee award. It should come as no surprise to defendants that plaintiffs' are now seeking compensation for the time spent responding to defendants' own arguments. Because there is no indication that the time spent on appeals was excessive or redundant, the Court will not accordingly reduce plaintiffs' fee award.

### C. *Reductions for Bad Faith*

Defendants also argue that plaintiffs' fees should be reduced due to plaintiffs' bad faith. They argue that the damages awarded show that this case should have been filed in small claims court where it would have been swiftly resolved and that plaintiffs included groundless issues in their complaint that lengthened the litigation. They also argue that plaintiffs' fees should be reduced due to the following actions of plaintiffs and their counsel: 1) the credibility of

Cunningham being called into question; 2) Radtke "blurting out" an answer to a question from her attorney after the court sustained defendants' objection; and 3) improper statements made by plaintiffs' counsel during his opening and closing statements and misrepresentations made regarding his dealings with defendants' counsel.

The Court finds that none of these arguments warrant a reduction in attorneys' fees. First, just because the damages award ultimately was an amount that could have been litigated in small claims court, does not mean that it should have been or that plaintiffs improperly brought their case in federal court. This case was properly brought in federal court pursuant to federal question jurisdiction. Second, the Court rejects defendants' argument regarding "groundless" claims in the complaint. Simply because claims are ultimately unsuccessful does not mean they are groundless and brought to run up litigation costs. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435.

Finally, the various trial-related issues do not warrant a fee award reduction. First, the Court notes that almost all of the allegedly bad faith behavior committed by plaintiffs and their attorneys has been raised before the Court of Appeals, which has twice now found in favor of plaintiffs. *See Radtke I*, 795 F.3d at 166–68; *Radtke II*, 822 F.3d at 574–76. In particular, one of the grounds for reduction raised here is that plaintiffs refused to collaborate on the calculation of damages (and misrepresented that defendants refused to collaborate). The Court of Appeals found, however that plaintiffs "were not negligent or dilatory in providing a damages estimate; they did so time and again, including before they filed suit." *Radtke II*, 822 F.3d at 575.

Furthermore, defendants have provided no authority holding that trial-related issues such as those identified here warrant a reduction in fees. While the one case cited by defendants does

say that "entitlement to attorney's fees cannot be a carte blanche license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction," that case concerned a plaintiff's counsel who "continued to file pleadings and propound discovery in what should have been a pro forma matter that could have been disposed of by making a few phone calls before filing suit." *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003). This case is clearly different, and, as noted by the Court of Appeals, plaintiffs "offered to settle for $25,000 to $30,000 very early in the dispute, yet the Employers never responded, much less counter-offered." *Radtke II*, 822 F.3d at 576. Furthermore, the Court sees no true link between the trial issues identified and any "running up" of attorneys' fees. Just because an attorney may have acted improperly at trial does not mean that they have improperly "run up" their fees. The Court finds that the "bad faith" issues identified by defendants do not warrant a reduction in the plaintiff's fee award.

## V.      APPLICABLE LAFFEY RATES

Separate from the reasonableness of the hours billed and whether any reductions are warranted, the parties also dispute the applicable reasonable hourly rate at which plaintiffs' counsel's time should be charged. Plaintiffs argue that current *Laffey* rates should be used, while defendants' argue that historic *Laffey* rates should be used.

### A.      Legal Standards

To determine the "lodestar" fee award the "number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. To determine the "reasonable hourly rate," courts must examine "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. To determine the prevailing market rates, courts in this Circuit use the "*Laffey* Matrix," developed in *Laffey v Northwest Airlines, Inc.*, 572 F. Supp. 354

(D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).  The *Laffey* Matrix "provides billing rates for attorneys in the Washington, D.C. market with various degrees of legal experience." *Act Now to Stop War & End Racism Coal. v. D.C.*, 286 F.R.D. 145, 149 (D.D.C. 2012).  Each year, United States Attorney's Office ("USAO") for the District of Columbia issues an updated *Laffey* Matrix which "determines hourly rates for attorneys of varying experience levels by taking the hourly rates contained in the original 1982 *Laffey* Matrix and adjusting those rates for inflation based upon changes in the Washington, D.C.-area Consumer Price Index."  *Heller v. D.C.*, 832 F. Supp. 2d 32, 41 (D.D.C. 2011).

The Supreme Court has recognized that in some cases, where the fee award is received years after the services were rendered, historic *Laffey* rates may be appropriate:

> compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.  We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989).  Prior to the *Jenkins* decision, the D.C. Circuit endorsed this same view:

> The hourly rates used in the "lodestar" represent the prevailing rate for clients who typically pay their bills promptly.  Court-awarded fees normally are received long after the legal services are rendered.  That delay can present cash-flow problems for the attorneys.  In any event, payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable.  A percentage adjustment to reflect the delay in receipt of payment therefore may be appropriate.

*Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980).  Courts may therefore use either current or historic rates in calculating the fee award and, "to roughly compensate for delay in payment, a district court has the authority to award current market rates instead of historic market rates." *Covington v. D.C.*, 839 F. Supp. 894, 902 (D.D.C. 1993), *aff'd*, 57 F.3d 1101 (D.C. Cir. 1995).

There is no specific test for determining when it is reasonable to use current rates to compensate for such a delay. Courts, including the D.C. Circuit, have cautioned that current rates may be used so long as they do not create a windfall for plaintiffs' counsel. *See Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984); *Covington*, 839 F. Supp. at 902; *Bishopp v. D.C.*, No. CIV. A. 83-0417(JHG), 1994 WL 398834, at *3 (D.D.C. July 12, 1994). Others have considered the party at fault for the delay. *See West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013) (stating that whether the delay was due to "defendant's dilatory or stalling conduct" may have been an appropriate factor for the magistrate judge to consider); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) ("The court is not necessarily required, however, to award attorneys' fees based on current hourly rates when the delay is due in whole or in substantial part to the fault of the party seeking fees."); *see also Bishopp*, 1994 WL 398834, at *4 (finding current rates were warranted in part because "a significant portion of the delay in this case was caused by the defendant). Finally, courts consider the length of the delay between the time the services were rendered and the time of payment. *See West*, 717 F.3d at 1034 (stating that whether the delay was "unusually long" may have been an appropriate factor for the magistrate judge to consider); *Bolden v. J & R Inc.*, 135 F. Supp. 2d 177, 179 (D.D.C. 2001) (denying current rates because "[t]he progress of this case has not been protracted; nor has it spanned multiple years").

**B.  Analysis**

The parties agree that the USAO *Laffey* Matrix applies, but dispute whether current rates should be used or whether historic rates should be used to determine the appropriate hourly rate in this case. At the time plaintiffs filed their renewed motion for attorneys' fees, this litigation had been pending for ten years. Plaintiffs argue that given this passage of time, defendants' extraordinary zeal in conducting this litigation and their refusal to consider settlement, the

economic risk incurred by plaintiffs' attorneys by agreeing to represent plaintiffs on a contingency fee basis, and plaintiffs' proposed use of the USAO *Laffey* Matrix as opposed to the LSI *Laffey* Matrix,[7] current *Laffey* rates should be used. Defendants argue that current rates are inappropriate because plaintiffs have improperly attributed the delays in the case to defendants' actions, ignoring that there was a one and a half year period of inactivity in the case, and that plaintiffs failed to properly investigate their claims and litigated in bad faith, thereby driving up fees.

The Court finds that current rates are appropriate to account for the lengthy delay in this case. As noted by plaintiffs, this case was filed in 2006 and was pending for ten years by the time they filed their renewed motion for attorneys' fees. There are 212 entries on the docket. It has been to the Court of Appeals twice. Plaintiffs' counsel has declared that, due to the time constraints of this case, the firm was forced to decline potential clients, directly limiting its ability to accept other (potentially profitable) work. *See* Salb Affidavit ¶¶ 54–55, ECF No. 208-1. Given the length of the case alone, during which plaintiffs' counsel worked without compensation, "the hardship caused by delay is self-evident." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 15 n.31 (D.D.C. 2008), *amended in part, vacated in part sub nom. U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011). Clearly, the compensation received by plaintiffs' counsel at this point "is not equivalent to the same dollar amount" as compensation "received reasonably promptly as the legal services [were] performed," *Jenkins*, 491 U.S. at 283, and payment now for services rendered long in the past "deprive[d] [plaintiffs' counsel] of the value of the use of the money in the meantime." *Copeland*, 641 F.2d at 893; *cf. Bishopp*, 1994 WL 398834, at *3 (finding

---

[7] Apart from the USAO *Laffey* Matrix, courts sometimes use the LSI *Laffey* Matrix (also known as the LSI/*Salazar* Matrix), which "uses the *Laffey* matrix updated with the 1989 rates, then accounts for inflation by using the Bureau of Labor Statics's legal services index" and generally results in higher rates than the USAO matrix. *Joaquin v. D.C.*, No. 14-CV-1160-RCL, 2016 WL 5660286, at *1 (D.D.C. Sept. 28, 2016).

the "lengthy time period [of ten years] is more than sufficient to justify the use of current rates to compensate for the delay").

Defendants' arguments against using current rates are unavailing. First, the Court again notes that it rejects defendants' argument that plaintiffs' acted in bad faith and drove up their fees. *See* Supra Part IV.C. In addition, the Court finds no danger of a windfall to plaintiffs. As this Court explained in a previous case, the rationale behind compensating for a delay in payment is "the time value of money: one dollar received today is more valuable than it would be if received five years from now for two reasons—first, because it will buy more now than it will after five years of price inflation, and second, because of the interest that can be earned from it in the interim. Paying counsel at their current, established billing rates does not result in a windfall; it simply takes this second factor into account." *Miller*, 575 F. Supp. 2d at 20. Beyond stating that compensation at current rates should not cause a windfall, defendants fail to identify how a windfall would occur in this case. It is undisputed that plaintiffs' counsel worked on this case for ten years and have waited several years to be compensated. As noted above, this time could have been spent on other cases for which they would have been paid. *Cf. Gates*, 987 F.2d at 1406 ("These potential earnings, like interest payments and investment opportunities foregone, are deserving of compensation."). The Court finds that using current rates would not cause a windfall to plaintiffs' counsel.

In addition, the Court finds that the delay is not necessarily due to the fault of the plaintiffs. First, the fact that the case sat on the docket with no activity for a year and half is the fault of the court, not of plaintiffs, and plaintiffs should accordingly not be penalized. *Cf. Gierlinger*, 160 F.3d at 882 (finding that even though "a portion of the delay in judgment in this case is attributable to [the plaintiff] . . . the primary responsibility for the protracted nature of this litigation must be

placed on the district court," and therefore current rates should be used). More importantly, the Court is not persuaded that defendants were not actually at fault for at least part of the delay in this case. As noted by the Court of Appeals plaintiffs "were not negligent or dilatory in providing a damages estimate; they did so time and again, including before they filed suit. . . . They even offered an early settlement, but the Employers never responded." *Radtke II*, 822 F.3d at 575. Furthermore, "there is no indication [plaintiffs'] demands were unreasonable, frivolous, or otherwise entirely disconnected from reality. . . . In any event, [plaintiffs] offered to settle for $25,000 to $30,000 very early in the dispute, yet the Employers never responded, much less counter-offered. The Employers, moreover, could have protected themselves from significant attorney's fees by making a Rule 68 offer of judgment. But they failed to do so. They cannot now complain appellants acted unreasonably, allegedly leaving the Employers no way to protect themselves from ever-escalating fees." *Id.* at 576 (internal citations omitted). Moreover, it was defendants who initiated one of the appeals in this case, which they lost, as well as their unsuccessful cross-appeal of the fees decision, obviously contributing in part to the delay. The relative fault of the parties therefore does not convince the court that current rates are inappropriate. *Cf. Miller*, 575 F. Supp. 2d at 20 (finding that where both parties contributed to delay, current rates were appropriate); *Bishopp*, 1994 WL 398834, at *4 (finding that no windfall existed and current rates were appropriate where "a significant portion of the delay in this case was caused by the defendant").

Having concluded that plaintiffs' counsel would not receive a windfall if compensated at current rates, and that nothing else persuades the Court that plaintiffs should not be compensated at current rates, the Court finds that the current *Laffey* rates advocated for by plaintiffs are the appropriate reasonable rates to be used in determining the fee award.

## VI.    THE FEE AWARD

Plaintiffs have submitted a time sheet detailing the hours spent on this litigation.  *See* Pls.'
Ex. 1-A, ECF No. 208-2.  They have also specified the hours billed by each attorney and the rates
sought for such hours.  *See* Pls.' Mot. at 12–24, ECF No. 208.  Finally, they have summarized the
value of time spent by each attorney at historic *Laffey* rates and at current *Laffey* rates.  *See id.* at
24–25.  At current rates, after a 10% up front reduction to reflect the possibility of duplicative or
excessive time charges, plaintiffs request approximately $429,300 in attorneys' fees.[8]  For the
reasons explained above, however—namely lack of success—the Court has found it appropriate
to reduce the fee award by 40% for time billed on pre-appellate work.  Thus, of the approximately
$303,000 billed for pre-appellate work, plaintiffs are entitled to $181,980.  Because no reduction
is warranted for time spent on appellate work, plaintiffs are entitled to $126,000.  Therefore, the
Court will award fees totaling $307,980.  Plaintiffs also seek $2,559.28 in costs.  Because
defendants have made no objection to paying these costs, the Court will award them in full.

## VII.    CONCLUSION

Plaintiffs are entitled to $307,980 in attorneys' fees after a voluntary 10% reduction and a
40% reduction on pre-appellate time billed for lack of success, as well as $2,559.28 in costs,
totaling $310,539.28.  No reductions are warranted based on excessive, unnecessary, or redundant
time or for bad faith.  Current *Laffey* rates, as opposed to historic rates, are appropriate here.  The
Court will grant plaintiffs' motion for attorneys' fees and will order defendants to pay $310,539.28.

A separate order accompanies this Memorandum Opinion.

Date: June  7, 2017

Royce C. Lamberth
United States District Judge

---

[8] Again, this figure is taken from plaintiffs' detailed fee petition, not from the $435,000 figure used in the substance
of plaintiffs' motion.